UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

   - v. -

RAFAT AMIROV,
   a/k/a "Farkhaddin Mirzoev,"
   a/k/a "Рим,"
   a/k/a "Rome,"
POLAD OMAROV,
   a/k/a "Araz Aliyev,"
   a/k/a "Polad Qaqa,"
   a/k/a "Haci Qaqa," and
KHALID MEHDIYEV,

               Defendants.

- - - - - - - - - - - - - - - - - - - x

**SEALED SUPERSEDING INDICTMENT**

S4 22 Cr. 438 (CM)

## BACKGROUND

1.    The charges in this Indictment arise out of an ongoing investigation into the Government of Iran's efforts to assassinate, on U.S. soil, a journalist, author, and human rights activist who is a U.S. citizen of Iranian origin residing in Brooklyn, New York (the "Victim").  The Victim has publicized the Government of Iran's human rights abuses; discriminatory treatment of women; suppression of democratic participation and expression; and use of arbitrary imprisonment, torture, and execution to target its political opponents; and has sought to mobilize public opinion in Iran and around the world to bring about changes to the regime's laws and practices, including in connection with the continuing protests against the regime across Iran.

2.   In 2022, members of an Eastern European criminal organization (the "Organization") with ties to Iran were enlisted to assassinate the Victim in the United States. The members of the Organization engage in a variety of criminal activity in the United States and abroad, including theft, extortion, assault, kidnapping, and murder. The members of the Organization identify themselves as "Thieves-in-Law" or as followers of Thieves-in-Law; frequently refer to each other as "Oğru," or "Thief," in Azeri; and mark themselves as members of the Organization with tattoos of eight-pointed stars and the use of symbols of eight-pointed stars in photographs, videos, and elaborate portrait cakes of members of the Organization.

3.   The Organization's participation in the murder-for-hire plot was directed by RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," the defendant, a leader of the Organization who resides in Iran and who was tasked with targeting the Victim by individuals in Iran. AMIROV directed POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," the defendant, a member of the Organization who was residing in Eastern Europe. OMAROV, in turn, directed KHALID MEHDIYEV, the defendant, who was residing in Yonkers, New York, to carry out the plot against the Victim. AMIROV and OMAROV arranged for the payment of $30,000 in cash to MEHDIYEV, who then procured an AK-47-style assault rifle for carrying out the murder. At AMIROV's and

OMAROV's instructions, MEHDIYEV surveilled the Victim and members of the Victim's family; took photographs and videos of the Victim's residence in Brooklyn and the surrounding neighborhood; and devised schemes to lure the Victim out of the Victim's house. MEHDIYEV's participation in the plot was disrupted when he was arrested near the Victim's home in July 2022 while in possession of the assault rifle, which had an obliterated serial number. At the time of the arrest, MEHDIYEV, at the direction of AMIROV and OMAROV, was preparing imminently to execute the attack on the Victim.

### PRIOR IRANIAN GOVERNMENT PLOTS AGAINST THE VICTIM

4.      In recent years, the Government of Iran has targeted dissidents around the world, such as the Victim, who oppose the regime's violations of human rights, suppression of democratic participation and freedom of expression, and corruption. The Iranian government has sought to repress such opposition to the regime by targeting dissidents for harassment, intimidation, incarceration, kidnapping, and death. The Victim has long been a target of the Government of Iran. For example:

a.      In approximately 2018, Iranian government officials attempted to induce relatives of the Victim, who reside in Iran, to invite the Victim to travel to a third country, for the apparent purpose of having the Victim arrested or detained and transported to Iran for imprisonment. Iranian government

officials offered to pay the Victim's relatives in exchange for their invitation to the Victim, but the Victim's relatives did not accept the offer.

b.    On or about July 29, 2019, the Chief of the Revolutionary Courts in Iran publicly stated that anyone who sent videos considered against the regime, in particular videos contrary to the Government of Iran's criminal laws mandating that women and girls wear head coverings in public, to the Victim was committing the crime of cooperating with a hostile foreign government and would be sentenced from one to 10 years' imprisonment.

c.    In approximately September 2019, a relative of the Victim was arrested by Iranian government officials on charges purportedly based on the relative's association with the Victim. The Victim's relative was later sentenced to eight years' imprisonment.

