```
O1OBAMIC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                                       22 Cr. 438 (CM)

RAFAT AMIROV,


                Defendant.
                                                  Conference
------------------------------x

                                                  New York, N.Y.
                                                  January 24, 2024
                                                  2:00 p.m.

Before:

                    HON. COLLEEN MCMAHON,

                                      District Judge

                        APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
BY:  JACOB H. GUTWILLIG
    Assistant United States Attorney

LINCOLN SQUARE LEGAL SERVICES, INC.
    Attorneys for Defendant
BY:  MICHAEL W. MARTIN


Also Present: Ismail Djalilov, Interpreter (Azerbaijani)
              Kevin Johnson, Legal Intern
              Tamara Gilbert, Legal Intern

O1OBAMIC

(Case called)

MR. GUTWILLIG:  Good afternoon, your Honor.  Jacob Gutwillig for the government.

MR. MARTIN:  Lincoln Square Legal Services by Michael Martin for Mr. Amirov who is standing to my left.  Also at counsel's table is Tamara Gilbert and Kevin Johnson legal interns at Lincoln Square Legal Services and on Mr. Amirov's team.

THE COURT:  Thank you.  Nice to have you.  Be seated. Old case, government.  Where are we?  Do we need the interpreter's appearance?

THE DEPUTY CLERK:  He's been sworn in the interpreter's office.  Your appearance.

THE INTERPRETER:  Hi, your Honor.  My name is Ismail Djalilov.  I'm the interpreter for the Azerbaijani language.

THE COURT:  Thank you so much.  One of the problems with moving this case appears to be finding an interpreter.

MR. GUTWILLIG: Yes, your Honor.  Understood.  And thank you.  I understand that the Court help facilitate a meeting today for defense counsel with the interpreter before today's appearance.

THE COURT:  Let's figure out how to resolve this case because it needs to move.

MR. GUTWILLIG:  And we are working to do that.  Since we were here last, the parties have been engaged in

O1OBAMIC

prenegotiations.  We've not reached a resolution.  Counsel and I were talking before today's appearance, and we are trying to work something out but are not there.  That has been largely what we've been doing.

THE COURT:  I can't let you keep doing that.  I have to move the case.

MR. GUTWILLIG:  Understood, your Honor.

THE COURT:  It's a 2022 case, okay.  So what's the status?

MR. GUTWILLIG:  The status generally is as I mention, we have engaged in prenegotiations.  There's been no resolution to that.  I think that with respect to discovery, the government has made voluminous discovery productions, including many electronic accounts.

THE COURT:  Do you have any discovery left to produce?

MR. GUTWILLIG:  So the matters left for discovery, there are a couple of things to flag for the Court.  One is that in connection with the arrest of Polad Omarov who remains in the Czech Republic.  And your Honor was correct in predicting that the European court would not move particularly quickly to get him here.  In connection with his arrest and the arrest of Zialat Mamedov who was on the most recent indicted, but also is not here.

THE COURT:  And where is he?

MR. GUTWILLIG:  He went to Georgia the country and not

O1OBAMIC

1     here.
2              THE COURT:  I don't think we're going to be waiting
3     for him.
4              MR. GUTWILLIG:  I think that's correct.  In connection
5     with those arrests, there were approximately four electronic
6     devices that were seized.  The government requested those
7     pursuant to an MLAT.  We have them here.  They are to be
8     produced, the relevant information from those will be produced
9     in discovery.  As the government began looking through them,
10    law enforcement identified what may be child sexual abuse
11    material, which has slowed the production of those to the
12    defense because we have to review them for that and figure out
13    a way that we can provide the relevant materials to defense
14    counsel.  So that has slowed down that piece of it, although
15    those are a co-defendant's devices.
16             THE COURT:  Yeah, I was going to say, what does this
17    guy have to do with any of that.
