UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    v.<br><br> RAFAT AMIROV,<br>   a/k/a "Farkhaddin Mirzoev,"<br>   a/k/a "Рим,"<br>   a/k/a "Rome," and<br> POLAD OMAROV,<br>   a/k/a "Araz Aliyev,"<br>   a/k/a "Novruz Novruzzade,"<br>   a/k/a "Polad Qaqa,"<br>   a/k/a "Haci Qaqa,"<br><br>                    Defendants. | S8 22 Cr. 438 (CM) |

<br><br>

**GOVERNMENT'S REQUESTS TO CHARGE**

<br><br>

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Jacob H. Gutwillig
Matthew J.C. Hellman
Michael D. Lockard
Assistant United States Attorneys
        *Of Counsel*

**TABLE OF CONTENTS**

Request No. 1:        General Requests ......................................................................... 2

Request No. 2:        The Indictment............................................................................. 4

Request No. 3:        Summary of the Indictment / Multiple Counts ........................ 5

Request No. 4:        Multiple Defendants.................................................................... 6

Request No. 5:        Use of Recordings and Translations ......................................... 7

Request No. 6:        "Knowingly," "Intentionally," and "Willfully"....................... 8

Request No. 7:        Count One: Murder-for-Hire....................................................... 9

Request No. 8:        Count One: Murder-for-Hire: First Element—Use of Interstate
                      Commerce................................................................................... 10

Request No. 9:        Count One: Murder-for-Hire: Second Element—Intent to
                      Commit Murder .......................................................................... 12

Request No. 10:       Count One: Murder-for-Hire: Third Element—Payment of
                      Money or Other Item of Pecuniary Value ............................... 13

Request No. 11:       Count One: Murder-for-Hire—Aiding and Abetting............................ 14

Request No. 12:       Count Two: Murder-for-Hire Conspiracy—Conspiracy Generally....... 16

Request No. 13:       Count Two: Murder-for-Hire Conspiracy: First Element—
                      Existence of the Conspiracy ...................................................... 18

Request No. 14:       Count Two: Murder-for-Hire Conspiracy: Second Element—
                      Membership in the Conspiracy................................................... 21

Request No. 15:       Count Three: Conspiracy to Commit Money Laundering .................... 22

Request No. 16:       Count Three: Money Laundering Conspiracy—Objects........................ 23

Request No. 17:       Count Three: Money Laundering Conspiracy—Objects—
                      Domestic Concealment............................................................... 25

Request No. 18:       Count Three: Money Laundering Conspiracy—Objects—
                      International Concealment.......................................................... 28

Request No. 19:       Count Three: Money Laundering Conspiracy—Objects—
                      International Promotion .............................................................. 31

Request No. 20:       Count Four: Violent Crime in Aid of Racketeering............................ 33

i

Request No. 21:      Count Four: Violent Crime in Aid of Racketeering: First Element—The Existence of the Enterprise............................................. 34

Request No. 22:      Count Four: Violent Crime in Aid of Racketeering: Second Element—The Enterprise Engaged in Racketeering Activity ............... 36

Request No. 23:      Count Four: Violent Crime in Aid of Racketeering: Third Element—The Enterprise Engaged in or its Activities Affected Interstate or Foreign Commerce ............................................................ 38

Request No. 24:      Count Four: Violent Crime in Aid of Racketeering: Fourth Element—The Defendant Committed Attempted Murder .................... 40

Request No. 25:      Count Four: Violent Crime in Aid of Racketeering: Fifth Element—The Defendant's General Purpose in Committing the Attempted Murder Was, in Part, to Gain Entrance to the Enterprise, or Maintain or increase the Defendant's Position in the Enterprise ......................................................................................... 42

Request No. 26:      Count Five: Firearm Offenses—General Instructions ........................... 43

Request No. 27:      Count Five: Firearm Offenses: First Element—Commission of the Predicate Offense ............................................................................. 44

Request No. 28:      Count Five: Firearm Offenses: Second Element—"Using," "Carrying," or "Possessing" ................................................................... 45

Request No. 29:      Count Five: Elements ............................................................................. 47

Request No. 30:      Venue ...................................................................................................... 48

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

RAFAT AMIROV,
  a/k/a "Farkhaddin Mirzoev,"
  a/k/a "Рим,"
  a/k/a "Rome,"
POLAD OMAROV,
  a/k/a "Araz Aliyev,"
  a/k/a "Novruz Novruzzade,"
  a/k/a "Polad Qaqa,"
  a/k/a "Haci Qaqa,"

Defendants.

S8 22 Cr. 438 (CM)

## GOVERNMENT'S REQUESTS TO CHARGE

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government respectfully requests that the Court include the following in its charge to the Jury.

1

**Request No. 1:**  **General Requests**

The Government respectfully requests that the Court give its ordinary instructions to the jury on the following matters:

    a.  Role of the Court

    b.  Role of the Jury

    c.  Role of Counsel / Objections

    d.  Sympathy or Bias

    e.  Each Count to be Considered Separately

    f.  Presumption of Innocence and Burden of Proof

    g.  Reasonable Doubt

    h.  What Is and Is Not Evidence

    i.  Stipulations

    j.  Use of Evidence Obtained Pursuant to Searches

    k.  Direct and Circumstantial Evidence

    l.  Witness Credibility

    m.  Cooperating Witness Testimony

    n.  Law Enforcement Witnesses

    o.  Expert Witnesses

    p.  Bias of Witnesses

    q.  Preparation of Witnesses

    r.  Uncalled Witnesses

    s.  Persons Not on Trial

    t.  Punishment Not to Be Considered by Jury

    u.  Defendants' Testimony [If Defendant Does Not Testify]

    v.  Redaction of Evidentiary Items [If Applicable]

w.  Government Investigation—Particular Investigative Techniques Not Required

x.  Variance in Dates

**Request No. 2:**         **The Indictment**

The defendants, Rafat Amirov and Polad Omarov, are formally charged in an Indictment. As I instructed you at the beginning of this trial, the Indictment merely describes the charges made against the defendants.  An Indictment is a formal method of bringing a case into court for trial and determination by a jury.  You may draw no inference of any kind from the fact that an Indictment was handed down.  Under our law, a person who has been accused of a crime is presumed to be innocent.  Therefore, you may not consider the fact that the defendants were accused of a crime in an Indictment as evidence of their guilt.

**Request No. 3:**          **Summary of the Indictment / Multiple Counts**

Let us now turn to the specific charges against the defendants.

Count One charges that, from at least in or about July 2022, up to and including January 2023, the defendants committed murder-for-hire.

Count Two charges that, from at least in or about July 2022, up to and including January 2023, the defendants committed conspiracy to commit murder-for-hire.

Count Three charges that, from at least in or about July 2022, up to and including January 2023, the defendants participated in a conspiracy to commit money laundering.

Count Four charges that, from in or about June 2022 through in or about July 2022, the defendants attempted to commit a violent crime in aid of racketeering.

Count Five charges that, from in or about June 2022 through in or about July 2022, the defendants used and carried a firearm during and in relation to a crime of violence, referring to the crime charged in Count Four.

You must separately consider and return a verdict as to each count. There is no significance to the order of the counts or to the number of counts charged.

> Adapted from Hon. Colleen McMahon, Jury Charge, *United States v. Solla*, 19 Cr. 740 (S.D.N.Y. 2021); Hon. Valerie E. Caproni, Jury Charge, *United States v. Cortorreal*, 17 Cr. 438 (S.D.N.Y. 2023).

