LINCOLN SQUARE LEGAL SERVICES, INC.　　Fordham University School of Law　　Tel  212-636-6934
150 West 62nd Street, Ninth Floor　　Fax 212-636-6923
New York, NY 10023

February 21, 2025

**By Email & Electronic Filing**
The Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re:　　***United States v. Rafat Amirov***
　　　　***S8 22 Cr. 438 (CM)***

### Defendant's Opposition to the Government's Motions *In Limine*

Dear Judge McMahon:

　　On behalf of Mr. Rafat Amirov, we submit the attached Consolidated Opposition to the government's Motions *in Limine*.　Thank you for your consideration of this submission.

　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s /
　　　　　　　　　　　　　　　　　　　　　Michael W. Martin
　　　　　　　　　　　　　　　　　　　　　Lincoln Square Legal Services, Inc.
　　　　　　　　　　　　　　　　　　　　　*Attorney for Mr. Rafat Amirov*

*On the submission*
Michlyne Bellas
Matthew Gawley
Megan Gmelich
Ryan Miller
Taylor Veracka
Amy Walker
*Legal Interns*

# Table of Contents

Introduction ........................................................................................................................ 1

Argument ........................................................................................................................... 2

    I.    Evidence of the Government of Iran's Prior Plots or Schemes to Target Dissidents Should be Excluded ........................................................................................................................ 2

        A.    The Government May Not Introduce Evidence Unrelated to the Charged Conspiracy as Background ...................................................................................................................... 2

        B.    The Government's Proposed Evidence Cannot Prove Motive Under 404(b) ................. 4

        C.    The Government's Proposed Evidence is Unduly Prejudicial Under 403 ...................... 4

    II.    The Government's Proffered Expert Testimony Must Be Excluded or Limited ................ 4

        A.    Dr. Matthew Levitt's Testimony is Unnecessary and Unduly Prejudicial ..................... 4

        B.    Dr. Shelley's Testimony is Also Inadmissible Due to its Improper Scope, Hearsay Risk, and Unhelpful Nature ................................................................................................ 5

    III.    The Government's Proffer of the Organization's Racketeering Activities Must Be Excluded ........................................................................................................................... 6

        A.    Evidence of the EDNY Plot and "Racketeering Activities" is Not Sufficiently Relevant to Mr. Amirov or the Present Charges ....................................................................... 6

        B.    Evidence of the EDNY Plot and "Racketeering Activities" is Unduly Prejudicial to Mr. Amirov ........................................................................................................................ 7

        C.    Characterizing Mr. Amirov as a Member of the Russian Mob is Inaccurate and Unduly Prejudicial ........................................................................................................................ 8

    IV.    The Government's Proffered Co-Conspirator and Statement Against Interest Hearsay Statements Are Not Categorically Admissible ............................................................... 9

    V.    Mr. Amirov's Post-Arrest Statements Are Also Not Categorically Admissible, and his Alleged Statement Regarding Being "Wanted" Must be Excluded ............................................ 9

    VI.    The Defense's Rebuttal Expert Testimony is Admissible ............................................... 10

## Introduction

In three Motions *in Limine* filed on behalf of Mr. Rafat Amirov, we urged the Court to limit the government's factual proof and experts to matters relevant to this case. In particular, we argued that evidence of prior plots or schemes by the Government of Iran ("GOI"), or others, against political opponents of that regime are inadmissible in this case because they are irrelevant and unduly prejudicial. The prior plots involve different actors who engaged in different schemes that were carried out using different means than the conspiracy charged here.

We also requested that any experts called by the government be limited to proper subjects and not be used as conduits for otherwise unavailable or inadmissible factual proof. We noted that these concerns are particularly significant in this case because the proffered collateral proof involves highly inflammatory, unduly prejudicial matters.

In this Consolidated Opposition to the government's Motions *in Limine*, we explain how the government's opening papers confirm that it seeks to muddy the record with sensational evidence about people and events remote from Mr. Amirov, his co-defendant, and the disputed issues in this case. The government's desire to use this trial to express its judgment about a foreign state does not make these other plots admissible.

In Section I of this filing, we extend the arguments in our Motion *in Limine* to Exclude Evidence Concerning Any Prior or Subsequent Iranian Government Plot or Scheme to Target Political Dissidents, Including Ms. Alinejad, ECF No. 100, and respond to the government's claim that evidence of other plots and other actors is admissible in this case, *see* Gov't Mot. *in Limine* at 32–40, ECF No. 104. The Defense does not dispute that the Government of Iran has unjustly repressed its opponents, sometimes with great violence. This case, however, focuses on whether these two defendants are guilty of conspiracy to commit the murder-for-hire and related offenses charged in the indictment. The fact that others may have hatched other plots, for other reasons, is irrelevant, prejudicial, and would only confuse the jury and risk conviction for improper reasons. The jury can well understand the motives and means the government alleges here without extended testimony on tangential matters.