d.    In approximately 2020 and 2021, an Iranian government intelligence service plotted to kidnap the Victim from within the United States for rendition to Iran and likely execution, in order to silence the Victim. Iranian intelligence assets, concealing their identities and purpose, procured the services of unwitting private investigators in the United States to surveil, photograph, and video record the Victim and the Victim's household members as part of the kidnapping plot. Iranian

4

intelligence assets developed potential methods of kidnapping the Victim for rendition to Iran, including travel routes from the Victim's residence to a waterfront neighborhood in Brooklyn; a service offering military-style speedboats for self-operated maritime evacuation out of Manhattan, New York; and maritime travel from New York to Venezuela, a country whose de facto government has friendly relations with the regime in Iran. In July 2021, an indictment returned by a grand jury in the Southern District of New York was unsealed charging an Iranian intelligence officer and three Iranian intelligence assets with, among other crimes, kidnapping conspiracy based on their participation in the plot against the Victim. *See United States v. Farahani, et al.*, 21 Cr. 430 (RA) (S.D.N.Y.). Since that indictment, the Government of Iran has continued targeting the Victim.

**THE DEFENDANTS**

5.     RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," the defendant, is a citizen of Azerbaijan and Russia and a leader in the Organization. At all times relevant to the charges in this Indictment, AMIROV resided in Iran. Photographs of AMIROV, who uses false identification documents in other names, are below. In connection with the murder-for-hire plot, AMIROV received targeting information about the Victim from other individuals in Iran and communicated it to POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," the

defendant; received reports from OMAROV about efforts to surveil and target the Victim; and arranged for a payment of $30,000 in cash to KHALID MEHDIYEV, the defendant, in New York City to buy an assault rifle and carry out the murder.

 

6.     POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," the defendant, is a citizen of Georgia and also holds a leadership position in the Organization.  At all times relevant to the charges in this Indictment, OMAROV resided in Eastern Europe, including Slovenia and the Czech Republic. Photographs of OMAROV, who uses false identification documents in other names, are below.  In connection with the murder-for-hire plot, OMAROV received targeting information about the Victim and directions about the plot from RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," the defendant; communicated targeting information about the Victim and directions about the plot to KHALID MEHDIYEV, the defendant; received reports from

MEHDIYEV about surveillance and targeting of the Victim; communicated such reports and information about surveillance and targeting of the Victim to AMIROV; and assisted AMIROV in arranging for a payment of $30,000 in cash to MEHDIYEV in New York City to buy an assault rifle and carry out the murder.

 

7.    KHALID MEHDIYEV, the defendant, is a citizen of Azerbaijan, a resident of Yonkers, New York, and a member of the Organization. Photographs of MEHDIYEV, who uses bank cards and credit cards in the names of others, are below, including, on the left, a selfie that MEHDIYEV took outside the Victim's residence (the "Residence") in Brooklyn while conducting surveillance in furtherance of the murder plot. In connection with the murder-for-hire plot, MEHDIYEV received targeting information about the Victim and directions about the plot from POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," the defendant;

conducted surveillance of the Victim and the Victim's household; communicated reports and information about surveillance and targeting of the Victim to OMAROV; received a payment of $30,000 in cash in furtherance of the plot; and procured an AK-47-style assault rifle to carry out the murder.

 

**THE MURDER-FOR-HIRE PLOT**

8.    Beginning in at least July 2022, RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, plotted to murder the Victim.

**AMIROV Identifies the Victim as the Target**

a.    On or about July 13, 2022, AMIROV sent OMAROV electronic communications, addressing OMAROV as "Brother,"[1] with

---

[1] AMIROV, OMAROV, and MEHDIYEV communicated primarily in Azeri Turkic. Descriptions of those electronic communications in this Indictment reflect draft English translations of those communications. Throughout this Indictment, all communications

(i) images of the Victim's Residence from an internet maps service; (ii) the message "New York"; (iii) the address of the Residence; and (iv) two photographs of the Victim. AMIROV had received the images from another source and forwarded them to OMAROV. The images of the Residence show the time and battery level in Farsi numbers, consistent with the tasking originating from within Iran. After receiving the targeting package, OMAROV subsequently informed AMIROV that "they will send me pictures in 2-3 hours from there." OMAROV further informed AMIROV that "I have sent them, they are on their way," referring to having sent MEHDIYEV to the Residence, as described below.