18             MR. GUTWILLIG:  Not the defendant's devices.
19             THE COURT:  And why you can't give him everything that
20    isn't kiddie porn I don't understand.
21             MR. GUTWILLIG:  We can, but he has to look at it as I
22    understand it in a secure setting because --
23             THE COURT:  He's in a secure setting.
24             MR. GUTWILLIG:  -- so it can segregate out the child
25    pornography.

O1OBAMIC

1          THE COURT:  No.  No.  No.  My question is why can't
2    you just give him a copy of everything that's not child
3    pornography so that we don't have the problem of -- you give
4    him this, this, this and this, this email, this email, this
5    email, this even -- not the next ten, this email, this email.
6    That's what I want to know.  Why can't you do that?
7          MR. GUTWILLIG:  Understood.  My understanding -- and
8    we will figure out the way to do this having dealt with child
9    pornography previously in this circumstance -- is that we can't
10   necessarily provide or segregate out the stuff that's in the
11   extraction that includes the child pornography.  We will figure
12   out how most efficiently to do that so that he can review it
13   either at the FBI or by himself, but we will figure out how to
14   do that.  It is unfortunately as I understand it not quite as
15   straightforward as doing it that way.
16         THE COURT:  I confess, I do not understand.
17         MR. GUTWILLIG:  So there are those materials.  There's
18   also, there will be, as we review our files and find anything
19   additional things to produce in the way of law enforcement
20   reports or things like that; but with respect to discovery kind
21   of writ large, the core of that has been produced.  In terms of
22   status generally, and without getting into the substance of it
23   too much in this setting, the government does anticipate that
24   in this case there would be motion practice pursuant to --
25         THE COURT:  Plus time, guess what.

O1OBAMIC

1              MR. GUTWILLIG:  understood, your Honor.  To do that
2     from the government's perspective that would be the
3     government's next step in this case, along with any motions
4     that the defense wishes to make.
5              THE COURT:  The government wishes to make pretrial
6     motions?
7              MR. GUTWILLIG:  The government would need -- expects
8     that it would make a motion under Section 4 of the Classified
9     Information Procedures Act.  That would be the government's
10    motion.
11             THE COURT:  Well, it's time to make it.
12             MR. GUTWILLIG:  Understood, your Honor.
13             THE COURT:  And it's time to know if the defense wants
14    to make any motions on behalf of the one defendant who I have.
15    So I'll look at the back table.
16             MR. MARTIN:  Might I, your Honor?
17             THE COURT:  I'm waiting, counsel.
18             MR. MARTIN:  May I start by National Security
19    potential discovery that cannot be looked at by my office until
20    I receive National Security clearance.  I finish the process at
21    least at my end eight months ago, nine months ago.  And I did
22    inquire and lead up to this early last week as to my status and
23    did not get a return on that.  So I'm just saying that that is
24    another variable that is happening in this case.
25             The other variable that I think is very important that

O1OBAMIC

1     I do want to thank your deputy Jimmy for helping us out and
2     obviously the interpreter's office for finding an Azerbaijani
3     interpreter that can interpret for Mr. Amirov.  This is the
4     second time we've had somebody speaking Azerbaijani.  Both
5     times they were because the court secured the services.  We are
6     hoping now that we have found Ismail that we will have a more
7     consistent opportunity to speak with our client.
8               But I am not kidding when I say to your Honor, I've
9     effectively been speaking to my client for 12 months in broken
10    Spanish, if I'm a Spanish speaking person. He's Azerbaijani. He
11    speaks Azerbaijani with a touch of Russian.  We've been using a
12    Uzbekistan interpreter that speaks Turkish and Russian, not
13    Azerbaijani, and that has been our primary interpreter for the
14    last 12 months.  I do believe we've finally made very important
15    steps, but I do think that is also one of the causes for this
16    case -- just one of the causes of this case being on relatively
17    a slow track.