**Request No. 4:**          **Multiple Defendants**

As I've just described, there are two defendants on trial before you.   You must, as a matter of law, consider each defendant's involvement in the charged offense separately, and you must return a separate verdict on each defendant.

In reaching your verdict, bear in mind that guilt is personal and individual. Your verdict of guilty or not guilty must be based solely upon the evidence about each defendant. The case against each defendant stands or falls upon the proof or lack of proof against that defendant alone, and your verdict as to one defendant should not control your decision as to the other defendant. No other considerations are proper.

> Adapted from Hon. Paul G. Gardephe, Jury Charge, *United States v. John F. Gargan, et al.*, 18 Cr. 723 (PGG) (S.D.N.Y. 2019); the Hon. Shira A. Scheindlin, Jury Charge, *United States v. Ricardo Rodriguez, et al.*, 03 Cr. 1501 (SAS) (S.D.N.Y. 2005).

6

**Request No. 5:**     **Use of Recordings and Translations**

Video and audio recordings of various foreign-language conversations have been admitted into evidence, and transcripts containing English-language translations of those foreign language recordings have been admitted into evidence. I instruct you that it is the English translation of the conversations reflected on those transcripts that is the evidence. (*If applicable: The parties have stipulated that the English translation of the conversations are accurate and admissible as evidence.*) As a result, you should not substitute your own understanding of any of the foreign languages for that of any translation that was admitted in evidence; you must accept the translations without regard to your own understanding of those foreign languages.

Whether you approve or disapprove of the recording of those conversations may not enter your deliberations. I instruct you that these recordings were made in a lawful manner, that no one's rights were violated, that the Government's use of this evidence is entirely lawful, and that it was properly admitted into evidence at this trial.

You must, therefore, regardless of any personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved beyond a reasonable doubt the guilt of the defendant. Of course, it is for you to decide what weight, if any, to give to this evidence.

If you wish to hear any of the recordings again, or see any of the transcripts of the foreign-language recordings, they will be made available to you during your deliberations.

> Adapted from the Hon. Paul G. Gardephe, Jury Charge, *United States v. John F. Gargan, et al.*, 18 Cr. 723 (PGG) (S.D.N.Y. 2019); Hon. P. Kevin Castel, Jury Charge, *United States v. Geovanny Fuentes Ramirez*, 15 Cr. 379 (PKC) (S.D.N.Y. 2021); Hon. Richard J. Sullivan, Jury Charge, *United States v. Khalif Phillips*, 13 Cr. 723 (RJS) (S.D.N.Y. 2014) and the Hon. Paul A. Engelmayer, Jury Charge, *United States v. Martinez*, 13 Cr. 699 (PAE) (S.D.N.Y. 2014).

**Request No. 6:**        **"Knowingly," "Intentionally," and "Willfully"**

Let's start by defining some of the concepts that you are going to hear repeatedly: "knowingly," "intentionally," and "willfully."

A person acts "knowingly" if he acts intentionally and voluntarily and not because of ignorance, mistake, accident, or carelessness.  An act is done "intentionally" if it is done deliberately and purposefully; that is, the defendant's acts must have been the product of his conscious objective, rather than the product of force, mistake, accident, mere negligence, or some other innocent reason.  Similarly, an act is done "willfully" if it is done voluntarily (that is, of one's own, unforced, free will) with an intent to break the law.

Whether the defendant acted knowingly, intentionally, and willfully may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

Now, knowledge, intent, and willfulness are a matter of inference from the proven facts.  Science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking.  However, you do have before you the evidence of certain acts and conversations alleged to have taken place involving the defendants or in their presence.  You must consider this evidence—or lack of evidence—in determining whether the Government has proven beyond a reasonable doubt each defendant's knowledge, intent, and willfulness.

Adapted from Hon. Colleen McMahon, Jury Charge, *United States v. Solla*, 19 Cr. 740 (S.D.N.Y. 2021).

**Request No. 7:**          **Count One: Murder-for-Hire**

Count One has three elements:

First, that the defendant used a facility of interstate or foreign commerce or caused another person to use a facility of interstate commerce;

Second, that the defendant engaged in or caused this interstate conduct, whether undertaken by the defendant or someone else, with the intent to help bring about the murder of another person, in violation of the laws of any State or of the United States; and

Third, that the defendant intended that the murder be committed as a consideration for the receipt of anything of value.

> Adapted from Sand, *Modern Jury Instructions*, Instr. 60-14; Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); *see also United States v. Ritter*, 989 F.2d 318, 321 (9th Cir. 1993) (setting forth elements of murder-for-hire).

9

**Request No. 8:**    **Count One: Murder-for-Hire: First Element—Use of Interstate Commerce**

The first element that the Government must prove is that the defendant used or caused someone else to use a facility of interstate or foreign commerce.

The term "facility of interstate commerce" includes means of transportation and communication.  This includes, for example, the use of a telephone where the telephone network is capable of placing calls between states or internationally, regardless of whether or not the actual telephone call or text message crossed state lines.

The use of a facility of interstate commerce must have occurred to facilitate or further the commission of the murder-for-hire.  It need not have been the only reason, or even the principal reason, for the use of the facility of interstate commerce, as long as it was one of the reasons for that use.

To meet its burden of proof on the first element, the Government need not prove that the defendant himself used a facility of interstate commerce, or that the defendant knew that he used or caused the use of a facility of interstate commerce.  The Government need only prove that the defendant in fact used or caused another person to use a facility of interstate commerce.

> Adapted from Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); Hon. John F. Keenan, Jury Charge, *United States v. Ramos*, 98 Cr. 412 (S.D.N.Y. 1999); Hon. Michael B. Mukasey, Jury Charge, *United States v. Yu*, 94 Cr. 375 (S.D.N.Y. 1994).  *See* 18 U.S.C. § 1958(B)(2) (defining "facility of interstate commerce"); Sand, *Modern Federal Jury Instructions*, Instr. 60-15; *United States v. Edelman*, 873 F.2d 791, 795 (5th Cir. 1989); *United States v. Sigalow*, 812 F.2d 783, 785-86 (2d Cir. 1987); Sand, *Modern Federal Jury Instructions*, Instr. 60-6 (knowledge of interstate element); *United States v. Razo-Leora*, 961 F.2d 1140, 1148 (5th Cir. 1992).  *See also*, *e.g.*, 18 U.S.C. § 1958(b)(2) (stating that "'facility of interstate or foreign commerce' includes means of transportation and communication"); *United States v. Marek*, 238

10

F.3d 310, 313 (5th Cir. 2001) ("We now . . . hold that § 1958's use of a 'facility of interstate commerce' is synonymous with the use of an 'interstate commerce facility' and satisfies the jurisdictional element of that federal murder-for-hire statute, irrespective of whether the particular transaction in question is itself inter state or wholly intra state.") (affirming murder-for-hire conviction where defendant's use of Western Union wire transfer was wholly intra state); *United States v. Perez*, 414 F.3d 302, 304- 05 (2d Cir. 2005) (adopting the reasoning of Marek in § 1958 prosecution involving wholly intra state telecommunications, because the network used did provide local customers with access to long-distance calling plans and was therefore "undeniably a facility involved in interstate communication"); *United States v. Ballinger*, 395 F.2d 1218, 1225-26 & n.3 (11th Cir. 1995) (affirming conviction under 18 U.S.C. § 247 of church arsonist who traveled by car on interstate highways to commit crimes and explaining that "[c]hannels of commerce are 'the interstate transportation routes through which persons and goods move.' These channels include highways, railroads, navigable waters, and airspace, as well as telecommunications networks, and national securities markets.") (emphasis added) (footnotes and citations omitted).