In Section II of this filing, we extend the arguments in our Motion *in Limine* to Exclude Testimony from Dr. Louise Shelley, ECF No. 98, and our Motion *in Limine* to Exclude Testimony from Dr. Matthew Levitt, ECF No. 99, and respond to the government's claim that their wide-ranging testimony about other plots and actors is admissible. The proffered testimony of Dr. Levitt is irrelevant, will not help the jury understand the evidence or determine a fact in issue, and is unduly prejudicial. The proffered testimony of Dr. Shelley is similarly irrelevant, will likely serve as a substitute for what should be offered by a fact witness, transmit inadmissible hearsay to the jury, not help the jury understand facts in issue, and would be unduly prejudicial.

In Section III of this Consolidated Opposition, we discuss why the government's proffered testimony about an unrelated extortion conspiracy in the Eastern District of New York (EDNY), government's Motions *in Limine*, ECF No. 104, at 40, must be excluded. The evidence only shows that Mr. Amirov refused to play any role in that conspiracy, and the proffered testimony is irrelevant, would confuse the jury, and would be unduly prejudicial.

In Section IV of this Consolidated Opposition, we rebut the government's assertion that a large set of hearsay statements are categorically admissible pursuant to Rules 801(d)(2)(A), 801(d)(2)(E) and 804(b)(3). *See* Gov't Mot. *in Limine*, ECF No. 104*,* at 49–59. The government must be held to its burden of providing particularized analysis as to each claimed exception.

In Section V of this Consolidated Opposition, Mr. Amirov objects to the government's proffer of evidence that he said he was "wanted" in Russia. *See* Gov't Mot. *in Limine*, ECF No. 104*,* at 29–30. The statement is unreliable, speculative, irrelevant, and unduly prejudicial.

In Section VI of this Consolidated Opposition, we turn to the government's misguided effort to categorically prevent the Defense from preserving its option to call a rebuttal expert in network telecommunications forensics should the government's case-in-chief give rise to the need for such evidence. *See* Gov't Mot. *in Limine*, ECF No. 104*,* Exhibit A. First, the Defense's Expert Disclosure ("the Disclosure") was sufficient. Second, even if the Disclosure requires supplementing, this Court should grant Mr. Amirov leave to do so, rather than unfairly prejudice him by excluding his expert testimony altogether.

## Argument

I. **Evidence of the Government of Iran's Prior Plots or Schemes to Target Dissidents Should be Excluded**

   A. **The Government May Not Introduce Evidence Unrelated to the Charged Conspiracy as Background**

The government has proffered evidence about prior schemes by the GOI targeting other political dissidents, as well as expert testimony about other threats or plots against the alleged victim in this case. That evidence would not tend to prove any element of any crime charged, help a jury understand how the relationship between the alleged co-conspirators developed, nor "complete the story" of the crimes on trial. *See United States v. O'Connor*, 580 F.2d 38, 41 (2d Cir. 1978) (quoting McCormick, Evidence § 190, at 448 (2d ed. 1972)). As such, this evidence must be excluded as irrelevant under Rule 401. *See* Fed. Rule Evid. 401.

Evidence of plots i) orchestrated by distinct actors, ii) at distinct times, and iii) using distinct means do not, as the government claims, arise out of the same transaction as the charged offense, nor are they inextricably intertwined with evidence of the charged offense, or necessary to complete the story of the crime on trial. The government's claims must be rejected.

First, neither Mr. Amirov nor any of the other six charged co-defendants are accused of being involved in any prior plot to target Ms. Alinejad or any other political dissident targeted by Iran. Mr. Amirov is not, nor is he alleged to be, a member of the IRGC or a part of the GOI. Further, the charged conspiracy did not exist at the time that the government's cited plots against dissidents took place. *Cf. United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (acts alleged to be in furtherance of an *existing* conspiracy constitute direct evidence of the act charged). Nor does evidence of the GOI's history of targeting dissidents show a mutual bond of trust between the

Bazghandi Network and what the government refers to as "the Organization" defendants. *See id.* at 8. The GOI as an entity is not a defendant here, and the GOI's intent or motive a fact at issue at trial. *See* Indictment S8 22 Cr. 428 (CM) (naming defendants).