### OMAROV Tasks MEHDIYEV with Carrying Out the Murder

b.    On or about July 13, 2022, after receiving the targeting directive from AMIROV, OMAROV sent MEHDIYEV photographs of the Victim, the address of the Residence, and images of the Residence that OMAROV had received from AMIROV. MEHDIYEV thereafter travelled from Yonkers to Brooklyn, where he took photographs and a video showing the Residence, which he sent to OMAROV. OMAROV then forwarded these photographs and video to AMIROV.

---

are described in substance and in part, and quoted text appears as in the original messages, including any typographical and grammatical errors, except where alterations are indicated.

### AMIROV and OMAROV Arrange a Cash Payment to MEHDIYEV

c.    After    receiving    MEHDIYEV's    initial surveillance images and video, AMIROV and OMAROV arranged a delivery of $30,000 in cash to MEHDIYEV. On or about July 15, 2022, MEHDIYEV sent OMAROV a phone number used by MEHDIYEV and the driver's license and name of another individual, who would help MEHDIYEV collect the money. OMAROV sent this information to AMIROV.

d.    On or about July 18, 2022, AMIROV sent OMAROV a phone number for the person from whom MEHDIYEV would collect the money. OMAROV sent the number to MEHDIYEV, who then travelled to Brooklyn and collected approximately $30,000 in cash.

e.    MEHDIYEV sent OMAROV a photograph of the cash, consisting of several rubber-banded bundles of U.S. currency. OMAROV then informed AMIROV that the cash had been picked up. AMIROV replied, "Let God help him, Amen, God willing!"

f.    On or about July 18 and 19, 2022, after collecting the $30,000 cash payment, MEHDIYEV sent approximately $10,000 to OMAROV's romantic partner in Eastern Europe, using money transfer offices located in the Bronx, New York.

### MEHDIYEV Procures an AK-47-Style Assault Rifle

g.    On or about July 19, 2022, MEHDIYEV acquired an AK-47-style Norinco assault rifle with an obliterated serial number. The morning of on or about July 20, 2022, MEHDIYEV sent

a message to one of his housemates: "I bought this thing[,] you'd lose your mind if you saw it 😂😂😂😂😂 War machine[,] fuck 😂😂😂😂"[2]

h.    On or about July 23, 2022, a member of the Organization, who is a co-conspirator not named as a defendant herein ("CC-1"), sent OMAROV a video, originally recorded by MEHDIYEV on the front porch of his Yonkers residence, showing the assault rifle located inside a suitcase and displaying two loaded magazines of ammunition.  Still images from the video are shown below.

 

---

[2] This message was in Turkish, and the description in this Indictment reflects a draft English translation.

**MEHDIYEV Surveils the Victim and
the Defendants Scheme to Lure the Victim Out**

i.   Between approximately July 20 and 28, 2022, MEHDIYEV travelled repeatedly between his Yonkers residence and Brooklyn to surveil the Victim, the Victim's household members, and the Victim's Residence.  During these surveillance missions, MEHDIYEV photographed and videoed the Residence and provided OMAROV reports on the activities of the Victim, which OMAROV in turn communicated to AMIROV.  The defendants also schemed ways to draw the Victim out of the Residence to carry out the assassination.

j.   On or about the morning of July 23, 2022, OMAROV instructed MEHDIYEV to "Say God's name and go after your business."  MEHDIYEV replied that he was leaving to go to the Residence and, approximately two-and-a-half hours later, sent OMAROV Google Maps images of the neighboring house to the Victim's Residence.  OMAROV sent the pictures to AMIROV, who replied, "God willing we will hear some good news."

k.   On or about the next morning, July 24, 2022, OMAROV sent a message to MEHDIYEV asking where MEHDIYEV was.  MEHDIYEV responded, "at the crime scene."  OMAROV responded, "Ok. You are a man!"  MEHDIYEV sent OMAROV the message, "We blocked it from both sides, it will be a show once she steps out of the

house." OMAROV forwarded this message to AMIROV, who replied, "God willing."

l.   MEHDIYEV subsequently returned to the Residence to await an opportunity to carry out the murder. On or about July 26, 2022, MEHDIYEV and OMAROV exchanged messages about strategies to bring the Victim to the front door of the Residence, including proposals to ask for flowers from the Victim's garden, but MEHDIYEV reported that the Victim did not come to the door. On or about July 27, 2022, AMIROV sent OMAROV intelligence about the Victim's activities that AMIROV obtained from a separate source, reporting that "she was talking on the phone from 5:40 till 5:50 in the morning, Iranian time, by the door."