18              THE COURT:  Relatively.
19              MR. MARTIN:  Relative to other cases, yes, your Honor.
20    I know my client appreciates your Honor's sense of urgency with
21    regard to this, yet he also understands both the CIPA motion
22    practice, the national security issues, the interpreter issues,
23    and understands why we were going to request your Honor's
24    indulgence for 60 more days to finish potential discussions
25    around the plea before we went into motion practice.

O1OBAMIC

1        I only raise that also, your Honor, because the
2   government has signaled to me that once it begins CIPA
3   practice, it will not entertain substantive plea negotiations
4   thereafter.  And given the interpreter problems that we have
5   had, given my national security clearance, I am requesting the
6   Court's indulgence of an additional 60 days before we hit the
7   spot where I can tell your Honor wants to go, and I understand
8   why your Honor wants to go there.
9        THE COURT:  Can I just ask you if you have motions
10  that you know of now that you would make if we were to proceed
11  with a motion schedule?
12       MR. MARTIN:  At this moment, your Honor, I don't know.
13       THE COURT:  Okay.  So we're literally at this moment
14  talking about the CIPA.
15       MR. MARTIN:  I believe we're talking about CIPA right
16  now, yes.
17       THE COURT:  Is there some reason why the U.S.
18  Attorney's office cannot be of some assistance to Mr. Martin
19  who has been waiting for eight months to be told that he can
20  look at this stuff?
21       MR. GUTWILLIG:  We certainly can, your Honor.  We'll
22  follow-up with the Classified Information Security Officer.
23  Mr. Martin mentioned the issue to me shortly before the
24  conference today.
25       THE COURT:  Thank you.  I appreciate that.  Okay.

O1OBAMIC

I'll do what Mr. Martin wants to do because he's representing the defendant, and he's the person who has the best interest of the defendant foremost in his mind.  If he wants 60 more days to see if he can get clearance and to see if these discussions get -- I don't know how the discussions would possibly bear fruit until he's got the clearances to see the stuff, frankly.

    MR. MARTIN:  Thank you, your Honor.

    THE COURT:  The government wants to jump up for some reason.

    MR. GUTWILLIG:  No, your Honor.  I was going to say from a perspective of CIPA, again without getting into the substance of it here, I wouldn't want to represent that there is some body of classified discovery that counsel will receive if and when he has this clearance.  It's just he needs the clearance if that eventuality does happen through the CIPA process.  So it is a necessary component of this case, but I flag that --

    THE COURT:  It's a necessary component of this case only if you have CIPA discovery to produce.

    MR. GUTWILLIG:  That's correct.

    THE COURT:  And, what, it's a national secret?  It's a national securities secret as to whether you have CIPA production?

    MR. GUTWILLIG:  No, your Honor.

    THE COURT:  I wouldn't think so.  So the answer is

O1OBAMIC

1  either no or yes.
2         MR. GUTWILLIG:  Well, your Honor, I think partially
3  that will depend on what happens with the government's
4  anticipated Section 4 motion.  So he may need that, but he
5  wouldn't need it until later is my point.
6         THE COURT:  Okay.  Mr. Martin, anything you want?
7         MR. MARTIN:  Your Honor, it's beyond the scope of the
8  motion practice and the Court's scheduling.  It does go to my
9  client's health.  He has two pinch nerves in the neck and in
10 the lower back.
11        THE COURT:  Oh, just like me.
12        MR. MARTIN:  So your Honor knows.
13        THE COURT:  I know.  I just took my collar off to come
14 out here.  Maybe I should have kept it on.
15        MR. MARTIN:  He was hoping to get a collar or some
16 look at the MDC.  Because three weeks has made the request, has
17 yet to hear from anybody.
18        THE COURT:  I have an extra one, but I don't think
19 we're the same size.  You can buy them at the CVS.  That's
20 where I got mine in case anybody at the MDC wants to take
21 delivery from Mr. Martin of a collar from the CVS.  It does
22 help when you have pinch nerves in your neck to have one of
23 those collars on.  It's a little awkward, but it does help.  I
24 think it cost me about 20 or $30. I forget.