11

**Request No. 9:**          **Count One: Murder-for-Hire: Second Element—Intent to Commit Murder**

The second element that the Government must prove is that the defendant used or caused the use of a facility of interstate commerce with the intent to help bring about the murder of another person.  Here, that person is alleged to be Masoumeh "Masih" Alinejad.

The Government does not have to prove that the murder was committed or even that it was attempted.  Rather, it must prove that the use of the facility of interstate commerce was done with the intent to further or facilitate the commission of the murder.  You are thus being asked to look into the mind of the defendant and ask what was the purpose of the defendant using or causing the use of a facility of interstate commerce.  You may determine that intent from all the evidence that has been placed before you, including any statements made by the defendant you are considering, statements by co-conspirators, and the defendant's conduct both before and after the use of the interstate facilities.

> Adapted from Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); Hon. John F. Keenan, Jury Charge, *United States v. Ramos*, 98 Cr. 412 (S.D.N.Y. 1999); and the Hon. Michael B. Mukasey, Jury Charge, *United States v. Yu*, 94 Cr. 375 (S.D.N.Y. 1994); Sand, *Modern Federal Jury Instructions*, Instr. 60-16, 60-17; 2 *Crim. Jury Instrs*. (NY), P.L. 125.25(1), at 204.

**Request No. 10:**     **Count One: Murder-for-Hire: Third Element—Payment of Money or Other Item of Pecuniary Value**

The third element that the Government must prove is that the defendant intended that the murder be committed as consideration for the receipt of anything of value.

This requires that there was a mutual agreement, understanding, or promise that something of value would be exchanged for committing the murder.

"Anything of value" means, for example, money, or anything else the primary significance of which is economic advantage, including drugs, weapons, forgiveness of a debt, or anything else that has quantifiable monetary value.

> Adapted from Hon. P. Kevin Castel, Jury Charge, *United States v. Collins, et al.*, 19 Cr. 395 (S.D.N.Y. 2020); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); Hon. John F. Keenan, Jury Charge, *United States v. Ramos*, 98 Cr. 412 (S.D.N.Y. 1999); and the Hon. Michael B. Mukasey, Jury Charge, *United States v. Yu*, 94 Cr. 375 (S.D.N.Y. 1994); Sand, *Modern Federal Jury Instructions*, Instr. 60-16, 60-17; 2 *Crim. Jury Instrs*. (NY), P.L. 125.25(1), at 204; *United States v. Phillips*, 929 F.3d 1120, 1124 (9th Cir. 2019) (the phrase "anything of value" in § 1958 "broadly applies to currency, drugs, weapons, or anything else that has quantifiable monetary value," and applies to the forgiveness of a debt, even where debt is not legally enforceable); *United States v. Gibson*, 530 F.3d 606, 609 (7th Cir. 2008) (district court properly instructed jury that "[i]n considering whether 'anything of pecuniary value' was received or promised or agreed to be paid as consideration for the alleged murder, you are instructed that not only money, but also drugs, guns, or involvement in future crimes which would yield cash profits, can also constitute consideration."); *United States v. Hardwick*, 523 F.3d 94, 100 (2d Cir. 2008) ("[T]he pecuniary value requirement [in Section 1958] is satisfied, for example, by the payment or promise of sale-level quantities of drugs[.]").

**Request No. 11:          Count One: Murder-for-Hire—Aiding and Abetting**

Now, I will instruct you on the concept of aiding and abetting.  For Count One, a defendant may be found guilty if he aided and abetted a third party who committed the crime.  Aiding and abetting liability is its own theory of criminal liability.

Under the relevant federal statute, one way that a defendant may be found guilty of aiding and abetting a crime is if that defendant, while not himself committing the crime, assisted another person or persons in committing the crime.  Specifically, under the federal aiding-and-abetting statute, whoever "aids, abets, counsels, commands, induces or procures" the commission of an offense is punishable as a principal.  A person who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself.

Therefore, if you find that the Government has proven beyond a reasonable doubt that another person actually committed a crime with which a defendant is charged, and that the defendant you are considering aided and abetted that person in the commission of the offense, then you may find the defendant you are considering guilty of that crime. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person.   But if you do find that a crime was committed, then you must consider whether the defendant you are considering aided or abetted the commission of the crime.

Under this theory, in order to aid and abet another to commit a crime, it is necessary that a defendant willfully and knowingly associated himself in some way with the crime, and that he willfully and knowingly sought by some act to help make the crime succeed. Participation in a crime is willful if action is taken voluntarily and intentionally or, in the case of a failure to act, with the specific intent to fail to do something the law requires to be done—that is to say, with a bad purpose either to disobey or to disregard the law.

The mere presence of a defendant where a crime is being committed, even when coupled

14

with knowledge by that defendant that a crime is being committed, is not sufficient to make that defendant guilty as an aider and abettor. Such a defendant would only be guilty of the offenses as an aider or abettor if in addition to knowing of the criminal activity he actually took some action intending to help the crime succeed.

In considering this theory of liability, ask yourselves these questions:

- Did the defendant you are considering participate in the crime charged as something he wished to bring about?

- Did he associate himself with the criminal venture knowingly and willfully?

- Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant you are considering is an aider and abettor, and therefore guilty of the offense.

Under the statute, another way a defendant may be found guilty of aiding and abetting the criminal acts of another is if that defendant intentionally caused another person to physically commit the crime.  Specifically, the statute provides that whoever "willfully causes an act to be done which if directly performed by him or another" would be an offense, is punishable as a principal.

Thus, as to Count One, if the defendant you are considering intentionally caused another to commit murder-for-hire, then the defendant is guilty of the crime charged in Count One as if he had physically committed the crime himself.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instrs. 11-1 and 11-2; Hon. P. Kevin Castel, Jury Charge, *United States v. Hernandez*, 15 Cr. 379 (PKC) (S.D.N.Y. 2024); Hon. Richard J. Sullivan, Jury Charge, *United States* v. *Hussain*, 12 Cr. 45 (RJS) (S.D.N.Y. 2013); Hon. Sidney H. Stein, Jury Charge, *United States* v. *Roger Key*, 12 Cr. 712 (S.D.N.Y. 2014); Hon. Paul A. Engelmayer, Jury Charge, *United States* v. *Lopez-Cabrera*, 11 Cr. 1032 (PAE).

15

**Request No. 12:**          **Count Two: Murder-for-Hire Conspiracy—Conspiracy Generally**

I will now turn to Count Two.  Count Two is a conspiracy to commit murder-for-hire.  For this count, the underlying crime—murder-for-hire, which has the elements I just explained—is what's called the "object" of the conspiracy.

Before we talk about conspiracy to commit murder-for-hire, let me say a few words about the crime of conspiracy generally.  A conspiracy is an agreement or understanding between two or more people to accomplish some unlawful purpose by joint action.  A conspiracy is sometimes referred to as a partnership in crime.

If a conspiracy exists, it is punishable as a crime, even if its purpose is never carried out, or if the law was never actually violated—in other words, even if the conspiracy was not successful.  It is the agreement itself that is the crime.