Second, the government alleges that the murder-for-hire plot at issue in this case began in July 2021 with Mr. Amirov's alleged involvement occurring a year later, in June and July 2022. *See* Gov't Mot. *in Limine*, ECF No. 104, at 12, 17. Each of the other plots which the government alludes to took place well before the formation of the charged conspiracy in 2022—Ms. Alinejad was targeted between 2018 and February 2021; Ruhollah Zam was captured in October 2019 and executed in December 2020; and Jamshid Sharmahd's capture was announced on August 1, 2020. *See id.* at 13, 34, 35.

Because the charged conspiracy did not exist at the time these prior acts occurred, they are not acts that relate to or help a jury understand the charged conspiracy. The government's attempt to connect these distinct and separate conspiracies to this case—by stating that the Bazghandi Network googled the *Farhani* case, and that Iran executed Mr. Sharmahd a week after Indictment S8 22 Cr. 428 (CM) charged the Bazghandi Network—is misleading. *See id.* at 14, 35. The coincidental timing between the unsealing of the S8 indictment and Mr. Sharmahd's execution does not give rise to a rational or meaningful connection between, or among, these entirely separate conspiracies.

Third, the attempted kidnapping of Ms. Alinejad and the capture and execution of Mr. Ruhollah and Mr. Sharmahd are in no way structured like the alleged murder-for-hire plot in this case. While the government argues that the "GOI's use of a criminal network as a tool of violence" is directly relevant to motive, the government explicitly acknowledges that the murder-for-hire plot was *sui generis*. *See* Gov't Mot. *in Limine*, ECF No. 104, at 11 ("*This time*, the GOI hired others to do their dirty work for them.") (emphasis added). Evidence of plots carried out by individuals unrelated to and uninvolved in the charged conspiracy cannot explain the development of the relationship between co-conspirators, rendering this evidence irrelevant.

Further, the assertion that this evidence is "an essential part of the government's narrative at trial," Gov't Mot. *in Limine*, ECF No. 104, at 33, does not justify the admission of the evidence; indeed, it highlights how carefully this evidence must be sifted. The government's desire to connect the events alleged in this case to a larger, geopolitical story involving evil actors is understandable, but guilt in a criminal case is individual, and proof about other people and other acts is carefully bounded. Narrative theory suggests that every criminal case should begin with the fall of Satan, but the law imposes much stricter limits.

The government underestimates the jury, claiming that "average New Yorkers may well struggle to accept the plausibility of a foreign government intelligence plot to murder a journalist living in the United States." *Id.* at 39. Particularly in the current climate, the jury will easily understand the threats posed by foreign actors to the alleged victim in this case. *See, e.g.*, Michelle L. Price, Aamer Madhani, and Zeke Miller, "Trump says he's given advisors instructions for Iran to be 'obliterated' if it assassinates him," AP News (February 4, 2025), https://apnews.com/article/trump-iran-assassination-88c9b1a0754165125d59d378bf4af477

3

(discussing President Trump's February 4, 2025 tweet).  The Court must carefully limit evidence about the general level of threat to avoid undue prejudice.

### B.  The Government's Proposed Evidence Cannot Prove Motive Under 404(b)

For related reasons, this evidence cannot show motive or common scheme.  Prior acts that are not "so nearly identical in method" cannot be used to show the identity, motive, or *modus operandi* of the perpetrator. *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence*, para. 404[16], at 404–127 (1985)); Fed. R. Evid. 404(b).  The government must not be permitted to conflate prior, dissimilar bad acts by irrelevant actors to introduce irrelevant, confusing evidence.

### C.  The Government's Proposed Evidence is Unduly Prejudicial Under 403

Even if the evidence were of some relevance, it must be excluded under Rule 403 because it "unduly inflam[es] the passion of the jury, confus[es] the issues before the jury, [and] inappropriately lead[s] the jury to convict on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006); *see also* Fed. R. Evid. 403.

Perhaps most importantly, we only seek reasonable limitations on evidence about the GOI. As our opening papers note, the government is expected to elicit testimony from Ms. Alinejad about her personal knowledge of the regime's enmity for its opponents. *See* Def's Mot. *in Limine*, ECF No. 100, at 4.  The government's narrative needs will be served by properly limited testimony from fact witnesses with knowledge of the specific events related to the conspiracy charged in this indictment.