m.   Later on July 27, 2022, OMAROV assured AMIROV, referring to the murder plot, that "[t]his matter is going to be over today, brother. I told them to make a birthday present for me. I pressured them . . . ." AMIROV sent OMAROV an image of two hands pressed together in prayer, as well as links to the Victim's social media accounts and screenshots of a live stream that the Victim was conducting on a messaging application.

n.   On or about July 28, 2022, MEHDIYEV returned to the Victim's Residence. MEHDIYEV sent OMAROV a video recording from inside the car MEHDIYEV was driving, showing a suitcase in the back seat. In the video, MEHDIYEV pulled the front flap of the suitcase open to display the AK-47-style assault rifle.

13

MEHDIYEV sent the video to OMAROV with a caption stating, "we are ready." OMAROV forwarded the video to AMIROV, who replied that MEHDIYEV should "keep the car clean," apparently meaning that MEHDIYEV should not conduct the shooting of the Victim inside of, or from the inside of, the car in order to prevent forensic evidence of the murder.

### MEHDIYEV Is Arrested with the Assault Rifle

o.    That day, on or about July 28, 2022, the Victim observed suspicious activity near the Residence and left the area. MEHDIYEV left the area approximately 15 minutes later. While driving away, MEHDIYEV was stopped by New York City Police Department ("NYPD") officers after a traffic violation. Inside MEHDIYEV's car, NYPD officers found the assault rifle, two ammunition magazines, and approximately 66 rounds of ammunition, which are shown below, as well as approximately $1,100 in cash and a black ski mask. MEHDIYEV was arrested and charged with a federal firearms offense.



      p.   After MEHDIYEV's arrest, he was detained pending trial and held at a federal detention center. MEHDIYEV obtained a contraband cellphone and used it to communicate with OMAROV and others, including CC-1. MEHDIYEV sent to CC-1 a photograph of his prisoner identification card and a video of his prison cell as proof of his arrest, and asked for money to buy food and cigarettes.

      q.   On or about August 3, 2022, CC-1 sent OMAROV a message referring to MEHDIYEV and stating that "he went to kill the journalist." OMAROV then forwarded that message to AMIROV.

      r.   On or about August 7, 2022, AMIROV and OMAROV exchanged messages about press coverage of MEHDIYEV's arrest. AMIROV wrote to OMAROV, "He has become popular, brother." OMAROV responded, "I hope he will not make trouble for me."

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Murder-For-Hire)

The Grand Jury charges:

9.    The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth herein.

10.    From at least in or about July 2022, up to and including in or about January 2023, in the Southern District of New York and elsewhere, and in an offense begun and committed in Iran, Azerbaijan, Georgia, Slovenia, and elsewhere out of the jurisdiction of any particular State or district of the United States, RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly traveled in and caused another to travel in interstate and foreign commerce, and used and caused another to use a facility of interstate and foreign commerce, with intent that a murder be committed in violation of the laws of the State of New York or the United States as consideration for the receipt of and as consideration for a promise or agreement to pay anything of pecuniary value, and attempted to commit and aided and abetted the

16

same, to wit, AMIROV, OMAROV, and MEHDIYEV used cellphones and electronic messaging applications to communicate with each other in furtherance of a plot for MEHDIYEV to kill the Victim in New York City in exchange for a cash payment to MEHDIYEV arranged by AMIROV and OMAROV.

(Title 18, United States Code, Sections 1958, 3238, and 2.)

## COUNT TWO
### (Conspiracy to Commit Murder-for-Hire)

The Grand Jury further charges:

11. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth herein.

12. From at least in or about July 2022, up to and including in or about January 2023, in the Southern District of New York and elsewhere, and in an offense begun and committed in Iran, Azerbaijan, Georgia, Slovenia, and elsewhere out of the jurisdiction of any particular State or district of the United States, RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, intentionally and knowingly did combine, conspire, confederate,

and agree together and with each other to commit murder-for-hire, in violation of Title 18, United States Code, Section 1958.