25        MR. MARTIN:  I would be in touch with the legal

O1OBAMIC

department at the MDC to see if they would accept such a device from me.

THE COURT:  You tell the legal department that Judge McMahon has a particular interest in seeing that a prisoner in a case before her who has cervical spine problems gets one of those collars.

MR. MARTIN:  Thank you, your Honor.

THE COURT:  Just tell them that I'm really, really interested in getting him a collar.

MR. MARTIN:  Thank you.

THE COURT:  I hope.  Okay.  Mr. O'Neil, can we put this on in early April because we know we have a trial that consumes March.  Of course we have a trial that consumes April too, but.

THE DEPUTY CLERK:  April 8th we can do it at 2.  How about the interpreter's availability?

THE COURT:  That's right.  I can't even set a date.

THE INTERPRETER:  Thank you for asking.  I apologize. I have no idea.

THE COURT:  You see.  Okay.  We're going to set a control date.  The control date is going to be Monday, April the 8th at 2:00.  I'm supposed to be on trial that day.  It's a trial that has to be completed before Pesach.

MR. MARTIN:  Your Honor is likely not the astronomy enthusiast that I am.  There's a total eclipse of the sun

O1OBAMIC

1  Monday at 3:45 if you happen to be north of Albany.
2              THE COURT:  Would you like to be north of Albany?
3              MR. MARTIN:  I was thinking about doing it that day.
4              THE COURT:  Well, then, we won't do it on that day.
5              MR. MARTIN:  Thank you, your Honor.  I appreciate
6  that.
7              THE COURT:  You go.  You see the total eclipse.
8              MR. MARTIN:  I will, and I will come back and report
9  on it.
10             THE COURT:  That's great. Could you come on the 9th?
11             MR. MARTIN:  I can.  In the afternoon only because we
12 teach in the morning.
13             THE COURT:  Make it at the end of the day, 4:00, on
14 the afternoon of April 9th.  That's a control date.  Let's get
15 to work now to try to see if we can secure the services of the
16 interpreter for that date.  You said that I was correct in my
17 prediction about how quickly we would be able to get the
18 co-defendant here from the Czech Republic.  What is going on
19 over there?  I'm just curious.  Nothing.
20             MR. GUTWILLIG:  My understanding is that -- and we
21 checked on it again leading up to this conference, and my
22 understanding is that until the European court rendered its
23 judgment, the Czechs will themselves not do anything, and that
24 has not yet happened.  And I am not aware of a way to make it
25 happen.

O1OBAMIC

THE COURT: Okay. Well, I'll probably be dead by the time this man ends up in the United States.

MR. GUTWILLIG: I hope not.

THE COURT: The only person I care about in this case is Mr. Amirov.

MR. GUTWILLIG: Understood.

THE COURT: Everybody else is irrelevant to me. I care about Mr. Amirov. I care about getting his circumstances resolved.

MR. GUTWILLIG: Understood, your Honor.

THE COURT: He's here. They're not. Okay. So we're adjourned at the request of the defendant to the 9th of April. Time excluded in the interest of justice and with the consent of the defendant.

I thank the government in advance for any efforts it can make with the CIPA people so that Mr. Martin can get his clearance so that we can begin the process of CIPA litigation if that's going to happen, cause I really don't want to put it off any longer. Anything else?

MR. GUTWILLIG: Not from the government.

THE COURT: We've got an interpreter here, so if there is anything else --

MR. MARTIN: Not from the defendant, your Honor. Again my thanks to Jimmy for arranging our opportunity to speak with Mr. Amirov and Mr. Ismail earlier today, and that was very,

O1OBAMIC

1  very helpful. Thank you.
2          THE COURT:  We'll do it again, but at least now you
3  know where he is.  Okay.
4          (Adjourned)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25