So here, the crime of conspiracy to commit murder-for-hire is separate and distinct from the actual commission of murder-for-hire, which the law refers to as a "substantive crime."  You may therefore find a defendant guilty of the crime of conspiracy—and, here, conspiracy to commit murder-for-hire—even if you find that the substantive crime that was the object of the conspiracy—here, murder-for-hire—did not occur.   Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful.  This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

To sustain its burden of proof with respect to the charge of conspiracy contained in Count Two of the Indictment, the Government must prove beyond a reasonable doubt the following two elements:

First, the existence of the conspiracy charged.  In other words, the Government must prove that there was, in fact, an agreement or understanding to violate the murder-for-hire law.

16

Therefore, the first question for you is: Did the conspiracy alleged in Count Two exist? Was there such a conspiracy?

Second, that the defendant you are considering knowingly became a member of the conspiracy charged in Count Two. That is, the Government must prove that the defendant knowingly associated himself with, and participated in, the conspiracy to violate the murder-for-hire law.

> Adapted from Hon. Colleen McMahon, Jury Charge, *United States v. Solla*, 19 Cr. 740 (S.D.N.Y. 2021); Hon. Jed S. Rakoff, Jury Charge, *United States v. Scales*, 19 Cr. 96 (JSR) (S.D.N.Y. 2021); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (PKC) (S.D.N.Y. 2016).

**Request No. 13:**        **Count Two: Murder-for-Hire Conspiracy: First Element—Existence of the Conspiracy**

Turning now to the first element, the Government must show the existence of the conspiracy; which, here, had as its purpose to commit murder-for-hire.

Now, to show a conspiracy, the Government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that they had formed a conspiracy to violate the law and setting forth details of the plans and means by which the unlawful project is to be carried out or the part to be played by each conspirator. Common sense will tell you that when people enter into a criminal conspiracy, much may be left to the unexpressed understanding. It is rare that a conspiracy can be proven by direct evidence of an explicit agreement. The agreement may be implicit. It is sufficient if two or more persons in some way or manner, impliedly or tacitly, come to a common understanding to violate the law.

In order for the Government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or in writing, what the scheme was, its object or purpose, every precise detail of the scheme, or the means by which its object or purpose was to be accomplished. What the Government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

In determining whether there has been an unlawful agreement as alleged in Count Two, you may consider the actions of all the alleged co-conspirators that were taken to carry out the apparent criminal purpose, if any. The old adage, "actions speak louder than words," applies here. Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts on the part of the alleged individual co-conspirators. When taken all together

18

and considered as a whole, however, that conduct may warrant the inference that a conspiracy existed just as conclusively as more direct proof, such as evidence of an express agreement.

In considering whether or not the Government has proven beyond a reasonable doubt that the conspiracy charged in the Indictment existed, you should consider all the evidence that has been admitted with respect to the conduct and statements of each alleged co-conspirator, and any inferences that may reasonably be drawn from that conduct and those statements. It is sufficient to establish the existence of the conspiracy, as I have already said, if, from the proof of all the relevant facts and circumstances, you find beyond a reasonable doubt that the minds of at least two alleged co-conspirators met in an understanding way, to accomplish the objective of the conspiracy charged in the Indictment.

Object of the Conspiracy

The object of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve. The object of the conspiracy charged in Count Two is to violate the law against murder-for-hire, which has the three elements I described in instructing you on Count One.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 19-4; Honorable William H. Pauley III in *United States v. Davis et al.*, 06 Cr. 911 (WHP) (S.D.N.Y. 2010); Hon. Vernon S. Broderick, Jury Charge, *United States v. Ramos-Nunez*, 14 Cr. 102 (VSB) (S.D.N.Y. 2014); Hon. Katherine B. Forrest, Jury Charge, *United States v. Benito del Rosario*, 12 Cr. 81 (KBF) (S.D.N.Y. 2012); Hon. Laura Taylor Swain, Jury Charge, *United States v. Nelson Solano*, 05 Cr. 563 (LTS) (S.D.N.Y. 2010); Hon. Colleen McMahon, Jury Charge, *United States v. Omar Gonzalez*, 10 Cr. 588 (CM) (S.D.N.Y. 2010); the Honorable Leonard B. Sand in United States *v.* Rios, 91 Cr. 914 (S.D.N.Y. 1992); the charge of the Honorable Kevin T. Duffy in *United States v. Ogarro*, 92 Cr. 114 (S.D.N.Y. 1992); the charge of the Honorable Kevin T. Duffy in *United States v. Burnett*, 92 Cr. 731 (S.D.N.Y. 1993); and the charge of the Honorable Laura Taylor Swain in *United States v. Jose Ovalle*, 02 Cr. 975 (S.D.N.Y. 2003); Sand, et al., *Modern Federal Jury Instructions,* Instr. 19 4. *See United States v. Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992) ("In order to prove conspiracy, the Government need not present evidence of

19

an explicit agreement; proof of a tacit understanding will suffice. The conspirators need not have agreed on the details of the conspiracy, so long as they have agreed on the essential nature of the plan, and their goals need not be congruent, so long as they are not at cross purposes.") (citations omitted); *United States v. Montour*, 944 F.2d 1019, 1025 (2d Cir. 1991) ("To prove the existence of an agreement, the Government need not present evidence of a formal arrangement between the co-conspirators. Rather, it is sufficient if the Government can demonstrate that the defendants acted together with others to realize a common goal") (citations omitted); *United States v. Rubin*, 844 F.2d 979, 983 84 (2d Cir. 1988) (generally discussing proof of agreement).

**Request No. 14:**    **Count Two: Murder-for-Hire Conspiracy: Second Element— Membership in the Conspiracy**

The second element of a conspiracy count that the Government must prove beyond a reasonable doubt is that the defendant participated in the conspiracy with knowledge of its unlawful purposes and in furtherance of its unlawful objectives.  Once again, what the Government must prove beyond a reasonable doubt is that the defendant you are considering intentionally and knowingly entered into the conspiracy charged in Count Two with a criminal intent—that is, with a purpose to violate the law—and that the defendant agreed to take part in the conspiracy to promote and cooperate in its unlawful objective.

> Adapted from Adapted from Hon. Jed S. Rakoff, Jury Charge, *United States v. Scales*, 19 Cr. 96 (JSR) (S.D.N.Y. 2021); Hon. P. Kevin Castel, Jury Charge, *United States v. Grasesqui*, 10 Cr. 74 (S.D.N.Y. 2016); Hon. Richard J. Sullivan, Jury Charge, *United States v. Mercedes*, 10 Cr. 74 (S.D.N.Y. 2017); *United States v. Rios*, 91 Cr. 914 (S.D.N.Y. 1992); Sand, *Modern Federal Jury Instructions*, Instr. 19-6, 56-18; and *United States v. Townsend*, 987 F.2d 927 (2d Cir. 1993) (defining "intentionally").  *See United States v. Aleskerova*, 300 F.3d 286, 292-93 (2d Cir. 2002) (describing manner in which Government may show participation in conspiracy with required state of mind); *United States v. Rea*, 958 F.2d 1206, 1214 (2d Cir. 1992) ("The defendant's knowledge of the conspiracy and participation in it with the requisite criminal intent may be established through circumstantial evidence. A defendant need not have joined a conspiracy at its inception in order to incur liability for the unlawful acts of the conspiracy committed both before and after he or she became a member."); *United States v. Miranda-Ortiz*, 926 F.2d 172, 175-76 (2d Cir.) (generally discussing proof required to show membership in conspiracy), *cert. denied*, 112 S. Ct. 347 (1991); *United States v. Maldonado-Rivera*, 922 F.2d 934, 960 (2d Cir.) (same), *cert. denied*, 111 S. Ct. 2858 (1991).