Additional testimony recounting prior plots against Ms. Alinejad or others like Ruhollah Zam and Jamshid Sharmahd would be a waste of time and unduly prejudicial.  It would inflame the jury and risk a conviction based on the improper inference that what has happened before is happening now, rather than on proof beyond a reasonable doubt.  Admitting this evidence runs the grave risk of the jury establishing guilt-by-association and as such must be excluded under Rule 403.

## II.  The Government's Proffered Expert Testimony Must Be Excluded or Limited

### A.  Dr. Matthew Levitt's Testimony is Unnecessary and Unduly Prejudicial

As we argued in our Motion *in Limine*, Dr. Levitt's expert testimony is inadmissible for many of the same reasons discussed in Section I of this Consolidated Opposition. *See* Def's Mot. *in Limine*, ECF No. 99.  An expert may not be used as a conduit for irrelevant, confusing, or unduly prejudicial evidence. Those considerations alone counsel strict limitations on his testimony.  In this Consolidated Opposition, we emphasize three points.

First, allowing expert testimony on newsworthy matters that are well within the average juror's realm of knowledge is not only wasteful and unnecessary, but also runs the risk of jurors giving undue weight to Dr. Levitt's opinions. *See Weiss v. Nat'l Westminster Bank PLC*, 278 F.

4

Supp. 3d 636, 645 (E.D.N.Y. 2017) (holding that an expert may not "summarize straightforward factual evidence").

Second, there is a serious risk that Dr. Levitt's proffered testimony on the IRGC's history, origins, leadership, and use of criminal proxies will be used by the government and the jury to fill gaps in the evidentiary record. *See* Def's Mot. *in Limine*, ECF No. 99, Exhibit A at 3–4. The government's theory is that Mr. Amirov, motivated by financial gain and a desire for increased status, acted as an agent of the IRGC. But the government has little evidence to support that theory. If Dr. Levitt is permitted to testify that the IRGC uses criminal proxies to insulate itself from backlash—an opinion for which no concrete examples are given and which the government concedes would be a new tactic used by the GOI, *see* Gov't Mot. *in Limine*, ECF No. 104, at 11— Mr. Amirov risks conviction on improper grounds because the average juror is going to make an inferential leap. This risk far outweighs the government's contention that such evidence is "necessary in order for the jury to make any sense" of the structure of the alleged plot. *Id.* at 37.

Third, like all references to the GOI's plots and campaigns against dissidents, Dr. Levitt's proffered testimony is unduly prejudicial under Rule 403. Evidence introduced as background is still subject to Rule 403 balancing. *See United States v. Crumble*, 18-CR-32, 2018 U.S. Dist. LEXIS 73410, at *3 (E.D.N.Y. 2018). Here, unlike other cases that the government cites, the expert testimony would focus exclusively or mostly on highly prejudicial acts unrelated to this case. *Cf. id.* at *12 (admitting other act testimony because the acts were "far less inflammatory than the crimes charged."). The combined effect of expert witness testimony, lay witness testimony, and documentary and electronic evidence, all relating to the GOI's history of targeting dissidents and tactics, would belabor the point, sensationalize this case, and prejudice Mr. Amirov rather than provide appropriate context. For the reasons outlined here and in Section I, Dr. Levitt's testimony should be excluded, or, in the alternative, severely limited as outlined in Mr. Amirov's opening papers. *See supra* Part I; Motion *in Limine* to Exclude Testimony from Dr. Matthew Levitt, ECF No. 99.

### B. Dr. Shelley's Testimony is Also Inadmissible Due to its Improper Scope, Hearsay Risk, and Unhelpful Nature

The description of Dr. Shelley's testimony in the government's Motions *in Limine* aligns with our observation that her testimony will serve as a substitute for factual evidence that the government bears the burden of proving. *See* Def's Mot. *in Limine*, ECF No. 98, at 3.

Expert testimony cannot be used as a "shortcut" and establish facts that should come from lay witnesses. *See United States v. Mejia*, 545 F.3d 179, 195 (2d Cir. 2008) (stating it is not proper "to substitute expert testimony for factual evidence"); *United States v. Cruz*, 981 F.2d 659, 663 (2d Cir. 1992) (stating expert testimony that simply endorses the facts that a lay witness offers by describing patterns of criminal conduct is impermissible). Most of the government's evidence relating to the alleged racketeering activity of "the Organization" includes vague, nonspecific references to extortion, kidnapping, murder and other undefined acts of racketeering that do not provide any connection to Mr. Amirov beyond conclusory assertions. Gov't Mot. *in Limine*, ECF No. 104, at 40. To the extent that her testimony will substitute for the underlying factual evidence

5

of racketeering activities that the government must prove through lay witness testimony, Dr. Shelley's testimony should be excluded.