13.   It was a part and an object of the conspiracy that RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, and others known and unknown, would and did travel in and cause others to travel in interstate and foreign commerce, and would and did use and cause another to use a facility of interstate and foreign commerce, with intent that a murder be committed in violation of the laws of the State of New York or the United States as consideration for the receipt of and as consideration for a promise or agreement to pay anything of pecuniary value, to wit, AMIROV, OMAROV, and MEHDIYEV agreed that MEHDIYEV would kill the Victim in exchange for payment, and used cellphones and electronic messaging applications to communicate in furtherance of the scheme.

(Title 18, United States Code, Sections 1958 and 3238.)

### COUNT THREE
**(Money Laundering Conspiracy)**

The Grand Jury further charges:

14.   The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth herein.

15.    From at least in or about July 2022, up to and including in or about January 2023, in the Southern District of New York and elsewhere, and in an offense begun and committed in Iran, Azerbaijan, Georgia, Slovenia, and elsewhere out of the jurisdiction of any particular State or district of the United States, RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956.

16.    It was further a part and an object of the conspiracy that RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of the murder-for-hire offenses charged in Counts

One and Two of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

17. It was further a part and an object of the conspiracy that RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds to a place in the United States from and through a place outside the United States, and to a place outside the United States from and through a place in the United States, in amounts exceeding $10,000, with the intent to promote the carrying on of specified unlawful activity, to wit, the murder-for-hire offenses charged in Counts One and Two of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

18. It was further a part and an object of the conspiracy that RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, and others known and unknown, would and did transport,

transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, in amounts exceeding $10,000, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, the murder-for-hire offenses charged in Counts One and Two of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Sections 1956(h), (f).)

## COUNT FOUR
### (Unlawful Possession of a Defaced Firearm)

The Grand Jury further charges:

19. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as if fully set forth herein.

20. In or about July 2022, in the Southern District of New York and elsewhere, KHALID MEHDIYEV, the defendant, knowingly did possess and receive a firearm which had the importer's and

manufacturer's serial number removed, obliterated, and altered and which had been shipped and transported in interstate and foreign commerce, to wit, MEHDIYEV possessed a Norinco AK-47-style assault rifle manufactured in China and having a removed and obliterated serial number.

(Title 18, United States Code, Sections 922(k) and 2.)

## FORFEITURE ALLEGATIONS

21. As a result of committing the murder-for-hire offenses alleged in Counts One and Two of this Indictment, RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2641, all property, real and personal, which constitutes or is derived from proceeds traceable to said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

22. As a result of committing the money laundering offense alleged in Count Three of this Indictment, RAFAT AMIROV, a/k/a "Farkhaddin Mirzoev," a/k/a "Рим," a/k/a "Rome," POLAD OMAROV, a/k/a "Araz Aliyev," a/k/a "Polad Qaqa," a/k/a "Haci Qaqa," and KHALID MEHDIYEV, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section

982(a)(1), all property, real and personal, involved in the money laundering offense and all property traceable to such property, including but not limited to, a sum of money representing the amount of property that was involved in the money laundering offense or is traceable to such property.

23.    As the result of committing the offense alleged in Count Four of this Indictment, KHALID MEHDIYEV, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved and used in the commission of said offense, including but not limited to the following: (i) a Norinco AK-47-style assault rifle with two ammunition clips; and (ii) approximately 66 rounds of ammunition.

### Substitute Assets Provision

24.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a)    cannot be located upon the exercise of due diligence;

    b)    has been transferred or sold to, or deposited with, a third person;

    c)    has been placed beyond the jurisdiction of the Court;

    d)    has been substantially diminished in value; or

    e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p) and Title 28, United States

Code, Section 2461(c), to seek forfeiture of any other property

of the defendants up to the value of the above forfeitable

property.

(Title 18, United States Code, Sections 924, 981, and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____

FOREPERSON

DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– v. –

RAFAT AMIROV,
a/k/a "Farkhaddin Mirzoev," a/k/a "Рим,"
a/k/a "Rome,"
POLAD OMAROV,
a/k/a "Araz Aliyev," a/k/a "Polad Qaqa,"
a/k/a "Haci Qaqa," and
KHALID MEHDIYEV,

Defendants.

## SEALED SUPERSEDING INDICTMENT

S4 22 Cr. 438 (CM)

(18 U.S.C. §§ 922, 1956, 1958, and 2.)

DAMIAN WILLIAMS
United States Attorney.

Foreperson.