**Request No. 15:          Count Three: Conspiracy to Commit Money Laundering**

Count Three charges the defendants with participating in a conspiracy to commit money laundering offenses.

To prove Count Three, the government must prove beyond a reasonable doubt the following two elements:

First, the existence of the conspiracy charged. In other words, that two or more persons entered into the unlawful agreement to commit money laundering offenses; and

Second, that the defendant willfully and knowingly became a member of the conspiracy charged in Count Three.

These are the same two basic elements as the charge in Count Two alleging conspiracy to commit murder-for-hire. Accordingly, except for certain differences I will explain to you in a moment, you should follow the instructions I have previously provided to you about conspiracies in connection with Count Two.

The conspiracy charged in Count Three has different objects or criminal goals than the object of the conspiracy charged in Count Two. The objects of Count Three's conspiracy are money laundering offenses.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 50A-12 to 14; Hon. Loretta A. Preska, Jury Charge, *United States v. Adelekan*, No. 19 Cr. 291 (LAP) (S.D.N.Y. 2021).

**Request No. 16:**         **Count Three: Money Laundering Conspiracy—Objects**

I will now give you the elements of the objects of the money laundering conspiracy charged in Count Three.  The primary federal money laundering statute can be violated in several ways. Three such violations are alleged to be the objects of the money laundering conspiracy charged in Count Three.  I will explain each in turn.

First, it is a violation of the money laundering statute to engage in domestic concealment— that is, to participate in a domestic financial transaction that involves the proceeds of a specified unlawful activity, knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.  This type of money laundering is known as "domestic concealment" money laundering.

 Second, it is a violation of the money laundering statute to engage in international concealment—that is, to participate in a foreign financial transaction that involves the proceeds of a specified unlawful activity, knowing that the transaction was designed to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

Third, it is a violation of the money laundering statute to engage in international promotion—that is, to participate in a foreign financial transaction with the intent to promote the carrying on of specified unlawful activity.

Each of these money laundering violations has unique elements, which I will now go over.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instrs. 50A-26, Instr. 50A-7, 50A-8, 50A-9; *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003); and guidance from *United States v. Santos*, 553 U.S. 507, 517 (2008) (discussing the meanings of "promote"), *United States v. Iossifov*, 45 F.4th 899, 913 (6th Cir. 2022) ("while the terms 'monetary instrument' and 'funds' are not defined within the money laundering statute, courts that have addressed this question have unanimously determined that Bitcoin falls under those terms"), *cert. denied*, 143 S. Ct. 812 (2023); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) ("The money

laundering statute is broad enough to encompass use of Bitcoins in financial transactions.").

**Request No. 17:**        **Count Three: Money Laundering Conspiracy—Objects—Domestic Concealment**

Let me now describe the elements of domestic concealment money laundering.  There are three elements to concealment money laundering:

First, that the defendant conducted or attempted to conduct a "financial transaction" involving property constituting the proceeds of specified unlawful activity, specifically, murder-for-hire.

Second, that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

Third, that the defendant knew that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity.

The first element of domestic concealment money laundering is that the defendant conducted a financial transaction involving property constituting the proceeds of specified unlawful activity, specifically, murder-for-hire.

The term "conducts" includes initiating, concluding, or participating in initiating or concluding a transaction.

The term "financial transaction" means a transaction involving a financial institution that is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree, or a transaction that in any way or degree affects interstate or foreign commerce and involves the movement of funds by wire or other means, or involves one or more monetary instruments.  I instruct you that a federally insured bank constitutes a "financial institution."

A "transaction involving a financial institution" includes a deposit, withdrawal, transfer between accounts, exchange of currency, loan, extension of credit, purchase of sale of any stock,

bond, certificate of deposit, or other monetary instrument, use of a safe deposit box, or any other payment, transfer, or delivery by, through, or to a financial institution by whatever means.

The term "interstate or foreign commerce" means commerce between any combination of states, territories or possessions of the United States, or between the United States and a foreign country. In determining whether someone is engaged in, or whether his activities affect, interstate or foreign commerce, the involvement in interstate or foreign commerce can be minimal. Any involvement at all will satisfy this element.

The term "monetary instrument" includes, among other things, coin or currency of the United States or any other country, personal checks, traveler's checks, cashier's checks, bank checks, money orders, and investment securities or negotiable instruments in bearer form or otherwise in such form that title thereto passes upon delivery.

The term "proceeds" means any property derived, directly or indirectly, from some form of unlawful activity, including the gross receipts of such activity. Proceeds can be any kind of property, not just money.

The term "specified unlawful activity" means any one of a variety of offenses defined by statute. Here, the Government alleges that the specified unlawful activity is the murder-for-hire charged in Count One and the conspiracy to commit murder-for-hire charged in Count Two.

In this case, the Government has alleged that the funds in question were the proceeds of the murder-for-hire plot—that is, the conduct alleged in Counts One and Two that I have already described to you. I instruct you that, as a matter of law, murder-for-hire and conspiracy to commit murder-for-hire fall within the definition of "specified unlawful activity." However, it is for you to determine whether the funds here were in fact the proceeds of murder-for-hire or conspiracy to

26

commit murder-for-hire.  I have previously instructed you on the elements of the murder-for-hire offenses charged in Counts One and Two.

The second element of domestic concealment money laundering is that the defendant knew that the property involved in the financial transaction was the proceeds of <u>some</u> form of unlawful activity.  The defendant must have known that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under state, federal, or foreign law.  Thus, to satisfy this element, the Government does not have to prove that the defendant specifically knew that the property involved in the transaction represented the proceeds of murder-for-hire offenses, or any other specific offense.  The Government only has to prove that the defendant knew it represented the proceeds of some illegal activity that was a felony.  I instruct you as a matter of law that murder-for-hire and conspiracy to commit murder-for-hire are felonies under federal law.

The third element of domestic concealment money laundering concerns the purpose of the transaction.  Specifically, the Government must prove beyond a reasonable doubt that the defendant acted with knowledge that the transaction was designed to conceal or disguise the proceeds' nature, location, source, ownership, or control.  Thus, if the defendant knew that a transaction was designed, at least in part, either to conceal or disguise the true nature, location, source, ownership or control of the property in question, this element is satisfied.  However, if the defendant knew of the transaction, but did not know that it was designed, at least in part, either to conceal or disguise, this element has not been satisfied.

> Adapted from Sand, *Modern Federal Jury Instructions*, Instrs. 50A-26, Instr. 50A-7, 50A-8, 50A-9; *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003).

**Request No. 18:**          **Count   Three:   Money   Laundering   Conspiracy—Objects—
International Concealment**

I will now describe the elements to international concealment money laundering.  There
are three elements to concealment money laundering:

First, that the defendant knowingly transported, transmitted, or transferred a monetary
instrument or funds from a place in the United States to or through a place outside the United
States *or* to a place in the United States from or through a place outside the United States.

Second, that the defendant did so with knowledge that the monetary instrument or funds
involved represent the proceeds of some form of unlawful activity;

Third, that the defendant knew that the transportation, transmission, or transfer was
designed, in whole or in part, to conceal or disguise the nature, the location, the source, the
ownership, or the control of the proceeds of specified unlawful activity.