Dr. Shelley's testimony would also present inadmissible hearsay to the jury. Although expert testimony can rely on otherwise inadmissible evidence, such evidence may be presented to the jury only if its probative value in explaining the expert's opinion substantially outweighs its prejudicial effect. Fed. R. Evid. 703; *see United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). The government's Motions *in Limine* proffer a wide array of hearsay statements in broad categories, yet it does not provide any particularized analysis as to how each statement is individually admissible. *See* Gov't Mot. *in Limine*, ECF No. 104, at 52–57; *see also infra* Section IV. The government's notice for Dr. Shelley's testimony mentions numerous topics about which the government also plans to introduce evidence through the hearsay statements of Nadir Salifov, Namik Salifov, Polad Omarov, Zialat Mamedov, and Khalid Mehdiyev. *Compare* Def's Mot. *in Limine*, ECF No. 98, Exhibit A at 2–5 (stating Dr. Shelley will testify to *vory v zakone*'s alleged criminal activity, structure, and motives), *with* Gov't Mot. *in Limine*, ECF No. 104, at 53 (stating the government will introduce hearsay statements on "the Organization's" alleged criminal activity, structure, and motives). Dr. Shelley discussing these statements will not help the jury understand any of her conclusions but, instead, will serve as a merely cumulative retelling of what the government should prove through competent fact witnesses.

Nor will Dr. Shelley's testimony help the jury. Expert testimony should be admitted only if it will help jurors understand evidence "beyond the ken of the average juror." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994). As the Second Circuit noted in *Mejia*, not all alleged illegal acts of a criminal organization require an expert's testimony for the average jury to understand if the jury is also presented with factual evidence. *See* 545 F.3d at 195. The government's motion lays out a narrative of the alleged activities of "the Organization" and how its alleged members communicated and operated together. *See* Gov't Mot. *in Limine*, ECF No. 104, at 40–42. Assuming the government can prove these facts with competent evidence at trial, they would clearly fall "within the grasp of the average juror," and Dr. Shelley's testimony should be excluded as needlessly duplicative. *See Mejia*, 545 F.3d at 194.

### III. The Government's Proffer of the Organization's Racketeering Activities Must Be Excluded

#### A. Evidence of the EDNY Plot and "Racketeering Activities" is Not Sufficiently Relevant to Mr. Amirov or the Present Charges

The government's Motions also disclosed proffered testimony about a separate, unrelated extortion conspiracy in the Eastern District of New York (the "EDNY plot"), including both factual evidence and testimony made to a cooperating witness, which must be excluded. *See* Gov't Mot. *in Limine*, ECF No. 104, at 43–44.

First, the evidence disclosed by the government suggests that Mr. Amirov refused to participate in the events charged in the EDNY case. Thus, the government cannot meet the fundamental requirement that the defendant be shown to be sufficiently connected to the prior bad act. Mr. Amirov is not directly implicated in the events of the EDNY plot, so the EDNY plot is

not direct evidence of his guilt. *See United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011). Other act evidence is only admissible as relevant under 404(b) "if the jury can reasonably conclude that the act occurred, and that the defendant was the actor." *United States v. Smothers*, 652 F. Supp. 3d 271 (E.D.N.Y. 2023) (citing *United States v. LaFlam*, 369 F.3d 153, 157 (2d Cir. 2004)).

Second, the EDNY plot is unrelated to the murder-for-hire plot and cannot be shown to have furthered the charged conspiracy in this case. *See supra* Section I.A.; Gov't Mot. *in Limine*, ECF No. 104, at 36, 44 (citing to *United States v. Gohari*, 227 F. Supp. 3d 313, 317 (S.D.N.Y. 2017)). Evidence of the EDNY plot is not admissible under Rule 404(b) because it does not assist the government in explaining "the background of the relationships among co-conspirators leading the murder-for-hire plot targeting Victim-1, the trust among the co-conspirators to work together to attempt to carry out the murder, and their motivations for accepting the murder-for-hire commission." Gov't Mot. *in Limine*, ECF No. 104, at 40. Similarly, the government also fails to prove these assertions because Mr. Amirov was not involved in the EDNY plot, so the evidence necessarily cannot be used to explain any of the points.