The first element that the government must prove beyond a reasonable doubt is that the
defendant transported, transmitted, or transferred, or attempted to transport, transmit, or transfer a
monetary instrument or funds from a place in the United States to or through a place outside the
United States (or to a place in the United States from or through a place outside the United States).

The term "monetary instrument" means coin or currency of the United States or of any
other country, travelers' checks, personal checks, bank checks, money orders, investment
securities in bearer form or otherwise in such form that title thereto passes upon delivery, and
negotiable instruments in bearer form or otherwise in such form that title thereto passes upon
delivery.

The term "funds" refers to money or negotiable paper that can be converted into currency.

"Transport," "transmit," and "transfer" are not words that require a definition; you should
give them their ordinary, everyday meaning.  The Government need not prove that the defendant

28

physically carried funds or monetary instruments in order to prove that he is responsible for transferring or transporting or transmitting. All that is required is proof that the defendant caused the funds or monetary instrument to be transported or transferred or transmitted by another person or entity.

The second and third elements of the crime constituting the second object of the money laundering conspiracy charged in Count Three refer to concepts previously defined with respect to the first object of Count Three, namely the term "some form of unlawful activity" and the concept of concealment of or disguising the location, source, ownership, or control of the proceeds of specified unlawful activity. The same definitions and instructions provided previously apply to these terms as they appear in connection with this second object of Count Three. As I told you before, the Government must prove beyond a reasonable doubt that the defendant knew that the financial transactions at issue involved the proceeds of some form of unlawful activity, but not necessarily which form of unlawful activity.

With respect to concealment, as that concept relates to this second object of the conspiracy charged in Count Three, the Government must prove that the defendant transported, transmitted, or transferred the property involved in the transaction with knowledge that the transportation, transfer, or transmission was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the murder-for-hire offenses charged in Counts One and Two. I've already provided you with the definition of murder-for-hire and conspiracy to commit murder-for-hire, and you should apply those same definitions here. As I instructed you before, as a matter of law, the term "specified unlawful activity" includes the murder-for-hire offenses charged in Counts One and Two.

29

Proof only that the funds were concealed is not sufficient to satisfy this element.  Instead, the government must prove that the purpose of the transfer was to conceal or disguise the nature, location, source, ownership, or control of the proceeds and that the defendant knew that this was the purpose of the transfer.

> Adapted from Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 50A-16 - 19; *Cuellar v. United States*, 553 U.S. 550, 128 S. Ct. 1994, 170 L. Ed. 2d 942 (2008).

**Request No. 19:**         **Count Three: Money Laundering Conspiracy—Objects— International Promotion**

I will now describe the elements of international promotional money laundering. There are three elements to international promotional money laundering:

First, that the defendant conducted (or attempted to conduct) a financial transaction involving property constituting the proceeds of specified unlawful activity, specifically, the murder-for-hire offenses charged in Counts One and Two.

Second, that the defendant knew that the property involved in the financial transaction was the proceeds of some form of unlawful activity.

Third, that the defendant acted with the intent to promote the carrying on of specified unlawful activity.

I have already described the first and second elements to you, in connection with the first money laundering object (domestic concealment money laundering), and you should apply those same instructions here.

The third element is that the defendant acted with intent to promote the carrying on of specified unlawful activity, specifically, the money laundering offenses charged in Counts One and Two.

To act intentionally means to act willfully, not by mistake or accident, with the deliberate purpose of promoting, facilitating or assisting the carrying on of the murder-for-hire and conspiracy to commit murder-for-hire offenses charged in Counts One and Two. If you find that the defendant acted with the intention or deliberate purpose of promoting, facilitating, or assisting in the carrying on of murder-for-hire or conspiracy to commit murder-for-hire, then the third element is satisfied.

31

Adapted from Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 50A-1-5.

**Request No. 20:**         **Count Four: Violent Crime in Aid of Racketeering**

I will now turn to the violent crime in aid of racketeering offense charged in Count Four of the Indictment and instruct you on the elements of that offense.  Count Four charges the defendants with attempted murder, and aiding and abetting the same, from in or about June 2022 through in or about July 2022.

In order to find the defendants guilty of Count Four, the Government must prove beyond a reasonable doubt each of the following elements:

First, that the charged enterprise, here, the "Organization," existed;

Second, that the enterprise engaged in racketeering activity;

Third, that the enterprise engaged in or its activities affected interstate or foreign commerce;

Fourth, that the defendants committed the violent crime alleged, which in Count Four is attempted murder; and

Fifth, that the defendant's general purpose in doing so was at least in part to gain entrance to the enterprise, or maintain or increase his position in the enterprise.

> Adapted from Hon. Vernon S. Broderick, Jury Charge, *United States v. Saipov*, 17 Cr. 722 (VSB) (S.D.N.Y. 2023); Hon. Allison J. Nathan in *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021); *see generally* Sand, *Modern Federal Jury Instructions: Criminal*, Instr. 52-36; *United States v. White*, 7 F.4th 90 (2d Cir. 2021); *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011); *United States v. Rahman*, 189 F.3d 88, 126 (2d Cir. 1999).

**Request No. 21:**      **Count Four: Violent Crime in Aid of Racketeering: First Element—**
                         **The Existence of the Enterprise**

As to the first element of Count Four, the Government is required to prove that the charged enterprise, here, the "Organization," existed.

An "enterprise" is a group of people informally or formally associated together for a common purpose of engaging in a course of conduct over a period of time. In addition to having a common purpose, the group must have an ongoing organization, either formal or informal, and it must have a core of personnel that functions as a continuing unit. A group of individuals who are associated in fact can constitute an enterprise. The enterprise must continue to exist in substantially similar form throughout the period charged. It does not have to have exactly the same membership throughout the period charged, but the enterprise must have a recognizable core that continues during a substantial period within the time frame charged.

In this case, the enterprise alleged in the Indictment is the "Organization," and it is alleged to have existed at all times relevant to the charges set forth in the Indictment. As described in the Indictment, the defendants, and others known and unknown, were affiliated with *Vory v Zakone*, also known as the Thieves-in-Law or "Russian Mob," a criminal group. The defendants and others formed a group (the Organization) that engaged in, among other things, acts involving murder, assault, extortion, kidnapping, robbery, and arson. The *Vory v Zakone* at times directed and participated in some of the criminal activities of the Organization.

> Adapted from Sand, *Modern Federal Jury Instructions: Criminal*, Instr. 19-4; Hon. Jesse M. Furman, Jury Charge, *United States v. Marquez-Alejandro*, No. S13 16. Cr. 387 (JMF) (S.D.N.Y. 2022); Hon. Allison J. Nathan, Jury Charge, *United States v. Berry*, No. 20 Cr. 84 (AJN) (S.D.N.Y. 2021), and *United States v. Allen*, No. 15 Cr. 95 (AJN) (S.D.N.Y. 2017); Hon. Alvin K. Hellerstein, Jury Charge, *United States v. Kloszewski*, No. S5 16 Cr. 200 (AKH) (S.D.N.Y. 2017); Hon. Richard J. Sullivan, Jury Charge, *United States v. Merlino*, No. S44 16 Cr. 522 (RJS) (S.D.N.Y. 2018); Hon.

Katherine B. Forrest, Jury Charge, *United States v. Delligatti*, No. 15 Cr. 491 (KBF) (S.D.N.Y. 2018).