This is true for other nonspecific references to racketeering activities the government includes in its motion. The government lists Mr. Amirov among those involved in "various extortion plots" in Brooklyn, along with Mr. Omarov, Mr. Mehdiyev, and Mr. Mamedov. Gov't Mot. *in Limine*, ECF No. 104, at 16. The government then goes on to describe actions taken by only Mr. Omarov and Mr. Mehdiyev in *one* alleged racketeering activity—the EDNY plot. *Id.* at 16–17. The government uses the idea of these "various extortion plots" as window dressing to bolster its weak argument that the EDNY plot evidence should be admitted as related to the charged offenses; in reality, neither the evidence about the EDNY plot nor the vague references to other nebulous plots are relevant or probative in this case and should be considered inadmissible by this Court.

### B. Evidence of the EDNY Plot and "Racketeering Activities" is Unduly Prejudicial to Mr. Amirov

The government's characterization of the evidence relating to "the Organization's" racketeering activities and the alleged EDNY plot is unfairly prejudicial to Mr. Amirov and should be excluded according to Rule 403. *See* Fed. R. Evid. 403.

While Count Four requires the government to prove the existence of a racketeering enterprise, evidence it proffers of co-conspirators' prior acts as direct proof of an enterprise engaged in racketeering activity is still subject to Rule 403 balancing. *See United States v. Brady*, 26 F.3d 282 (2d Cir. 1994); *United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992). In *Brady*, the Second Circuit admitted such evidence but noted that the risk of unfair prejudice there was low because no one suggested the defendants themselves committed the racketeering activities in question. *See* 26 F.3d at 288.

By contrast, the government is attempting to directly associate Mr. Amirov with the EDNY plot in the absence of sufficient proof that he was involved. Admitting Mr. Amirov's statements and other evidence of the EDNY plot would unduly prejudice Mr. Amirov because it would tend to "unfairly excite [the jury's] emotions against" him by leading the jury to make an improper

7

inference about, and perhaps even convict, Mr. Amirov on these grounds rather than on the crimes with which he is actually charged. *See United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (granting the defendant a new trial based on the erroneous admission of the defendant's prior conviction). Further, testimony about the EDNY plot would unfairly associate Mr. Amirov with Mr. Omarov and Mr. Mehdiyev and prejudice the jury against him based on their alleged actions. *See United States v. Oliveri*, 740 F. Supp. 2d 414, 420 (S.D.N.Y. 2010) (holding that testimony about a defendant's alleged organized crime ties that did not relate to his relationship with an alleged co-conspirator was irrelevant and unfairly prejudicial under Rule 403).

### C. Characterizing Mr. Amirov as a Member of the Russian Mob is Inaccurate and Unduly Prejudicial

References to the "Russian Mob" are also unfairly prejudicial and serve only to inflame the jury. Although gang membership in general can be probative when it tends to prove an element of a charged offense, it is also highly prejudicial, and courts within the Second Circuit do not assume that identification of the gang in question is admissible. *See, e.g.*, *United States v. Reyes*, No. 11-CR-1, 2012 U.S. Dist. LEXIS 61347, at *2 (D. Conn. May 1, 2012) (admitting evidence that defendant was a member of a gang but excluding evidence that defendant was a member of the Bloods because the gang is "a well-known street gang with numerous negative associations in popular culture"); *United States v. Nelson*, 103 F. Supp. 2d 512, 513–14 (N.D.N.Y. 1999) (reserving judgment for trial on the gang's identification and noting that other courts "suppress[ed] that identification at trial" because of its prejudice).

Here, the prejudice of referring to Mr. Amirov as a member of the Russian Mob far outweighs its probative value because it would confuse and inflame the jury. Nowhere in the indictment is Mr. Amirov accused of being a member of the "Russian Mob." *See generally* Indictment S8 22 Cr. 428 (CM). Moreover, the term "Russian Mob" is an unspecific, vague umbrella term that imprecisely lumps together a variety of disparate groups that are not organized in any hierarchical fashion. *See* James O. Finckenauer, *Russian Organized Crime in the United States* 1 (2007), https://www.ojp.gov/pdffiles1/nij/218560.pdf ("Even the characterization 'Russian' is used generically to refer to a variety of Eurasian crime groups—many of which are not Russian.").

Further, most Americans view Russia unfavorably and see it as an enemy of the United States. Richard Wike, et al., *Growing Partisan Divisions Over NATO and Ukraine*, 30, 32 (2024), https://www.pewresearch.org/wp-content/uploads/sites/20/2024/05/pg_2024.05.08_russia-nato_report.pdf. Given that references to the "Russian Mob" would evoke a crude caricature of organized crime and imprecisely associate Mr. Amirov with a highly inflammatory geopolitical rival of the United States, the Court should exclude references to "Russian Mob" at trial. Instead, we would seek a ruling that the term "the Organization" be used during the trial and no reference be made to the "Russian Mob."