**Request No. 22:**   **Count Four: Violent Crime in Aid of Racketeering: Second Element—The Enterprise Engaged in Racketeering Activity**

As to the second element of Count Four, the Government is required to prove that the Organization engaged in a pattern of racketeering activity.

A pattern of racketeering activity requires at least two acts of racketeering, the last of which occurred within 10 years excluding any period of imprisonment after the commission of a prior act of racketeering. In this case, the racketeering acts are alleged to be kidnapping, assaults, robberies, extortion, arson, other acts of violence, intimidation and other threats of physical and economic harm. To establish a "pattern of racketeering activity," the Government must prove that the racketeering acts had a "nexus" to the enterprise and that the racketeering acts were "related" to one another.

"Nexus" means that the acts have a meaningful connection to the enterprise. "Related" means that the acts have the same or similar purposes, results, participants, victim, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not merely isolated criminal conduct. Two racketeering acts may be "related" even though they are dissimilar or not directly related to each other, provided that the racketeering acts are related to the same enterprise.

Further, the Government must prove that the pattern of racketeering activity either extended over a substantial period of time or posed a threat of continued criminal activity. The threat of continued unlawful activity may be established by proof that the racketeering acts were the way that the enterprise typically conducted its affairs. In determining whether the Government has proven that the racketeering activity posed a threat of continued criminal activity, you are not limited to considering the specific racketeering acts, if any, that the defendant committed. The question is whether, considering the evidence as a whole, including the nature of the enterprise

36

and the unlawful activities of the enterprise and its members, including both charged and uncharged criminal conduct, the Government has proven, beyond a reasonable doubt, that there was a threat of continued unlawful activity.

> Adapted from Hon. Katherine P. Failla, Jury Charge, *United States v. Beltran*, 21 Cr. 17 (S.D.N.Y. 2023); Hon. Valerie E. Caproni, Jury Charge, *United States v. Cortorreal*, 17 Cr. 438 (S.D.N.Y. 2023).

**Request No. 23:**      **Count Four: Violent Crime in Aid of Racketeering: Third Element—The Enterprise Engaged in or its Activities Affected Interstate or Foreign Commerce**

As to the third element of Court Four, the Government must prove that the enterprise—here, the Organization—or the racketeering activities of those associated with the Organization, would have had some effect on interstate or foreign commerce, or in fact has such an effect. This effect on interstate or foreign commerce could have occurred in any way and it need only have been minimal.

Interstate commerce includes the movement of goods, services, money, and individuals between states or between states and a U.S. territory. Similarly, foreign commerce includes the movement of goods, services, money, and individuals between countries; for example, between the United States and another country, such as Azerbaijan, Ukraine, Bulgaria, Turkey, or Russia.

It is not necessary for the Government to prove that any particular acts affected interstate or foreign commerce or even that acts that the defendant personally committed affected interstate or foreign commerce. It need only prove that some act or acts of the enterprise – even perfectly legal acts of the enterprise – had such an effect on interstate or foreign commerce. It is not necessary for you to find that the defendant knew the enterprise was engaged in interstate or foreign commerce.

It is sufficient, for example, that in the course of racketeering activities, members of the enterprise used telephone facilities interstate or internationally, or took money from businesses that had an effect on interstate or foreign commerce. As with the enterprise element, it is not necessary for the Government to prove that any particular act or acts affected interstate or foreign commerce or even that acts that the defendant you are considering personally committed affected interstate or foreign commerce. It need only prove that some act or acts of the enterprise—even

38

perfectly legal acts of the enterprise—had such an effect.  It is not necessary for you to find that the defendant you are considering knew the enterprise was engaged in interstate or foreign commerce.

> Adapted from Hon. Colleen McMahon, Jury Charge, *United States v. Mendoza*, No. 11 Cr. 974 (CM) (S.D.N.Y. 2013); Hon. Jesse M. Furman, Jury Charge, *United States v. Blondet*, 16 Cr. 387 (S.D.N.Y. 2022); Hon. William H. Pauley III, Jury Charge, *United States v. Meregildo*, No. 11 Cr. 576 (WHP) (S.D.N.Y. 2012); *see Taylor v. United States*, 136 S. Ct. 2074, 2077-78 (2016).

**Request No. 24:** **Count Four: Violent Crime in Aid of Racketeering: Fourth Element—The Defendant Committed Attempted Murder**

With regard to the fourth element, the Government must prove beyond a reasonable doubt that the defendant committed attempted murder, or aided and abetted the same.

Under New York State law, murder is committed if: (1) an individual causes the death of another, or aids and abets the killing of another, and (2) the individual does so with the intent to cause the death of the victim or another person.

Attempted murder is committed if a person unlawfully, knowingly, and intentionally attempts to cause the death of another and takes some act that is a substantial step toward accomplishing the murder. I have already instructed you on the concept of acting knowingly and intentionally and those instructions apply here as well.

A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself. I have already instructed on the concept of aiding and abetting under federal law, which is applicable to Count One.

Under New York State law, there is an analogous concept, called "acting in concert." Under New York law, when one person engages in conduct which constitutes an offense, another is criminally liable for such conduct when, acting with the state of mind required for the commission of that offense, he or she solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct. While the New York state concept of "acting in concert" is similar to the federal aiding and abetting one, for purposes of determining whether the defendant aided and abetted—or acted in concert—with respect to Count Four, you should use the instruction about New York state law that I just gave you.

In determining whether the defendant agreed as part of the conspiracy that he or a co-conspirator would commit or attempt to commit murder in violation of New York State law, you

40

may apply the instructions on aiding and abetting I just gave you.  Thus, you may find that murder

was a predicate act if you find that the defendant agreed that he or a co-conspirator would commit

or attempt to commit murder under New York law, or because you find that he agreed that he or a

co-conspirator would aid or abet or conspire with another to do so.

> Adapted from Hon. Valerie E. Caproni, Jury Charge, *United States v. Cortorreal*, 17 Cr. 438 (S.D.N.Y. 2023); and New York Criminal Jury Instructions & Model Colloquies, CJI2d [NY] Penal Law § 125.25(1), Murder in the Second Degree (Depraved Indifference Murder).

**Request No. 25:**          **Count Four: Violent Crime in Aid of Racketeering: Fifth Element—
The Defendant's General Purpose in Committing the Attempted
Murder Was, in Part, to Gain Entrance to the Enterprise, or
Maintain or increase the Defendant's Position in the Enterprise**

The last element the Government must prove is that the defendants committed the violent

crime to gain entrance to or to maintain or increase his position in the enterprise.

To establish that the defendant committed the violent crime in order to gain entrance to or

to maintain or increase his position in the enterprise, the Government must prove that one of the

defendant's purposes for committing the violent crime was to gain entrance or to maintain or

increase his position in the Organization.

This element will have been proven if the Government proved that gaining entrance or

maintaining or increasing his position was at least a reason, even if not the primary motive, for the

defendant's committing the violent crime.

If you find that the Government has proven all five elements beyond a reasonable doubt,

then you must indicate on your verdict sheet that the defendant you are considering is guilty of

committing a violent crime in aid of racketeering.  If you find that any element has not been proven,

then you must indicate on your verdict sheet that the defendant you are considering is not guilty

of this count.