## IV. The Government's Proffered Co-Conspirator and Statement Against Interest Hearsay Statements Are Not Categorically Admissible

The Court should not deem all hearsay statements that the government proffers in its Motions *in Limine* admissible at this time. Hearsay statements offered as statements against interest under Rule 804(b)(3) must be "supported by corroborating circumstances that *clearly* indicate its trustworthiness." Fed. R. Evid. 804(b)(3) (emphasis added). A district court must parse each hearsay statement offered under Rule 804(b)(3), rather than review the statements as part of a broader narrative, to determine their trustworthiness. *See United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003).

Hearsay statements offered as co-conspirator statements under Rule 801(d)(2)(E) are admissible if the court finds by a preponderance of the evidence that (1) a conspiracy existed including the declarant and (2) the defendant's and the declarant's statements were made during and in furtherance of that conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Rule 801(d)(2)(E) limits admissibility to those statements during and in furtherance of *specific* criminal conspiracies; the mere existence of an organized crime group is not enough. *See United States v. Gigante*, 166 F.3d 75, 82–83 (2d Cir. 1999).

Rather than parse out how each of the hearsay statements it plans to offer at trial meets the requirements for each of these exceptions, the government seeks categorical admission for seven broad categories of hearsay statements. *See* Gov't Mot. *in Limine*, ECF No. 104, at 53–57. Unless and until the government provides a more particularized analysis of how each of the proffered statements meet a hearsay exception, the Court should not consider any hearsay evidence admissible.

## V. Mr. Amirov's Post-Arrest Statements Are Also Not Categorically Admissible, and his Alleged Statement Regarding Being "Wanted" Must be Excluded

Mr. Amirov's statements are also not categorically admissible as party opponent statements, and his uncorroborated statement in his post-arrest interview and any other comment that he was "wanted" in Russia for murder is inadmissible. The government proffers Mr. Amirov's statement as a party opponent statement under Rule 801(d)(2)(A). *See* Gov't Mot. *in Limine*, ECF No. 104, at 54. However, a statement that meets the requirement of a hearsay exception may still be inadmissible for lack of relevance under Rule 402, improper purpose under Rule 404(b), or unfair prejudice under Rule 403. *See, e.g.*, *United States v. Gupta*, 747 F.3d 111, 131 (2d Cir. 2014); *United States v. Gotti*, 641 F. Supp. 283 (E.D.N.Y. 1986) ("Under Rule 403 the court can exclude [a statement otherwise admissible under Rule 801(d)(2)(A)] made under conditions that suggest its untrustworthiness."). The government proffers no particularized analysis as to how Mr. Amirov's statements are admissible, and his statement about being "wanted" is undoubtedly inadmissible under Rules 402, 403, and 404.

First, to the extent Mr. Amirov's statement is relevant, it would be relevant only if the underlying claim—that Russian law enforcement were seeking his arrest for murder—is in fact true. *See Huddleston v. United States*, 485 U.S. 681, 690 (1988). To admit the statement, then, the Court would need to be satisfied that the jury could find by a preponderance of the evidence that this conditional fact is true. *Id.* This appears impossible as the government proffers no

corroborating circumstances beyond Mr. Amirov's bald assertion. Moreover, it is unclear how Russian law enforcement seeking Mr. Amirov tends to prove any element of the charged offenses.

Second, because Mr. Amirov's statement concerns an alleged prior act, the court should be cautious to ensure it is not being used for an improper propensity purpose. *See* Fed. R. Evid. 404(b).

Third, to the extent the alleged prior act could have the proper purpose under Rule 404(b) of proving the existence of a racketeering enterprise for Count Four, the government is likely to introduce other relevant evidence of such activity far less inflammatory than a claim that Mr. Amirov may be the object of a foreign investigation involving murder. Admitting another allegation of another criminal activity of dubious veracity against Mr. Amirov would serve only to prejudice him in the eyes of jurors.

## VI. The Defense's Rebuttal Expert Testimony is Admissible

The government's effort to prevent the Defense from preserving its option of calling Mr. Clark Walton and Mr. Edgar Fritz as rebuttal experts in network telecommunications forensics should the government's case-in-chief give rise to the need for such evidence is misguided. The Defense's Disclosure was sufficient under Federal Rule of Criminal Procedure 16 and Second Circuit precedent. However, even if the disclosure requires supplementing, there is ample time and the law provides an efficient way to permit counsel to adequately represent the defendant and not delay or otherwise burden the trial schedule.