> Adapted from Hon. Katherine P. Failla, Jury Charge, *United States
> v. Beltran*, 21 Cr. 17 (S.D.N.Y. 2023); Hon. Valerie E. Caproni, Jury
> Charge, *United States v. Cortorreal*, 17 Cr. 438 (S.D.N.Y. 2023).

**Request No. 26:        Count Five: Firearm Offenses—General Instructions**

I will now turn to the firearms offense charged in Count Five of the Indictment and instruct you on the elements of that offense.  Count Five charges the defendants with knowingly using and carrying a firearm during and in relation to the crime of violence charged in Count Four, or aiding and abetting the same.  You may only proceed to consider Count Five if you have found the defendants guilty of Count Four.

In order to find the defendants guilty of Count Five, the Government must prove beyond a reasonable doubt the following elements:

<u>First</u>, that the defendant committed a crime of violence for which he could be prosecuted in a court of the United States;

<u>Second</u>, that the defendant used or carried the firearm during and in relation to the crime of violence, or possessed the firearm in furtherance of that crime; and

<u>Third</u>, that the defendant acted knowingly.

> Adapted from Hon. Katherine P. Failla, Jury Charge, *United States v. Beltran*, 21 Cr. 17 (S.D.N.Y. 2023); Hon. Valerie E. Caproni, Jury Charge, *United States v. Cortorreal*, 17 Cr. 438 (S.D.N.Y. 2023).

**Request No. 27:**          **Count Five: Firearm Offenses: First Element—Commission of the Predicate Offense**

The first element that the Government must prove, beyond a reasonable doubt, is that the defendant committed what we call a predicate offense. In this case, the Indictment charges that the predicate offense is a crime of violence that can be charged in federal court, specifically, the attempted murder in aid of racketeering as charged in Count Four.

If you find that the Government has proven Count Four, the attempted murder in aid of racketeering, as to the defendant you are considering, this element will have been proven.

> Adapted from Hon. Katherine P. Failla, Jury Charge, *United States v. Beltran*, 21 Cr. 17 (S.D.N.Y. 2023); Hon. Valerie E. Caproni, Jury Charge, *United States v. Cortorreal*, 17 Cr. 438 (S.D.N.Y. 2023).

44

**Request No. 28:**  **Count Five: Firearm Offenses: Second Element—"Using," "Carrying," or "Possessing"**

The second element that the Government must prove, beyond a reasonable doubt, is that the defendant, or someone he aided and abetted, knowingly either used or carried a firearm during the predicate crime or possessed a firearm in furtherance of the predicate.

I instruct you as a matter of law that a gun is a firearm.

In order to prove that a defendant, or someone he aided and abetted, used the firearm, the Government must prove some active employment of the firearm. This does not mean that the defendant, or someone he aided and abetted, must have actually fired or attempted to fire the weapon. Brandishing, displaying, or even referring to the weapon so that others present knew that the defendant had the firearm all constitute "use" of the firearm.

In order to prove that the defendant, or someone he aided and abetted, carried the firearm, the Government must prove that he had the weapon within his control so that it was available to him.

In order to prove that the defendant, or someone he aided and abetted, possessed the firearm in furtherance of the predicate crime you found was proven, the Government must prove that the defendant, or someone he aided and abetted, physically possessed the firearm or had dominion and control over its location. To possess a firearm in furtherance of a crime means that the firearm helped to advance or promote the commission of the crime. The mere possession of the firearm at the scene of the crime is not sufficient. The firearm must have played some part in furthering the crime.

Finally, the Government must prove that the defendant, or someone he aided and abetted, used or carried the firearm knowingly. I have previously charged you on what it means to act knowingly and that definition applies here as well. The defendant, or someone he aided and

45

abetted, must have known that the object he was using or carrying was a firearm as that term is

commonly used.

> Adapted from Hon. Katherine P. Failla, Jury Charge, *United States v. Beltran*, 21 Cr. 17 (S.D.N.Y. 2023); Hon. Valerie E. Caproni, Jury Charge, *United States v. Cortorreal*, 17 Cr. 438 (S.D.N.Y. 2023).

**Request No. 29:** **Count Five: Elements**

I have already defined for you the meaning of "using," "carrying," or "possessing" a firearm. Those definitions apply here as well.

"In relation to" means that the firearm must have had some purpose, role, or effect with respect to the crime of violence. This requirement is satisfied if the firearm facilitated, or had the potential to facilitate, the specified crime of violence—here, the attempted murder in aid of racketeering charged in Count Four.

To possess a firearm "in furtherance of a crime of violence" requires that the defendant possessed a firearm and that the possession advanced or moved forward the crime. The mere presence of a firearm is not enough. The firearm must have played some part in furthering the crime for this element to be satisfied.

You are instructed that the attempted murder in aid of racketeering charged in Count Four qualifies under the law as a crime of violence.

> Adapted from Hon. Lewis A. Kaplan, Jury Charge, *United States* v. *Jeffrey Otis Redden*, 02 Cr. 1141 (S.D.N.Y. 2004); Hon. Denise L. Cote, Jury Charge, *United States* v. *Joel Lagares*, 03 Cr. 1102 (S.D.N.Y. 2004).

47

**Request No. 30:**          **Venue**

In addition to all of the elements that I have described for you, in order to convict a defendant on any count of the Indictment, you must also decide whether any act in furtherance of that crime occurred within the Southern District of New York. I instruct you that the Southern District of New York includes all of Manhattan, the Bronx, Westchester, Sullivan, Rockland, Putnam, Dutchess and Orange Counties, and all the waters surrounding Manhattan, Brooklyn, and Staten Island, the air above those waters and the bridges over those waters.

The Government may establish venue in one of two ways:

First, with respect to each of Counts One, Two, Three, Four, and Five, the Government can establish what is called "natural" venue. To prove venue in this way, the Government need not prove that any crime was committed entirely in this district or that a defendant was present here. It is sufficient to establish venue if any act in furtherance of the crime you are considering occurred within the Southern District of New York, and it was reasonably foreseeable to the defendant that the act would take place in the Southern District of New York.

Second, with respect to Counts One, Two, and Three, Congress has determined that acts begun or committed outside the territorial jurisdiction of the United States are chargeable under the statutes in the Indictment. Therefore, for those counts, the Government need not prove that the crime was committed in this district or that the defendant himself was present here. Instead, it is enough if you find that the point of entry where the defendant was first brought into the United States was in the Southern District of New York.

I should note that on this issue—and this issue alone—the Government's burden is not proof beyond a reasonable doubt, but only proof by a preponderance of the evidence. Thus, the Government has satisfied its venue obligations as to a count if you conclude that it is more likely

48

than not that any act in furtherance of the crime charged in that count occurred in the Southern

District of New York.  By contrast, if you find that the Government failed to prove venue by a

preponderance of the evidence with regard to any count, then you must acquit the defendant of

that count.

> Adapted from Hon. J. Paul Oetken, Jury Charge, *United States v. Bimbow*, 21 Cr. 48 (S.D.N.Y. 2022); Hon. Paul A. Crotty, Jury Charge, *United States v. Flores, et al.*, 15 Cr. 765 (PAC) (S.D.N.Y. 2016) (narcotics importation conspiracy).

* * *

Dated:  New York, New York
        February 14, 2025

                              Respectfully submitted,

                              MATTHEW PODOLSKY
                              Acting United States Attorney
                              Southern District of New York


                    By:      _____/s/_____
                              Jacob H. Gutwillig
                              Matthew J.C. Hellman
                              Michael D. Lockard
                              Assistant United States Attorneys