First, Mr. Amirov's rebuttal expert disclosure was sufficient under Rule 16 of the Federal Rules of Criminal Procedure and Second Circuit precedent. Rule 16 requires the disclosure of the expert's opinions and the bases and reasons for them. Fed. R. Crim. P. 16. However, the "task of a rebuttal expert is different from that of an affirmative expert." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 138 (S.D.N.Y. 2022) (quoting *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020)). A rebuttal expert "by nature" responds to the methodology and opinions of another. *See id.*

The Defense has made clear that it intends to call either Mr. Clark or Mr. Fritz only if evidence presented in the government's case-in-chief requires a response. The Disclosure states that the experts would opine on how multiple individuals could access the same device and the same digital accounts and how these accounts and devices are secured. *See* Gov't Mot. *in Limine*, ECF No. 104, Exhibit A. As further set forth in the Disclosure, this testimony would be based on Mr. Walton's and Mr. Fritz's extensive technical training, expertise, and experience, as well as their review of the discovery in this matter. *See id.* Should the government wish to challenge the experts' respective qualifications or the reliability of their conclusions under Rule 702, it has the information needed to do so.

Second, although the Disclosure was sufficient, if the Court ultimately finds that additional supplementation is required, the appropriate resolution is to allow Mr. Amirov to cure potential defects in the disclosures prior to calling the rebuttal experts. *See United States v. Bankman-Fried*, No. S6 22-CR-0673 (LAK), 2023 U.S. Dist. LEXIS 168116, at *1 (S.D.N.Y. Sept. 21, 2023) (excluding defendant's rebuttal expert witness without prejudice and allowing an opportunity to

cure); *see also United States v. Reichberg*, 5 F.4th 233, 243 (2d Cir. 2021) (no prejudice found when defendants afforded an opportunity to cure their disclosures).

Excluding Mr. Walton's and Mr. Fritz's testimony at this juncture would unfairly prejudice Mr. Amirov. Courts in the Second Circuit reject exclusion when less severe remedies are available. *See, e.g.*, *Media Glow Dig., LLC v. Panasonic Corp.*, No. 16 Civ. 7907, 2019 U.S. Dist. LEXIS 36087, at *2 (S.D.N.Y. Mar. 6, 2019) (excluding expert testimony is "the exception rather than the rule") (quoting Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702).

Courts recognize that excluding defense expert witnesses is a harsh and unnecessary remedy, especially where the defense has the chance to supplement. *See United States v. Ho Wan Kwok*, No. 23 Cr. 118, 2024 U.S. Dist. LEXIS 74281, at *8 (S.D.N.Y. Apr. 24, 2024) (declining to exclude expert testimony where sufficient time to cure remained); s*ee also* Fed. R. Crim. P. 16(d)(2) (permitting the Court to issue an "order that is just under the circumstances."). Excluding the Defense's experts leaves the government's expert witnesses unchallenged. It also deprives the client of a fair trial, the opportunity to defend himself, and divests the jury of critical counter-perspectives.

WHEREFORE, Mr. Amirov respectfully requests an order from this Court making the following evidentiary rulings and such other and further relief as the Court deems just and proper:

1. Evidence of prior plots or schemes by the GOI or others to target political dissidents of Iran is inadmissible pursuant to Rule 401;
2. Dr. Matthew Levitt's testimony is inadmissible as discussed in the Defendant's Motion *in Limine* and this opposition and pursuant to Rules 401, 403, and 702;
3. Dr. Louise Shelley's testimony is limited as discussed in the Defendant's Motion *in Limine* and this opposition and pursuant to Rules 403, 702, and 703;
4. Evidence regarding the unrelated extortion conspiracy in the Eastern District of New York, and references to any other unrelated racketeering activities, is inadmissible pursuant to Rules 401 and 403;
5. The term "the Organization" be used during the trial, and no reference be made to the "Russian Mob" pursuant to Rule 403;
6. The government's proffered hearsay evidence is not categorically admissible under Rules 801(d)(2)(E) and 804(b)(3);
7. Mr. Amirov's statement alleging to be "wanted" in Russia is excluded pursuant to Rules 801(d)(2)(A) and 403;
8. Mr. Amirov's rebuttal expert testimony is admissible and can be supplemented at the appropriate time, if required.

Respectfully submitted,

/s /
Michael W. Martin
Lincoln Square Legal Services, Inc.
*Attorney for Mr. Rafat Amirov*

*On the submission*
Michlyne Bellas
Matthew Gawley
Megan Gmelich
Ryan Miller
Taylor Veracka
Amy Walker
*Legal Interns*