**EXHIBIT B**

# LINCOLN SQUARE LEGAL SERVICES, INC.

Fordham University School of Law
150 West 62nd Street, Ninth Floor
New York, NY 10023

Tel 212-636-6934
Fax 212-636-6923

March 3, 2025

**VIA EMAIL**
Jacob Gutwillig, Esq.
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
26 Federal Plaza, 38th Floor
New York, New York 10278

**Re: United States v. Rafat Amirov, S8 22 Cr. 438 (CM)**

Dear Mr. Gutwillig:

Please find attached an expert disclosure of a recently retained defense expert witness pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). On January 24, 2025, the government disclosed its intent to call an expert witness, Dr. Louise Shelley, to testify about the details and nature of the organization known as Thieves-in-Law. It was not until this disclosure that the Defense was made aware of the extent to which Thieves-in-Law would be used in the government's narrative. After much difficulty, the Defense found an expert witness to use in its case-in-chief to respond to any evidence from Dr. Shelley that may be allowed at trial. We first informed you of this expert on February 25, 2025, and the following disclosure details the information to which this expert will testify, should it be necessary.

We thank all parties for their attention to this matter.

Sincerely,

/s/
Michael W. Martin
Lincoln Square Legal Services, Inc.
*Attorney for Mr. Rafat Amirov*

cc:   Andrew G. Patel, Esq., *Attorney for Mr. Polad Omarov*

Enclosures:
- *Expert Disclosure Letter*
- *Exhibit A (Emin Gurbanov) Resume*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA | S8 22 Cr. 438 (CM) |
| v. | |
| RAFAT AMIROV, | |
| Defendant | |

## DEFENDANT RAFAT AMIROV'S DESIGNATION OF EXPERT WITNESS

### 1.  Mr. Emin Gurbanov

Mr. Gurbanov is a former senior detective of the 15th department of the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow.  Mr. Gurbanov started his career in law enforcement in March 2005 as a general policeman, where his responsibilities included conducting patrols in his designated areas.  In 2014, Mr. Gurbanov was promoted to a citywide unit in the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow specifically dealing with organized criminal groups, including *vory v zakone*.  Mr. Gurbanov spent eight years investigating organized crime, including *vory v zakone*.  He spent his last five years in the unit as a senior detective before he left the force in June 2022 and came to the United States.  Additionally, Mr. Gurbanov completed postgraduate studies in criminal law at Moscow University for the Humanities and has published at least four academic articles on issues related to organized crime.  He also taught classes on related topics for two years at Moscow University for the Humanities.  Mr. Gurbanov's resume and publications are attached as Exhibit A.

The following is a complete statement of all opinions that the Defense will elicit from Mr. Gurbanov during its case-in-chief.  The Defense reserves the right to supplement this notice with additional testimony to counter testimony that the Government intends to offer in its rebuttal pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C):

- The *vory* of Thieves-in-Law have a unwritten code of behavior.  Tenets include:

  - Members cannot cooperate with law enforcement, especially national governments.
  - *Vory* cannot work non-criminal jobs, because their profession is theft, and they cannot carry firearms.
  - *Vory* are not permitted to kill anyone unless that person has physically injured, or injured the honor of, a member of Thieves-in-Law.  Even in these circumstances,

- *vory* can lose their status if they target family members or women, which is never permitted.
  - They must only make money from crimes. The code means that financial gain cannot solely motivate *vory*'s activities.
  - Half of the *vory*'s "earnings" go into a common fund, which exists to be of use to them if there is need for financial assistance for its members and inmates in prisons.
  - *Bradiaga*, who are a step below *vors* in Thieves-in-Law's structure, commit crimes in the name of their *vor*, and the *vor* in turn receives tribute from his *bradiaga*'s criminal activity.
  - Individuals must earn, and can lose, their *vor* status in accordance with the code. They must be a person with authority who follows the code of Thieves-in-Law.
  - Participating in murder-for-hire or murder plots, unless as a matter of personal honor, would jeopardize a *vor's* status in Thieves-in-Law, and would be used against participating *bradiaga* to prevent their ever becoming a *vor*.
- Nadir "Guli" Salifov's clan was a financially stable and well-respected faction of Thieves-in-Law.
- After Guli died, the line of succession within his faction was unclear. Not all *vory* recognize the authority or *vor* status of Namik Salifov, the brother of Guli and man who ran Mr. Mehdiyev and Mr. Omarov's faction of Thieves-in-Law.
- Mr. Amirov's status as a *vor* may have been unstable following the death of his sponsor, Guli, as there were rumors of attempts by other *vory* to decrown him. This would make it even more necessary for Mr. Amirov to avoid deviating from the Code to avoid further destabilizing his status.

The bases and reasons for Mr. Gurbanov's testimony include his training and experience as part of the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow working both as a police officer and an organized crime analyst, as well as his time studying and teaching criminal law with a focus on organized crime. Mr. Gurbanov's duties as an analyst included participating in the organizational and technical activities related to analyzing the activities of organized criminal groups, including Azeri *vory v zakone*. Mr. Gurbanov routinely analyzed intercepted information from calls and videos between and among members of organized criminal groups, including *vory*. Mr. Gurbanov is fluent in Azeri and was assigned specifically to review communications among Azeri members of organized criminal groups, including *vory*. During his time in law enforcement, Mr. Gurbanov analyzed upwards of an estimated 6,000 hours of calls, videos, and confidential informants' audio recordings, particularly from detention centers, as well as text messages, related to organized crime investigations, including conversations between and among *vory*. His opinions are drawn from his analysis of calls, texts, videos, and confidential informants' audio recordings in his law enforcement capacity, his involvement in law enforcement activities in Moscow, and his academic work.

**Expert Signature**:


/s/
Emin Gurbanov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAFAT AMIROV,<br><br>Defendant | S8 22 Cr. 438 (CM) |

## DEFENDANT RAFAT AMIROV'S DESIGNATION OF EXPERT WITNESS

### 1. Mr. Emin Gurbanov

Mr. Gurbanov is a former senior detective of the 15th department of the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow. Mr. Gurbanov started his career in law enforcement in March 2005 as a general policeman, where his responsibilities included conducting patrols in his designated areas. In 2014, Mr. Gurbanov was promoted to a citywide unit in the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow specifically dealing with organized criminal groups, including *vory v zakone*. Mr. Gurbanov spent eight years investigating organized crime, including *vory v zakone*. He spent his last five years in the unit as a senior detective before he left the force in June 2022 and came to the United States. Additionally, Mr. Gurbanov completed postgraduate studies in criminal law at Moscow University for the Humanities and has published at least four academic articles on issues related to organized crime. He also taught classes on related topics for two years at Moscow University for the Humanities. Mr. Gurbanov's resume and publications are attached as Exhibit A.

The following is a complete statement of all opinions that the Defense will elicit from Mr. Gurbanov during its case-in-chief. The Defense reserves the right to supplement this notice with additional testimony to counter testimony that the Government intends to offer in its rebuttal pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C):

- The *vory* of Thieves-in-Law have a unwritten code of behavior. Tenets include:

  o Members cannot cooperate with law enforcement, especially national governments.
  o *Vory* cannot work non-criminal jobs, because their profession is theft, and they cannot carry firearms.
  o *Vory* are not permitted to kill anyone unless that person has physically injured, or injured the honor of, a member of Thieves-in-Law. Even in these circumstances,

     *vory* can lose their status if they target family members or women, which is never permitted.

- o They must only make money from crimes. The code means that financial gain cannot solely motivate *vory*'s activities.
- o Half of the *vory*'s "earnings" go into a common fund, which exists to be of use to them if there is need for financial assistance for its members and inmates in prisons.
- o *Bradiaga*, who are a step below *vors* in Thieves-in-Law's structure, commit crimes in the name of their *vor*, and the *vor* in turn receives tribute from his *bradiaga*'s criminal activity.
- o Individuals must earn, and can lose, their *vor* status in accordance with the code. They must be a person with authority who follows the code of Thieves-in-Law.
- o Participating in murder-for-hire or murder plots, unless as a matter of personal honor, would jeopardize a *vor's* status in Thieves-in-Law, and would be used against participating *bradiaga* to prevent their ever becoming a *vor*.

- Nadir "Guli" Salifov's clan was a financially stable and well-respected faction of Thieves-in-Law.
- After Guli died, the line of succession within his faction was unclear. Not all *vory* recognize the authority or *vor* status of Namik Salifov, the brother of Guli and man who ran Mr. Mehdiyev and Mr. Omarov's faction of Thieves-in-Law.
- Mr. Amirov's status as a *vor* may have been unstable following the death of his sponsor, Guli, as there were rumors of attempts by other *vory* to decrown him. This would make it even more necessary for Mr. Amirov to avoid deviating from the Code to avoid further destabilizing his status.

     The bases and reasons for Mr. Gurbanov's testimony include his training and experience as part of the Main Directorate of the Ministry of Internal Affairs of Russia for the city of Moscow working both as a police officer and an organized crime analyst, as well as his time studying and teaching criminal law with a focus on organized crime. Mr. Gurbanov's duties as an analyst included participating in the organizational and technical activities related to analyzing the activities of organized criminal groups, including Azeri *vory v zakone*. Mr. Gurbanov routinely analyzed intercepted information from calls and videos between and among members of organized criminal groups, including *vory*. Mr. Gurbanov is fluent in Azeri and was assigned specifically to review communications among Azeri members of organized criminal groups, including *vory*. During his time in law enforcement, Mr. Gurbanov analyzed upwards of an estimated 6,000 hours of calls, videos, and confidential informants' audio recordings, particularly from detention centers, as well as text messages, related to organized crime investigations, including conversations between and among *vory*. His opinions are drawn from his analysis of calls, texts, videos, and confidential informants' audio recordings in his law enforcement capacity, his involvement in law enforcement activities in Moscow, and his academic work.

**Expert Signature:**

Emin Gurbanov

# EXHIBIT A

RESUME

PERSONAL INFORMATION

Name: Emin Gurbanov
Phone: ▮▮▮▮▮▮▮▮▮▮
Email: ▮▮▮▮▮▮▮▮▮▮▮▮▮

EDUCATION

• The International Independent University of Environmental and Political Sciences (Moscow, Russia)
-   Lawyer, 2006
• Moscow University for the Humanities (Moscow, Russia)
-   Professional Retraining: Higher Education Instructor, 2020
• Moscow University for the Humanities (Moscow, Russia)
-   Postgraduate Studies in Criminal Law and Criminology, 2015–2022

PROFESSIONAL EXPERIENCE

Law Enforcement Experience

Main Directorate of the Ministry of Internal Affairs of Russia for the City of Moscow
March 2005 – June 2022
• Detective, Senior Detective of the 15th Department (2014–2022)
• Analyzed intercepted communications, video recordings, messages, and informant reports.
• Conducted analysis of over 6,000 hours of audio and video materials.
• Worked with operational intelligence data in Azerbaijani and Russian.
• Police Officer, Inspector of the Patrol and Checkpoint Service (2005–2014)
• Conducted patrols, ensured public safety, and participated in preliminary crime investigations.

Academic and Research Experience

Moscow University for the Humanities (Moscow, Russia)

Lecturer at the Department of Criminal Law and Special Disciplines, 2019–2021
• Taught courses on criminal law, criminology, and special disciplines.
• Supervised student research projects and contributed to the development of academic programs.

Scientific Publications
• Author of four academic articles (2018–2020) on criminal law.



# ЮРИДИЧЕСКИЕ НАУКИ

УДК 342.56
ББК 67.7

Doi 10.24411/2073-0454-2018-10037
© Э.Ш. Гурбанов, 2018

Научная специальность 12.00.11 — судебная деятельность, прокурорская деятельность,
правозащитная и правоохранительная деятельность

## К ВОПРОСУ О ПОДВЕДОМСТВЕННОСТИ ПРАВООТНОШЕНИЙ В СФЕРЕ ПРЕДУПРЕЖДЕНИЯ ПРЕСТУПЛЕНИЙ ТЕРРОРИСТИЧЕСКОЙ И ЭКСТРЕМИСТСКОЙ НАПРАВЛЕННОСТИ СУДЕБНЫМ И ИНЫМ ОРГАНАМ ГОСУДАРСТВЕННОЙ ВЛАСТИ

**Эмин Шакюрович Гурбанов,** аспирант кафедры уголовно-правовых и специальных дисциплин
Московский гуманитарный университет (111395, Москва, ул. Юности, д. 5)
E-mail: gurbanov_emin@mail.ru

**Аннотация.** Рассматриваются вопросы подведомственности правоотношений в сфере предупреждения преступлений террористической и экстремистской направленности. Проведен анализ нормативных правовых актов и научных подходов, регламентирующих и координирующих взаимодействие органов государственной власти в сфере предупреждения и пресечения указанных общественно опасных деяний. Автор предпринял попытку определить основные пробелы в деятельности судов, направленной на профилактику и пресечение преступлений террористической и экстремисткой направленности.
**Ключевые слова:** терроризм, подведомственность, превентивная деятельность, экстремистская деятельность, органы государственной власти, террористические организации.

## THE JURISDICTION OF LEGAL RELATIONS IN THE FIELD OF PREVENTION OF CRIMES OF TERRORIST AND EXTREMIST JUDICIAL AND OTHER STATE AUTHORITIES

**Emin Sh. Gurbanov,** post-graduate student of the Department of criminal law and special disciplines
Moscow University for the Humanities (111395, Moskva, ul. Yunosti, d. 5)
E-mail: gurbanov_emin@mail.ru

**Annotation.** The article deals with the issues of suppression of terrorist and extremist crimes by the court. The analysis of normative legal acts and scientific approaches regulating and coordinating the interaction of public authorities in the field of prevention and suppression of these socially dangerous acts. The author has made an attempt to identify the main gaps in the legislation in the part concerning the activities of the courts aimed at the prevention and suppression of extremist crimes.
**Keywords:** terrorism, jurisdiction, preventive activity, extremist activity, public authorities, terrorist organizations.

**Citation-индекс в электронной библиотеке НИИОН**

**Для цитирования:** Гурбанов Э.Ш. К вопросу о подведомственности правоотношений в сфере предупреждения преступлений террористической и экстремистской направленности судебным и иным органам государственной власти. Вестник Московского университета МВД России. 2018;(6):184–189.

В современном мире одной из наиболее важных задач является предупреждение и максимально быстрое пресечение преступлений террористической и экстремистской направленности. Разграничение и распределение полномочий между различными органами государственной власти, а также их взаимодействие на различных уровнях повышает эффективность предупреждения преступлений.

В ФЗ «О противодействии терроризму»[1] к числу основных принципов профилактики терроризма отнесены его предупреждение, в том числе выявление и своевременное пресечение условий, которые способствовали реализации преступного умысла, связанного с террористическими действиями преступников.

Аналогичный подход к определению значимости превентивной деятельности отражен в ст.ст. 2 и 3 ФЗ «О противодействии экстремистской деятельности»[2]. Анализ содержания ст. 3 Федерального закона «О противодействии терроризму» показал, что предупреждение составляет большую часть понятия противодействия экстремизму, поскольку сердцевиной основных направлений противодействия экстремизму является осуществление профилактических мер.

---

[1] Федеральный закон от 6 марта 2006 г. № 35-ФЗ (ред. от 18 апреля 2018 г.) «О противодействии терроризму» // URL: http://www.pravo.gov.ru

[2] Федеральный закон от 25 июля 2002 г. № 114-ФЗ (ред. от 23 ноября 2015 г.) «О противодействии экстремистской деятельности» // URL: http://www.pravo.gov.ru

По данным Верховного Суда Российской Федерации[3] в 2016 г. за совершение преступлений террористической направленности осуждено 523 лица, что превышает показатели за аналогичный период в 2015 г. на 49,4% (350 лиц). В 2017 г. по вышеназванным преступлениям было осуждено 560 лиц (на 7,07% больше, чем в 2016 г.). Число осужденных за преступления экстремистской направленности с каждым годом становится все выше, к примеру, в 2016 г. было осуждено 669 лиц, в 2017 г. — 848 лиц (+26,76%). Такая тенденция подтверждает не только постоянный прирост преступности, но и компетентность органов, осуществляющих раскрытие и расследование таких преступлений.

В результате анализа федеральных законов «О противодействии терроризму» и «О противодействии экстремистской деятельности» приходим к выводу, что алгоритмы предупреждения преступлений террористической и экстремистской направленности разработаны не полно. В законах отсутствуют положения, в которых должны содержаться перечень превентивных мер с указанием на компетентность уполномоченных государственных органов реализовывать положения, которые касаются непосредственно взаимодействия всех органов государственной власти, вовлеченных в противодействие указанным общественно опасным деяниям. Одним из пробелов в данном случае является недостаточное внимание законодателя к определению роли судов в осуществлении такой деятельности.

В ст. 5 Федерального закона «О противодействии терроризму» содержатся организационные основы, направленные на реализацию такого противодействия, с указанием перечня органов государственной власти, наделенных определенными полномочиями. Иерархия уполномоченных органов и должностных лиц начинается с Президента Российской Федерации и Правительства Российской Федерации, определяющих основные направления государственной политики и компетенцию федеральных органов исполнительной власти по противодействию терроризму, в том числе обязанность взаимодействия таких органов с государственными органами субъектов Российской Федерации, органами местного самоуправления, юридическими и физическими лицами. В ст.ст. 5[1] и 5[2] Федерального закона «О противодействии терроризму» представлены полномочия органов исполнительной власти субъектов Российской Федерации

и органов местного самоуправления по противодействию терроризму.

Часть 2 ст. 5[1] Федерального закона «О противодействии терроризму» указывает, что к полномочиям высшего исполнительного органа субъекта Российской Федерации по предупреждению преступлений террористический направленности относятся:

1) разработка и реализация мер, государственных программ субъекта РФ, направленных на профилактику терроризма, минимизацию и ликвидацию последствий его проявлений;

2) постоянное наблюдение за общественно-политическими, социально-экономическими и иными процессами, которые имеют место в этом субъекте РФ, с принятием мер, направленных на устранение предпосылок для возникновения конфликтов, оказывающих влияние на совершение террористических актов и формирование социальной базы терроризма;

3) организация на региональном уровне реализации мер, направленных на обнаружение и предотвращение причин и условий, которые направлены на распространение идеологии терроризма и прочее. Однако, прямого указания в Законе на превентивные меры нет, не установлен конкретный порядок реализации такой деятельности и контроля за ней.

На основании изложенного можно заключить, что положения о деятельности по предупреждению терроризма, изложенные в Федеральном законе, представлены в общем виде, без прямого указания на виды превентивных мер и без детализации относительно органов власти, которые непосредственно должны отвечать за осуществление указанной деятельности на практике. В связи с этим распределение полномочий органов власти и особенности осуществления деятельности по предупреждению терроризма должны быть отражены в законодательстве, регулирующем деятельность конкретных органов власти (например, ФСБ России[4], МВД России[5]). Для распределения направлений деятельности органов власти в 2006 г. был создан Национальный антитеррористи-

---

[3] Обзоры статистических данных по уголовным делам, рассмотренным судами Российской Федерации в 2015, 2016 и 2017 гг. // Архив Управления систематизации законодательства и анализа судебной практики Верховного Суда РФ за 2015, 2016 и 2017 гг.

[4] Федеральный закон от 3 апреля 1995 г. № 40-ФЗ (ред. от 7 марта 2018 г.) «О федеральной службе безопасности» // URL: http://www.pravo.gov.ru

[5] Федеральный закон от 7 февраля 2011 г. № 3-ФЗ (ред. от 29 июля 2018 г.) «О полиции» // URL: http://www.pravo.gov.ru



ческий комитет[6]. Анализируя федеральное законодательство о структуре органов власти, координации их деятельности и полномочиях, а также Положение о Национальном антитеррористическом комитете, можно отметить, что предупреждение преступных деяний в целом и превенция уголовно наказуемых преступлений террористической и экстремистской направленности, в частности, отражены в них в общем виде без конкретизации мер, направленных на их предупреждение.

В Федеральном законе «О Федеральной службе безопасности России» основными направлениями деятельности являются борьба с преступностью и борьба с терроризмом (ст. 8), при раскрытии которых указывается на осуществление предупреждения общественно опасных деяний (ст.ст. 9[1] и 10), но не конкретизируется, в чем именно должна заключаться превентивная деятельность. Предупреждение в указанном Законе сводится к выявлению и пресечению преступных посягательств, что не полностью отражает превенцию, так как это наиболее сложная деятельность, содержащая в себе пресечение, профилактику и предупреждение, заключающиеся в устранении (минимизации) причин и условий, способствующих криминальному поведению. В Федеральном законе «О противодействии терроризму» деятельность органов власти сводится только к профилактике либо предупреждению и пресечению преступлений террористической направленности (ст. 3) [1].

Законодатель, при рассмотрении предупреждения терроризма, указывает на государственные органы исполнительной власти разного уровня, обращая внимание на взаимодействие их между собой и с органами местного самоуправления, физическими и юридическими лицами, однако упускает из виду суды, которые являются полноправными субъектами превентивной деятельности в предупреждении преступных деяний террористической направленности.

Исключение составляют положения ст. 24 Федерального закона «О противодействии терроризму», в которых описывается ответственность организаций, причастных к террористической деятельности, действия которых направлены на пропаганду, поддержку или оправдание последнего, что приравнивается к совершению преступных деяний террористической направленности. Здесь же закреплен порядок признания организаций террористическими, запрета на осуществления такой деятельности, в том числе и их лик-

видация (при наличии организационно-правовой формы). В норме отмечается, что такое решение может оставаться только за судом, как и решение, связанное с конфискацией имущества такой организации, с обращением его в доход государства. Судебное решение о ликвидации организации или запрете ее деятельности принимается на основании заявления Генерального прокурора Российской Федерации или подчиненного ему прокурора [2, с. 143–145]. Приведенную нами деятельность органов, которые не относятся к исполнительной власти, по нашему мнению, можно рассматривать как осуществление мер по предупреждению терроризма, так как посредством принятия решения о признании организации террористической и ее ликвидации с конфискацией имущества, суд пресекает развитие деятельности такой организации и лишает ее возможности совершать преступления.

В случаях признания судом террористической организацией объединения, являющегося террористическим сообществом согласно обвинительному приговору, вступившему в законную силу, предварительное заявление прокурора для принятия решения о запрете деятельности такой организации и ее ликвидации суду не требуется.

После признания судом организации террористической, копия решения суда вносится в единый федеральный список террористических организаций, который ведется ФСБ России[7]. Это отражает процесс взаимодействия судов с одним из государственных органов исполнительной власти, осуществляющим предупреждение терроризма.

Внесение сведений о террористической организации в единый федеральный список позволяет проинформировать о вынесенном судебном решении, предупредить организаторов и участников об уголовной ответственности по ст. 205[5] Уголовного кодекса Российской Федерации (далее — УК РФ) за возобновление преступной деятельности террористической направленности. Осуществление судом, Про-

[6]  Указ Президента РФ от 15 февраля 2006 г. № 116 «О мерах по противодействию терроризму» (вместе с «Положением о Национальном антитеррористическом комитете») // СЗ РФ. 2006. № 8. Ст. 897.
[7]  Распоряжение Правительства РФ от 14 июля 2006 г. № 1014-р «Об официальном периодическом издании, осуществляющем публикацию единого федерального списка организаций, признанных судами Российской Федерации террористическими» // СЗ РФ. 2006. № 29. Ст. 3283.

куратурой и ФСБ России таких мер, на наш взгляд, также относится к элементам предупреждения.

На современном этапе мирового развития нельзя недооценивать особую значимость участия судов в деятельности по предупреждению терроризма, имеющего качества организованности и транснациональности, так как вышеназванные судебные решения могут быть вынесены в отношении зарубежных и международных террористических организаций, в том числе их филиалов и различных структурных подразделений.

Направление превентивной деятельности судов приобрело особую актуальность за последние годы, в связи с большим ростом террористической деятельности на Ближнем Востоке и в иных регионах (Украина, страны Западной Европы). Включение судами Российской Федерации международной или зарубежной организации в перечень террористических организаций предоставляет возможность квалифицировать действия ее организаторов и иных участников в соответствии с нормами, предусмотренными УК РФ. В частности, такие действия могут получить правовую оценку как вовлечение в деятельность террористической организации, ее финансирование, содействие ей в осуществлении противоправной деятельности, обучение участию в реализации террористической деятельности, публичные призывы к такому участию, пропаганда и оправдание ее незаконной деятельности.

В едином федеральном списке организаций, признанных судами Российской Федерации террористическими по состоянию на 15 сентября 2018 г., указано 27 наименований[8], включенных в перечень террористических, в число которых входят «Исламское государство», «Муджахеды джамаата Ат-Тавхида Валь-Джихад» и иные. Наибольшее количество решений о признании организаций террористическими принято Верховным Судом Российской Федерации в связи с тем, что такие организации носили международный характер.

Предупреждение терроризма взаимосвязано с превенцией экстремистской деятельности, которой характерны аналогичные особенности в установлении направления подведомственности конкретных правоотношений.

Статья 4 Федерального закона «О противодействии экстремизму» определяет организационные основы такого противодействия. При определении компетенции на разных уровнях власти в деятельности, направленной на противодействие экстремизму, особое внимание уделено той же вертикали власти. Статья 5 Закона, предписывающая предупреждение экстремизма, упоминает федеральные органы государственной власти, органы государственной власти субъектов Российской Федерации в целом, которые при взаимодействии с органами местного самоуправления в рамках отведенной им компетенции в первую очередь предпринимают профилактические (воспитательные, пропагандистские) меры, которые направлены на предотвращение экстремистской деятельности.

Анализируя положения Федерального закона «О противодействии экстремистской деятельности», мы приходим к выводу, что законодательно в число субъектов предупреждения преступлений и правонарушений экстремистской направленности включены не только исполнительные, но и иные государственные органы, в том числе Прокуратура Российской Федерации и суды.

Генеральный прокурор Российской Федерации, его заместитель, подчиненный прокурор или его заместитель законодательно уполномочены направлять руководству общественных или религиозных объединений предписание о недопустимости осуществления экстремистской деятельности при выявлении признаков готовящихся экстремистских акций со стороны таких объединений, при недостаточности поводов и оснований к возбуждению уголовных дел, для осуществления уголовного преследования виновных лиц (ст. 7).

К полномочиям судов в осуществлении деятельности по предупреждению преступлений и правонарушений экстремистской направленности указанный Закон относит:

♦ определенный судебный порядок запрещения деятельности общественных и религиозных объединений и прочих организаций при их отнесении к числу экстремистских организаций с обращением их имущества в доход государства (ст. 9);

♦ возможность приостановления судом деятельности этих объединений и организаций до принятия судебного решения о полном запрете их деятельности и ликвидации (ст. 10);

---

[8] Единый федеральный список организаций, в том числе иностранных и международных организаций, признанных в соответствии с законодательством Российской Федерации террористическими // URL: http://www.fsb.ru/fsb/npd/terror.htm



# ЮРИДИЧЕСКИЕ НАУКИ

♦ полномочия суда по отнесению конкретных материалов к категории экстремистских, по приостановлению деятельности средств массовой информации или приостановке деятельности по выпуску номеров периодических изданий, тиражей аудио- или видеопродукции, телевизионных или радиопередач (ст.ст. 11, 13).

Признание какой-либо организации (объединения) экстремистской, реализация решения по запрещению ее деятельности и ликвидации такой организации исполняется судом в порядке, сходном с алгоритмом принятия аналогичных решений в отношении организаций, которые признаются судом террористическими, а именно при взаимодействии с Прокуратурой РФ. Основным звеном здесь является принятие решения в части, касающейся приостановления деятельности общественных или религиозных объединений, иных организаций, что предотвращает дальнейшее осуществление экстремистской деятельности.

Нельзя недооценивать и значимость полномочий суда, касающихся прекращения деятельности средств массовой информации, в том числе запрета на распространение его продукции, и признания распространяемых материалов экстремистскими, поскольку терроризм и экстремизм строятся на опасной идеологии, в распространении и поддержании которой заинтересованы радикальные объединения.

После подтверждения судом, что организация имеет экстремистскую направленность, сведения о ней вносят в единый федеральный перечень таких организаций, а установление судом экстремистской природы того или иного материала позволяет включить последний в единый список таковых. Осуществлением деятельности по ведению и публикации таких перечней и списков занимается Министерство юстиции РФ; при этом такая деятельность информирует общество о правовых последствиях организации и осуществления деятельности таких организаций, вовлечения в нее, являющихся уголовно наказуемыми деяниями (ст. 282² УК РФ), а также о том, что осуществление действий по распространению экстремистских материалов в разных ситуациях может рассматриваться как нарушение административного законодательства или преступление. Суд при осуществлении взаимодействия с Минюстом России предупреждает экстремистскую деятельность и предотвращает совершение преступлений, носящих экстремистскую направленность.

Статья 20.29 Кодекса Российской Федерации об административных правонарушениях предусматривает ответственность как для физических, так и для юридических лиц за массовое производство и распространение экстремистских материалов. В судебной практике отмечается рост количественного показателя данного правонарушения: в 2017 г. в суд поступило 2099 дел о массовом распространении экстремистских материалов, что на 9,3% больше, чем в 2016 г. (1921 дело). Аналогичный рост отмечен в количестве материалов, отнесенных судами к экстремистским: по состоянию на 15 сентября 2018 г. в Федеральном списке экстремистских материалов[9] значилось 4507 позиций (в части из них указано на исключение материалов из этого списка, например, в позициях 4258–4270, что связано с различными обстоятельствами, в том числе с обнаружением повторяющихся материалов, признанных экстремистскими в разное время).

Перечень некоммерческих организаций, деятельность которых отнесена судом к экстремистской[10] тоже ежегодно пополняется: по состоянию на 15 сентября 2018 г. в нем значилось 69 таких организаций, в том числе Организация футбольных болельщиков «Фирма», футбольных фанатов «Поколение», Региональный общественный фонд содействия национальному самоопределению народов Мира «Независимость» и др.

Перечисленные полномочия судов необходимо рассматривать как специальные, направленные, в первую очередь, на предупреждение преступлений террористической и экстремистской направленности. Также можно выделить следующие общие полномочия судов, которые касаются предупреждения всех видов преступлений в целом и уголовно наказуемых деяний террористической и экстремистской направленности, в частности:

1) вынесение частных определений и постановлений об устранении причин и условий преступлений с осуществлением последующего контроля за их исполнением;

2) судебный контроль за осуществлением оперативно-разыскной деятельности и предварительным

---

[9]  Федеральный список экстремистских материалов // URL: http://minjust.ru/ru/extremist-materials?field_extremist_content_value= &page=22

[10]  Перечень некоммерческих организаций, в отношении которых судом принято вступившее в законную силу решение о ликвидации или запрете деятельности по основаниям, предусмотренным Федеральным законом «О противодействии экстремистской деятельности» // URL: http://minjust.ru/ru/nko/perechen_zapret



# ЮРИДИЧЕСКИЕ НАУКИ



расследованием, судебный контроль за обеспечением своевременного принятия решений о проведении оперативно-разыскных мероприятий, производством следственных и иных процессуальных действий, с применением мер принуждения;

3) назначение наказания и иных мер уголовно-правового воздействия, касающихся освобождения от уголовной ответственности, разрешения вопросов, возникающих в ходе исполнения приговора и прочих судебных решений.

Кроме того, отметим значимую роль Верховного Суда РФ, связанную с подготовкой разъяснений по вопросам рассмотрения уголовных дел в рамках постановлений его Пленума, с выделением особой значимости установления причин и условий, способствующих совершению преступлений, а также уточнением мер, которые необходимо предпринять для их устранения [3, с. 59–64].

Так, постановление Пленума Верховного Суда РФ «О некоторых вопросах судебной практики по уголовным делам о преступлениях террористической направленности»[11] (п. 31) предписывает выявлять обстоятельства, способствовавшие совершению указанных преступлений, нарушению прав и свобод граждан, а также других нарушений закона, допущенных при производстве предварительного следствия или при рассмотрении уголовного дела нижестоящим судом. В Уголовно-процессуальном кодексе Российской Федерации (ч. 4 ст. 29) указано на необходимость обращать внимание соответствующих организаций и должностных лиц на выявленные факты нарушений закона путем вынесения частных определений или постановлений.

В других постановлениях Пленума Верховного Суда РФ приведены и другие разъяснения, рекомендующие определенные меры, направленные на осуществление вышеназванных специальных направлений предупреждения преступлений террористической и экстремистской направленности[12].

Подводя итог, сделаем вывод о том, что современная роль судов в предупреждении преступлений террористической и экстремистской направленности в законодательстве представлена не в полном объеме и требует доктринального осмысления с учетом имеющейся судебно-следственной практики и теоре-

тических разработок в рассматриваемом направлении, что указывает на необходимость дальнейшего обсуждения вопроса о включении судов на законодательном уровне в систему субъектов предупреждения преступности в целом и предупреждения отдельных видов преступлений, в частности.

## Литература

1. *Бадамшин С.К.* Преступления террористической направленности, совершаемые с использованием электронных или информационно-телекоммуникационных сетей: уголовно-правовая и криминологическая характеристика: Дисс. … канд. юрид. наук. М., 2018.

2. *Поличной Р.В.* Соотношение террористической организации, террористического сообщества, экстремистской организации и экстремистского сообщества // Пробелы в Российском законодательстве. 2017. № 2.

3. *Зателепин О.К.* Роль Верховного Суда Российской Федерации в борьбе с экстремизмом и терроризмом // Право в Вооруженных силах российской Федерации. 2015. № 1.

## References

1. *Badamshin S.K.* Prestupleniya terroristicheskoy napravlennosti, sovershayemyye s ispol'zovaniyem elektronnykh ili informatsionno-telekommunikatsionnykh setey: ugolovno-pravovaya i kriminologicheskaya kharakteristika: Diss. … kand. yurid. nauk. M., 2018.

2. *Polichnoy R.V.* Sootnosheniye terroristicheskoy organizatsii, terroristicheskogo soobshchestva, ekstremistskoy organizatsii i ekstremistskogo soobshchestva // Probely v Rossiyskom zakonodatel'stve. 2017. № 2.

3. *Zatelepin O.K.* Rol' Verkhovnogo Suda Rossiyskoy Federatsii v bor'be s ekstremizmom i terrorizmom // Pravo v Vooruzhennykh silakh rossiyskoy Federatsii. 2015. № 1.

---

[11] Постановление Пленума Верховного Суда РФ от 9 февраля 2012 г. № 1 (ред. от 3 ноября 2016 г.) «О некоторых вопросах судебной практики по уголовным делам о преступлениях террористической направленности» // URL: http://www.vsrf.ru/
[12] Постановление Пленума Верховного Суда РФ от 27 декабря 2016 г. № 64 «О некоторых вопросах, возникающих при рассмотрении судами дел, связанных с приостановлением деятельности или ликвидацией некоммерческих организаций, а также запретом деятельности общественных или религиозных объединений, не являющихся юридическими лицами» // URL: http://www.vsrf.ru/



# ЮРИДИЧЕСКИЕ НАУКИ

УДК 343
ББК 67
DOI 10.24411/2414-3995-2019-10082

© Э.Ш. Гурбанов, 2019

Научная специальность 12.00.11 — судебная деятельность, прокурорская деятельность,

правозащитная и правоохранительная деятельность

## К ВОПРОСУ ОБ ОБЩИХ НАПРАВЛЕНИЯХ ДЕЯТЕЛЬНОСТИ СУДОВ ПО ПРЕДУПРЕЖДЕНИЮ ПРЕСТУПЛЕНИЙ ТЕРРОРИСТИЧЕСКОЙ И ЭКСТРЕМИСТСКОЙ НАПРАВЛЕННОСТИ

**Эмин Шакюрович Гурбанов,**
аспирант кафедры уголовно-правовых и специальных дисциплин
Московский гуманитарный университет (111395, Москва, ул. Юности, д. 5)
E-mail: gurbanov_emin@mail.ru
Научный руководитель: Р.Б. Осокин, доктор юридических наук, профессор

**Аннотация.** Рассматриваются общие превентивные меры, осуществляемые судами по уголовным делам о преступлениях террористической и экстремисткой направленности. Проведен анализ превентивной функции суда, связанной с устранением причин и условий, способствующих совершению данных общественно опасных деяний, с контролем за деятельностью оперативных подразделений и органов предварительного расследования, а также с назначением и исполнением уголовных наказаний.

**Ключевые слова:** общие направления предупреждения преступлений, превентивная функция суда, причины и условия преступлений, преступления террористической направленности, преступления экстремистской направленности.

## TO THE QUESTION OF GENERAL DIRECTIONS OF THE ACTIVITIES OF THE COURTS ON THE PREVENTION OF CRIMES OF TERRORIST AND EXTREMISTIC DIRECTIONS

**Ehmin Sh. Gurbanov,**
Postgraduate Student of the Department of Criminal Law and Special Disciplines
Moscow University for the Humanities (111395, Moscow, ul. Yunosti, d. 5)

**Abstract.** We consider the general preventive measures carried out by the courts in criminal cases of crimes of a terrorist and extremist nature. The analysis of the preventive function of the court, related to the elimination of the causes and conditions conducive to the commission of these socially dangerous acts, monitoring the activities of operational units and preliminary investigation bodies, as well as the appointment and execution of criminal penalties, was carried out.

**Keywords:** general directions of crime prevention, preventive function of the court, causes and conditions of crimes, crimes of a terrorist orientation, crimes of an extremist nature.

**Citation-индекс в электронной библиотеке НИИОН**

**Для цитирования:** Гурбанов Э.Ш. К вопросу об общих направлениях деятельности судов по предупреждению преступлений террористической и экстремистской направленности. Вестник экономической безопасности. 2019;(2):180-6.

Деятельность судов по предупреждению преступлений, связанных с терроризмом и экстремизмом включает в себя общие и специальные направления. Их дифференциация связана с тем, что первое направление предупредительной деятельности предусмотрено для всех или, как минимум, значительной части преступлений. Второе — непосредственно связано с предупреждением преступлений именно террористической или экстремистской направленности. На последнее обращается внимание многими исследователями [1, с. 49—52; 2, с. 277—278; 3, с. 275—279].

Одним из ключевых направлений деятельности по предупреждению указанных преступлений является определение причин и условий, способствующих совершению таких преступлений, с вынесением частных определений и постановлений об устранении данных детерминирующих факторов с последующим контролем за их исполнением.

Содержательный аспект указанного направления включает такие взаимосвязанные виды деятельности судов как:

1) выявление обстоятельств, способствовавших совершению указанных преступлений;

2) установление нарушений закона, несоблюдения прав и свобод граждан при осуществлении предварительного следствия или при рассмотрении уголовного дела судом нижестоящей инстанции;

3) реагирование соответствующих должностных лиц и организаций на выявленные детерминирующие обстоятельства, факты нарушений закона путем вынесения частных определений или постановлений;

4) контроль за исполнением данных определений и постановлений с реагированием на факты их неисполнения.

Рассмотрим более подробно каждый из перечисленных выше видов превентивной деятельности судов, обращая особое внимание на основные особенности и проблемы, касающиеся данного направления в целом.

Так, представители уголовно-процессуальной теории права рассматривают частные определения и постановления суда в контексте уголовно-процессуальной ответственности, в качестве составного элемента механизма осуществления такой деятельности [4, с. 171—174; 5, с. 96—98].

На наш взгляд, такое видение значения частных определений (постановлений) суда не позволяет ему должным образом выявлять причины и условия, способствующие совершению преступлений по рассматриваемому уголовному делу.

Анализ статистической информации, отражающий результаты деятельности судов, связанных с вынесением частных определений и постановлений, показал, что соответствующие процессуальные действия как правило осуществляются при выявлении недостатков предварительного расследования и (или) производства по уголовным делам в судах нижестоящих инстанций.

Однако, как нами уже отмечалось выше, одной из основных задач судопроизводства наряду с превенцией иных нарушений закона, является способствование предупреждению преступлений. Таким образом, здесь можно говорить о превентивной функции суда, которая реализуется в ходе вынесения частных определений или постановлений.

Согласно ч. 4 ст. 29 УПК РФ основанием для вынесения частного определения (постановления) являются выявленные при судебном рассмотрении уголовного дела обстоятельства, способствовавшие совершению преступления, а не только факты нарушений прав и свобод граждан, других нарушений закона, которые были допущены при производстве предварительного расследования или при рассмотрении уголовного дела нижестоящим судом. Кроме того, в необходимых случаях, суд вправе вынести частное определение или постановление.

Рассмотрение уголовных дел различными судебными инстанциями обладает некой спецификой, которая связана с тем, что суды чаще реагируют на нарушения закона, которые были допущены на контролируемой ими (предшествующей) стадии производства по делу, о чем свидетельствует приведенная ниже статистика.

Так, в 2017 г. по первой инстанции судами России было вынесено 17 451 частное определение, что на 0,9% больше по сравнению с 2016 г. Вместе с тем, по сравнению с общим объемом рассмотренных судами дел количество частных определений (постановлений) весьма незначительно: в 2015—2017 годах оно составило 1,9% (в 2011 и 2012 годах — 2,5%, в 2013 г. — 2,1%)[1].

В 2017 г. третья часть (33,4%) всех частных определений было вынесено относительно выявленных нарушений закона, допущенных органами дознания и предварительного следствия, 36% — о причинах и условиях, способствовавших совершению преступления и 30,4% — о других нарушениях закона.

Недостаточная эффективность рассматриваемого направления превентивной деятельности судов связана также с тем, что по вынесенным частным определениям (постановлениям) судами в 2017 г. было получено 11 202 сообщения о принятых мерах, что составляет 64,2% от вынесенных всех частных определений. То есть в 33,8% случаев суды, органы и организации, которым были адресованы частные определения (постановления) не проинформировали суды о том, какие меры предприняты для устранения выявленных причин и условий либо каких-либо нарушений закона, что оставляет

---

[1] Здесь и далее приведены статистические данные из следующего источника: Обзор статистических данных по уголовным делам, рассмотренным судами Российской Федерации в 2017 году // Архив Управления систематизации законодательства и анализа судебной практики Верховного Суда РФ за 2015, 2016 и 2017 годы.



# ЮРИДИЧЕСКИЕ НАУКИ

открытым вопрос о том, отреагировали ли адресаты вообще каким-либо образом на указанные им упущения. Приведенные выше статистические данные указывают и на несовершенство системы контроля судов за исполнением их частных определений (постановлений).

Если проанализировать практику рассмотрения уголовных дел в судах районного, областного уровня, судах военных округов и Верховном Суде РФ именно в апелляционной инстанции, то можно сделать вывод о снижении внимания судебных органов к выявлению причин и условий преступлений. Так, например, в 2017 г. было вынесено 2 616 частных определений (постановлений), из них почти половина (47,6%) была вынесена по фактам нарушения закона, допущенным при рассмотрении дел судом. Частные определения (постановления) о нарушениях закона, допущенных в стадии дознания и предварительного следствия, составляли 23,9% определений, о причинах и условиях, способствовавших совершению преступления, — 1,9%, о нарушениях другого характера — 26,6%. При этом о мерах, принятых по вынесенным частным определениям (постановлениям), поступило 1 793 сообщения, то есть 31,46% частных определений и постановлений остались без ответа.

Указанные статистические данные свидетельствуют о том, что выявление судами причин и условий, способствующих совершению преступлений с реагированием на них в частных определениях (постановлениях) на сегодняшний день не относится к приоритетному направлению их деятельности.

Отметим, что выявление судами недостатков предварительного расследования и судебного рассмотрения уголовных дел, а также последующее вынесение по этому поводу частных определений (постановлений) также опосредованно относится к способствованию предупреждения преступлений, поскольку тем самым предпринимаются усилия по совершенствованию данных форм уголовно-процессуальной деятельности. Это способствует всестороннему и более полному изучению всех обстоятельств уголовного дела до принятия по нему окончательного решения, в том числе выявлению детерминирующих факторов и их минимизации, выявлению всех лиц, причастных к

содеянному, с применением к ним мер государственного принуждения, имеющих своей целью исправление таких лиц, а также общую и частную превенцию.

Следует отметить, что применительно к преступлениям террористической и экстремистской направленности выявление причин и условий их совершения может привести к установлению фактов совершения других уголовно наказуемых и (или) административных правонарушений. Например, по уголовным делам о террористических актах либо захватах заложников выявление причин и условий совершения данных преступлений способно одновременно установить, что благоприятная обстановка для их совершения сформировалась вследствие допущенных нарушений требований обеспечения безопасности и антитеррористической защищенности объектов топливно-энергетического комплекса (ст. 217.1 УК РФ либо ст. 20.30 КоАП РФ). Также не исключено выявление фактов халатности (ст. 293 УК РФ) со стороны должностных лиц, которые должны были предпринимать адекватные превентивные меры в области профилактики, предотвращения и пресечения соответствующих преступлений.

С точки зрения уголовно-процессуального разбирательства суды преимущественно связаны теми обстоятельствами, которые были получены в рамках стадий возбуждения уголовного дела и его предварительного расследования.

В этой связи Европейский Суд по правам человека в одном из своих постановлений обратил внимание на важную роль стадии предварительного расследования для подготовки разбирательства уголовного дела в суде, поскольку те доказательства, которые были получены в ходе предварительного расследования, определяют дальнейшие рамки, в которых будет рассматриваться уголовное дело в суде [15, с. 55—111].

Согласно диспозиции ч. 2 ст. 73 УПК РФ в обязательный предмет доказывания по каждому уголовному делу входят обстоятельства, способствовавшие совершению преступления. В связи с этим, непринятие органами предварительного следствия или дознания мер по установлению таких обстоятельств может свидетельствовать о неполноте расследования по уголовному делу, а это в свою



очередь может стать причиной для возвращения прокурором уголовного дела следователю (дознавателю) для производства дополнительного расследования.

Следует отметить, что анализ изучения правоприменительной практики свидетельствует об отсутствии примеров возвращения уголовного дела по данному основанию (не установление причин и условий, способствующих совершению преступлений).

Кроме того, ст. 237 УПК РФ, регламентирующая порядок возвращения судом уголовного дела прокурору, не предусматривает такого основания для принятия подобного решения.

Однако уголовно-процессуальный закон не снимает с судов обязанности при рассмотрении уголовного дела в ходе судебного следствия определять причины и условия, которые способствовали совершению преступлений.

Так, например, данные о детерминирующих факторах судом могут быть получены в ходе непосредственного изучения в судебном заседании доказательственной базы по уголовному делу, в том числе и в ходе дачи показаний участниками разбирательства.

Деятельность суда, направленная на выявление фактов нарушений прав и свобод граждан, а также других нарушений закона, допущенных в ходе предварительного расследования, а также при рассмотрении уголовного дела в суде нижестоящей инстанции может иметь значение для повышения эффективности предупреждения преступлений. Это играет важную роль, поскольку тем самым таким органам и судам указываются недостатки в их деятельности, включая непринятие ими необходимых мер, направленных на предотвращение и пресечение преступлений террористической и экстремистской направленности. Нарушения могут быть выявлены судом при рассмотрении жалоб, поступивших на решения и действия должностных лиц, производящих предварительное расследование, в порядке ст. 125 УПК РФ (Постановление Пленума Верховного Суда РФ от 10 февраля 2009 г. № 1 (ред. от 29.11.2016) «О практике рассмотрения судами жалоб в порядке статьи 125 Уголовно-процессуального кодекса Российской Федерации»).

Однако, отметим, что суд не обладает компетенцией по непосредственному устранению выявленных причин и условий, способствующих совершению преступлений, а равно установленных фактов нарушения закона. Суд лишь способствует устранению таковых нарушений посредством вынесения частных определений (постановлений) и их направления должностным лицам или в организации, от которых ожидается непосредственное принятие превентивных мер.

С целью обеспечения исполнения частного определения (постановления) судам необходимо не только выносить и направлять их должностным лицам и в организации, но и контролировать исполнение указанных процессуальных документов, что на практике в ряде случаев остается без надлежащего внимания судебных органов, а это в свою очередь создает предпосылки для неисполнения данных процессуальных документов. Считаем, что в целях совершенствования превентивной деятельности судов необходима более полная и подробная законодательная регламентация, касающаяся данного вопроса, а также подготовка разъяснений Пленума Верховного Суда РФ в постановлении, специально посвященном соответствующим вопросам судебной деятельности, а не их фрагментарное отражение в постановлениях, посвященных производству по уголовным делам о какой-либо разновидности преступлений.

Вторым общим направлением предупреждения преступлений в целом и уголовно-наказуемых деяний террористической и экстремистской направленности, в частности, является судебный контроль за осуществлением оперативно-разыскной деятельности и предварительным расследованием. Превентивной составляющей такого контроля является обеспечение принятия своевременных и обоснованных решений по проведению оперативно-разыскных мероприятий, производству следственных и иных процессуальных действий, применению мер государственного принуждения.

В данном случае роль суда заключается в проверке и подтверждении законности либо отклонении проведения соответствующих оперативно-разыскных мероприятий.

Так, например, осуществлению таких оперативно-разыскных мероприятий, как:

- обследование жилых помещений,
- контроль почтовых отправлений, телеграфных и иных сообщений,
- прослушивание телефонных переговоров и снятие информации с технических каналов связи, по общему правилу предшествует судебное рассмотрение необходимых материалов, которые поступают из оперативного подразделения в суд для обоснования необходимости проведения ими указанных оперативно-разыскных мероприятий (ст. 9 Федерального закона от 12 августа 1995 г. № 144-ФЗ «Об оперативно-розыскной деятельности»).

Своевременное рассмотрение судом поступивших материалов, а также принятие постановления о разрешении их осуществления либо вынесение решения об отказе в проведении таких мероприятий, во многом зависит от наличия необходимых организационно-правовых предпосылок, в том числе от налаженности взаимодействия судов с органами, осуществляющими оперативно-разыскную деятельность [6, 74—77]. Сами мероприятия, требующие судебного разрешения, могут способствовать выявлению замышляемых и подготавливаемых преступлений террористической и экстремистской направленности, а также их участников, финансовых и иных средств для реализации криминальных замыслов. Это в свою очередь, создает предпосылки для прерывания начинающейся преступной деятельности, недопущения доведения соответствующих уголовно-наказуемых деяний до конца, установлению всех причастных к ним лиц и собиранию сведений, которые в дальнейшем могут приобрести доказательственное значение [7, с. 3—4].

Оперативно-разыскная деятельность имеет большое значение для предупреждения преступлений террористической и экстремистской направленности, поскольку таким деяниям присущи высокая латентность, организованность [8, с. 91—97], а также устойчивая тенденция к транснационализации [9, с. 109—113; 10, с. 52—57]. В связи с этим без негласных методов выявления предпосылок, способствующих совершению преступлений террористической и экстремистской направленности и устранения либо минимизации соответствующих причин и условий, в том числе посредством установления

всех участников организованных преступных деяний, принятия мер к разобщению таких групп и т.д. превентивная функция государства не будет реализована [11, с. 3; 12, с. 45—52].

Кроме того, следственные действия, сходные по своей сущности с указанными выше оперативно-разыскными мероприятиями также требуют получения разрешения суда (Постановление Пленума Верховного Суда РФ от 1 июня 2017 г. № 19 «О практике рассмотрения судами ходатайств о производстве следственных действий, связанных с ограничением конституционных прав граждан (статья 165 УПК РФ)»). Из этого следует, что суд, своим своевременным и обоснованным решением, допускающим производство соответствующего процессуального действия, создает предпосылки для решения различных задач, стоящих перед органами предварительного расследования, включая установление личности субъектов, причастных к преступлениям, установление фактических данных, позволяющих привлечь их к уголовной ответственности на стадиях приготовления к преступлению и покушения на него, задержать данных лиц и применить к ним меры пресечения, в том числе те, что требуют судебного разрешения.

В частности отметим, что заключение лица под стражу может быть осуществлено тогда, когда достаточно имеющихся сведений, чтобы полагать, что это лицо может продолжить заниматься преступной деятельностью (ч. 1 ст. 97 УПК РФ). Изоляция такого лица от общества предупреждает возможность совершения им новых преступлений, способствует разрыву связей внутри соответствующих преступных объединений, затрудняя тем самым реализацию замыслов последних.

Наложение ареста на имущество обвиняемого также может способствовать уменьшению криминального капитала, затруднять вовлечение последнего в подготовку и осуществление преступлений террористической и экстремистской направленности.

Третье, завершающее общее направление предупреждения судом преступлений террористической и экстремистской направленности составляют назначение наказания и иных мер уголовно-правового характера, включая судебный штраф при освобождении от уголовной ответственно-



сти, а также разрешение вопросов, возникающих в ходе исполнения приговора и иных судебных решений.

В соответствии с ч. 2 ст. 43 УК РФ уголовное наказание преследует три цели, в том числе общую и частную превенцию преступлений, ту же цель законодатель называет и применительно к принудительным мерам медицинского характера (ст. 98 УК РФ), используя вместо слова «преступления» словосочетание «деяния, предусмотренные статьями Особенной части настоящего Кодекса». Это обусловлено возможностью применения данных мер к лицам, совершившим запрещенные действия в состоянии невменяемости. Кроме того, Пленум Верховного Суда РФ в своих разъяснениях обращает внимание судов на то, что цели применения принудительных мер медицинского характера не в полной мере совпадают с целями наказания и согласно ст. 98 УК РФ состоят в том, чтобы излечить или улучшить психическое состояние соответствующих лиц, а также предупредить дальнейшее совершение ими общественно опасных деяний (п. 2 постановления Пленума Верховного Суда РФ от 7 апреля 2011 г. № 6 «О практике применения судами принудительных мер медицинского характера»). Главным отличием целей наказания и таких принудительных мер выступает то, что последним не свойственно сочетание цели предупреждения с исправлением лица и восстановлением социальной справедливости, тогда как в цели наказания не входит излечение осужденных или улучшение их состояния.

На наш взгляд, в конечном счете, наиболее важным направлением наказания и иных мер уголовно-правового характера является именно предупреждение совершения новых преступлений.

Относительно вопроса о применении судом принудительных мер воспитательного воздействия (ч. 1 ст. 90 УК РФ) в рамках освобождения подростков от уголовной ответственности или от наказания, законодатель не обусловил назначение таких мер их направленностью на достижение цели предупреждения новых преступлений, но указал на то, что они могут способствовать исправлению несовершеннолетнего (п. 31 постановления Пленума Верховного Суда РФ от 1 февраля 2011 г. № 1 «О судебной практике применения законодательства, регламентиру-

ющего особенности уголовной ответственности и наказания несовершеннолетних»). Все это относится к частной превенции уголовно-наказуемых деяний со стороны данного лица.

Судебный штраф (ст. 762 УК РФ) как разновидность иных мер уголовно-правового характера, назначается при освобождении от уголовной ответственности, но производен от наказания в виде штрафа и имеет сходство с ним по своему содержательному аспекту [13, с. 73—77; 14, с. 139—144], в связи с этим можно говорить о том, что судебному штрафу присуща направленность на те же цели, включая и предупреждение преступлений.

Освобождение от уголовной ответственности, в том числе с назначением судебного штрафа, в большей степени присуще производству по уголовным делам о преступлениях экстремистской направленности. Большая часть преступлений экстремистской направленности относится к категориям преступлений небольшой или средней тяжести, тогда как уголовно-наказуемые деяния террористической направленности, как правило, являются тяжкими или особо тяжкими преступлениями, что исключает соответствующие проявления снисхождения со стороны государства.

Анализ статистической информации показал, что законодательная оценка уровня общественной опасности преступлений террористической направленности находит свое отражение в назначаемых судами видах и размерах (сроках) наказания.

Так, в 2017 году по уголовным делам о преступлениях экстремистской направленности суды преимущественно назначали лишение свободы без его реального отбывания, то есть условно (57,8%), тогда как реально этот вид наказания был назначен 17,6% таких осужденных.

Среди 709 лиц, которые в 2017 году были осуждены за террористические и связанные с ними преступления, пожизненное лишение свободы было назначено только 5-м из них (0,7%); лишение свободы на определенный срок — 618 (87,2%); лишение свободы условно — 25 (3,5%); штраф — 61 (8,6%). Конфискация имущества (ст. 104.1 УК РФ) применена к 3-м осужденным [16].

В заключение представляется необходимым сформулировать следующий вывод: общие на-



правления предупреждения преступлений террористической и экстремистской направленности реализуются судами в рамках уголовного процесса и преимущественно направлены на недопущение совершения новых уголовно-наказуемых деяний, а также на устранение выявленных по уголовному делу причин и условий, способствующих совершению преступлений, с целью недопущения повторения или продолжения соответствующих общественно опасных действий.

### Литература

1. Осокин Р.Б. Исторические предпосылки возникновения терроризма и экстремизма в России и правовые средства противодействия на современном этапе // Формирование устойчивой антитеррористической позиции гражданского общества как основа профилактики терроризма: сборник статей Межрегиональной научно-практической конференции. Тамбов: Национальный антитеррористический комитет Российской Федерации, 2009.

2. Хачидогов Р.А. Актуальные вопросы предупреждения и пресечения преступлений террористической и экстремистской направленности // Пробелы в российском законодательстве. 2014. № 3.

3. Осокин Р.Б., Кокорев В.Г. Законодательное ограничение права на свободу вероисповедания как средство противодействия религиозному экстремизму // Тамбовские правовые чтения имени Ф.Н. Плевако: материалы Международной научной конференции. Тамбов : Принт-Сервис, 2017.

4. Шевченко И.В. Частное определение в механизме уголовно-процессуальной ответственности // Вестник Омского университета. Серия «Право». 2007. № 4 (13).

5. Тугушева Е.В., Поплавская Н.Н. Механизм реализации уголовно-процессуальной ответственности // Вектор науки Тольяттинского государственного университета. Серия: Юридические науки. 2014. № 1 (16).

6. Машекуашева М.Х. Вопросы структурного взаимодействия в рамках противодействия преступлениям экстремистской направленности // Пробелы в российском законодательстве. 2017. № 3.

7. Зникин В.К. Использование оперативно-розыскной информации в уголовно-процессуальном доказывании: автореф. дис. … канд. юрид. наук. Томск, 1998.

8. Иванцов С.В., Борисов С.В. Организованные формы террористической и экстремистской деятельности: регламентация и реализация ответственности // Общество и право. 2016. № 2 (56).

9. Пихов А.Х.А. Транснациональная преступность: система понятий // Вестник Московского университета МВД России. 2017. № 6.

10. Пихов А.Х.А. Глобализация современной террористической деятельности: современные реалии // Вестник Международного юридического института. 2017. № 3 (62).

11. Бондаренков В.А. Проблемы оперативно-розыскного обеспечения предупреждения преступлений: автореф. дис. …канд. юрид. наук. М., 2007.

12. Кузнецов Е.В. Предупреждение преступлений органами, осуществляющими оперативно-розыскную деятельность: проблемы теории и практики // Вестник Восточно-Сибирского института Министерства внутренних дел России. 2011. № 4 (59).

13. Борисов С.В., Чугунов А.А. Освобождение от уголовной ответственности с назначением судебного штрафа как новелла уголовного и уголовно-процессуального права Российской Федерации // Алтайский юридический вестник. 2017. № 3 (19).

14. Хлебницына Е.А. Возмещение ущерба или заглаживание причиненного преступлением вреда иным образом как условие освобождения от уголовной ответственности с назначением судебного штрафа // Вестник экономической безопасности. 2018. № 2.

15. Постановление ЕСПЧ от 23 марта 2016 г. «Дело «Блохин (Blokhin) против Российской Федерации» (жалоба № 47152/06) // Бюллетень Европейского суда по правам человека. Российское издание. 2016. № 12.

16. Официальный сайт Судебного департамента при Верховном Суде Российской Федерации, раздел «Данные судебной статистики»: URL: http://www.cdep.ru/index.php?id=79 (дата обращения: 08.10.2018).

 **ЮРИДИЧЕСКИЕ НАУКИ**

УДК 34
ББК 67.410.2
DOI 10.24411/2414-3995-2020-10316

© Э.Ш. Гурбанов, 2020

Научная специальность 12.00.11 – судебная деятельность, прокурорская деятельность,

правозащитная и правоохранительная деятельность

# ОСОБЕННОСТИ ДЕЯТЕЛЬНОСТИ СУДОВ ПО ПРИЗНАНИЮ ОРГАНИЗАЦИЙ ТЕРРОРИСТИЧЕСКИМИ

**Эмин Шакюрович Гурбанов,**
преподаватель кафедры уголовно-правовых и специальных дисциплин
Московский гуманитарный университет (111395, Москва, ул. Юности, д. 5)
E-mail: gurbanov_emin@mail.ru
Научный руководитель: Р.Б. Осокин, доктор юридических наук, профессор

**Аннотация.** Рассматривается одна из наиболее актуальных проблем деятельности судов по предупреждению преступлений террористической направленности, связанная с механизмом признания организаций террористическими. Автор выделяет и рассматривает организационные и правовые особенности такого механизма судебной деятельности, предлагает пути его совершенствования.
**Ключевые слова:** организационно-правовой механизм деятельности судов, предупреждение преступлений террористической направленности, терроризм, террористическая организация.

# FEATURES OF THE ACTIVITY OF COURTS ON THE RECOGNITION OF ORGANIZATIONS AS TERRORIST

**Emin Sh. Gurbanov,**
Lecturer of the Department of Criminal Law and Special Disciplines of the
Moscow University for the Humanities (111395, Moscow, ul. Yunosti, d. 5)

**Abstract.** Examined one of the most pressing problems of the courts' activity in the prevention of terrorist crimes, associated with the mechanism for recognizing organizations as terrorist. The author identifies and examines the organizational and legal features of such a mechanism of judicial activity, suggests ways to improve it.
**Keywords:** organizational and legal mechanism of the courts' activity, prevention of terrorist crimes, terrorism, terrorist organization.

**Citation-индекс в электронной библиотеке НИИОН**

**Для цитирования:** Гурбанов Э.Ш. Особенности деятельности судов по признанию организаций террористическими. Вестник экономической безопасности. 2020;(5):167-71.

Вопрос признания организаций террористическими решается исключительно судами и, по сути, является видом судебной деятельности, посредством которой дается определенная правовая оценка соответствующим противоправным объединениям. В последующем это отражается в установленном законодательством федеральном перечне террористических организаций, что в свою очередь информирует общественность, включая лиц, склонных к противоправному поведению, об указанной официальной оценке и юридических последствиях различных форм участия в возобновлении или продолжении деятельности террористических организаций. В целом вышеуказанная деятельность судов способствует предупреждению организованной террористической деятельности, базирующейся на противоправной активности террористических сообществ и организаций [1, с. 108–114].

Понятие и порядок признания организации террористической, запрещение ее деятельности и ликвидация (если имеется организационно-правовая форма) регламентируется ст. 24 Федерального закона «О противодействии терроризму».

Как следует из данной нормы, террористической является организация, создание и деятельность которой запрещены в России, цели или действия которой направлены на пропаганду, оправдание и поддержку терроризма или совершение преступлений, предусмотренных статьями 205–206, 208, 211, 220, 221, 277–280, $282^1$–$282^3$, 360 и 361 Уголовного кодекса Российской Федерации (далее – УК РФ). В

 # ЮРИДИЧЕСКИЕ НАУКИ

этом определении можно выделить определенные признаки рассматриваемого преступного объединения, толкование и установление наличия которых, как показал опрос судей, вызывает затруднения на практике при разрешении вопроса о том, следует ли отнести ту или иную группу лиц к террористическим организациям или нет. Соответствующие признаки составляют основу предмета доказывания по делам, связанным с реализацией уголовной ответственности за организацию деятельности террористической организации и за участие в такой деятельности, а также о запрете деятельности организации или о ее ликвидации (при наличии организационно-правовой формы) в связи с осуществлением ею террористической деятельности.

Во-первых, речь идет именно об организации, что предполагает наличие в ней нескольких, как правило, более 3 участников, образующих структурированную устойчивую группу, в том числе включающую различные по численности и функциональному назначению подразделения. Согласно ст. 2 Конвенции ООН против транснациональной организованной преступности[1] организованной преступной группой признается структурно оформленная группа в составе трех или более лиц, существующая в течение определенного периода времени и действующая согласованно с целью совершения одного или нескольких серьезных преступлений или преступлений, признанных таковыми в соответствии с данной Конвенцией, с целью прямого или косвенного получения финансовой или иной материальной выгоды. При этом структурно оформленной считается такая группа, которая не была случайно образована для немедленного совершения преступления и в которой не обязательно формально определены роли ее членов, оговорен непрерывный характер членства или создана развитая структура. Данные характеристики, как представляется, в полной мере относимы к террористическим организациям, за исключением обязательности цели преследования финансовой или иной материальной выгоды, хотя это и является одной из основных со-

ставляющих мотивации многих лиц, участвующих в террористической деятельности [2, с. 181–183].

Во-вторых, такая организация характеризуется тем, что ее создание и деятельность запрещены в России. Такой запрет вытекает из положений ст. 24 Федерального закона «О противодействии терроризму» и ст. 205[5] УК РФ. То есть в России создание и деятельность террористических организаций не только запрещены законом, но и уголовно наказуемы применительно к организаторам и участникам таких преступных объединений. При этом сведения о признании судом определенной организации террористической и о запрете ее деятельности на территории нашей страны подлежат включению в соответствующий федеральный перечень, который размещается и обновляется на сайте ФСБ России и публикуется в «Российской газете». Важным моментом здесь является установление и указание в судебном решении наименования и (или) идентифицирующих характеристик террористической организации, позволяющих внести данные о запрете ее деятельности в соответствующий список, а также распознать в дальнейшем, что именно данная организация включена в последний.

В-третьих, для признания организации террористической судам необходимо установить что ее цели или действия направлены на пропаганду, оправдание и поддержку терроризма или совершение преступлений, предусмотренных статьями 205–206, 208, 211, 220, 221, 277-280, 282[1]–282[3], 360 и 361 УК РФ. По сути, законодательное указание на пропаганду, оправдание или поддержку терроризма как альтернативу совершения деяний, запрещенных перечисленными уголовно-правовыми нормами, представляется нам излишним, поскольку в числе таких преступлений указаны содействие террористической деятельности (ст. 205[1] УК РФ), публичные призывы к осуществлению террористической деятельности, оправдание или пропаганда терроризма (ст. 205[2] УК РФ). Вместе с тем обозначение в нормативном определении целевой направленности террористической организации является одним из ее ключевых свойств, отличающим ее от других преступных объединений – от преступного сообщества (преступной организации), незаконного вооруженного формирования, экстремистского сообщества, экстремистской организации [3, с. 248–253].

[1] См.: Конвенция Организации Объединенных Наций против транснациональной организованной преступности (принята резолюцией 55/25 Генеральной Ассамблеи ООН от 15 ноября 2000 г.) // Официальный сайт ООН, раздел «Конвенции и соглашения»: URL: https://www.un.org/ru/documents/decl_conv/conventions/orgcrime.shtml (дата обращения: 12.06.2020).

# ЮРИДИЧЕСКИЕ НАУКИ



Признаки, приведенные выше должны найти свое отражение и обоснование в каждом судебном решении, в соответствии с которым организация признается террористической. Причем речь идет об обязательности именно совокупности данных признаков, поскольку при отсутствии хотя бы одного из них исключается общий вывод относительно принадлежности того или иного преступного объединения к террористическим организациям, а при наличии всех перечисленных признаков суд должен принять решение, предусмотренное ст. 24 Федерального закона «О противодействии терроризму», – признать соответствующую группу террористической организаций с вытекающими из этого юридическими последствиями.

Общие положения, определяющие организационно-правовой механизм признания организаций террористическими, изложены в той же ст. 24 Федерального закона «О противодействии террористической деятельности», из которой следует, соответствующе решение принимается судом, который также правомочен постановить (определить) конфисковать имущество такой организации и обратить его в доход государства.

Кроме того, следует учитывать и иной порядок признания организации террористической, имеющий место в случаях, когда наличествует обвинительный приговор суда, вступивший в законную силу. Данный порядок предполагает, что суд принимает решение о признании определенной организации террористической без предварительного заявления прокурора, в котором обосновывается необходимость такого решения. Суд в таких случаях опирается на вступивший в законную силу обвинительный приговор, подтверждающий, что по уголовному делу установлены все необходимые юридически значимые признаки террористического сообщества, фактически ничем не отличающегося от террористической организации, за исключением того, что применительно к последней на день постановления приговора или иного итогового решения по уголовному делу по ч. 1 или ч. 2 ст. 205$^5$ УК РФ суду необходимо установить, что до момента начала выполнения действий по организации деятельности террористической организации либо участия в таковой сведения о признании судом данной организации террористической уже официально опублико-

ваны, о чем было осведомлено (объективно могло быть осведомлено) виновное лицо. То есть продолжение деятельности террористического сообщества после вступления в законную силу обвинительного приговора суда и внесения соответствующих данных в список террористических организаций юридически переводит такие действия в область применения ст. 205$^5$, а не ст. 205$^4$ УК РФ, исключая тем самым квалификацию содеянного в качестве организации террористического сообщества или участия в нем.

Так можно сделать вывод, что существует два организационно-правовых механизма признания судом определенной организации террористической:

1) механизм, основанный на правовой оценке объединения людей как организации, цели и деятельность которой связаны с осуществлением террористической деятельности

2) механизм, основанный на обвинительном приговоре суда, признавшего лицо (группу лиц) виновным в организации террористического сообщества, руководстве его деятельностью либо в участии в таком сообществе.

Первый организационно-правовой механизм преимущественно применяется по отношению к международным террористическим организациям, когда деятельность последних признается террористической без уголовного судопроизводства, в результате которого какое-либо физическое лицо было бы осуждено за организацию террористического сообщества, руководство таковым или участие в нем применительно к данному объединению в целом. Как правило, в таких случаях судом констатируется, что имеются расследуемые уголовные дела и обвинительные приговоры в отношении отдельных членов указанных организаций (например, террористический акт, захват заложников, посягательство на государственного или общественного деятеля) без юридической оценки их участия в соответствующем объединении, основная, преобладающая часть которого расположена в другом государстве (других государствах). Это позволяет суду аргументировать, что им принимается решение в отношении организации, цели и деятельность которых вне каких-либо сомнений сопряжены с совершением преступлений террористической направленности.

# ЮРИДИЧЕСКИЕ НАУКИ

 

В свою очередь первый механизм имеет два подвида, первый из который осуществляется в отношении объединения, не имеющего организационно-правовой формы, когда его результатом является запрет на осуществление соответствующей деятельности; второй же механизм затрагивает объединения, имеющие определенную организационно-правую форму, в связи с чем суд принимает решение о ее ликвидации. В последнем случае преимущественно речь идет о некоммерческих организациях, например, о каких-либо общественных объединениях, имеющих статус юридического лица, цели и деятельность которых в той или иной части оцениваются как террористические.

Отметим, что вплоть до 15 сентября 2015 г. соответствующие судебные решения принимались в порядке, регламентированном Гражданско-процессуальным кодексом Российской Федерации, в частности, его статьями 26, 28, 194, 195, 198, 245. Отдельные решения обжаловались в апелляционном порядке, при этом соответствующие жалобы рассматривались в порядке, предусмотренном статьями 328, 329 и 330 данного Кодекса.

Вместе с тем, на наш взгляд, рассмотрение подобных дел в гражданском процессуальном порядке, не в полной мере отвечало потребностям практики, что указывало на целесообразность выработки порядка судопроизводства, специально посвященного принятию таких сложных решений и учитывающего имеющиеся особенности соответствующих организаций и осуществляемой ими противоправной деятельности.

В дальнейшем после вступления в силу 15 сентября 2015 г. Кодекса административного судопроизводства Российской Федерации[1] (далее – КАС РФ), рассмотрение дел о признании организаций террористическими, запрете их деятельности и ликвидации таковых стало производится в порядке, регламентированном в данном Кодексе. Соответствующие дела рассматриваются судами общей юрисдикции и Верховным Судом РФ в порядке главы 27 КАС РФ с учетом правил подсудности, которые установлены в ст. 19, п. 5 ст. 20, п. 5 ст. 21 КАС РФ (п. 1 ч. 3 ст. 1, ч. 2 ст. 262 КАС РФ). Осо-

бенности порядка рассмотрения данных дел разъясняются в постановлении Пленума Верховного Суда РФ от 27 декабря 2016 г. № 64[2].

Как следует из Единого федерального списка организаций, признанных судами Российской Федерации террористическими, в нем значится только три террористических сообщества, которые были включены в данный список на основании обвинительных приговоров Приволжского окружного суда от 23 марта 2017 г. по делу № 1-2/2017, вступившего в силу 31 августа 2017 г. («Чистопольский Джамаат»), Московского окружного военного суда от 22 февраля 2018 г. по делу № 2-1/2018, вступившего в силу 24 июля 2018 г. («Рохнамо ба суи давлати ислами» («Путеводитель в исламское государство»), от 17 января 2019 г. по делу 2-132/2018, вступившего в силу 14 марта 2019 г. (террористическое сообщество «Сеть») и от 5 июня 2019 г. по делу 2-63/2019, вступившего в силу 5 июля 2019 г. («Катиба Таухид валь-Джихад»)[3].

Появление в списке таких видов террористических организаций связано с законодательными изменениями, произведенными в 2013 г., когда в главу 24 УК РФ были введены статьи 205[4] и 205[5] об ответственности за организацию террористического сообщества или деятельности террористической организации, а равно за участие в таком сообществе или в деятельности указанной организации[4]. В тот же год было изменено и понятие террористической организации, выводимое из ч. 2 ст. 24 Федерального закона «О противодействии терроризму», где стала указываться такая ее новая разновидность, как организация, представляющая собой террористическое сообщество, в случае вступления в законную силу обвинительного приговора по ст. 205[4] УК РФ в отношении лица, признанного виновным в создании террористического

---

[1] См.: Федеральный закон от 8 марта 2015 г. № 22-ФЗ «О введении в действие Кодекса административного судопроизводства Российской Федерации» // Собрание законодательства РФ. 2015. № 10, ст. 1392.

[2] См.: Постановление Пленума Верховного Суда РФ от 27 декабря 2016 г. № 64 «О некоторых вопросах, возникающих при рассмотрении судами дел, связанных с приостановлением деятельности или ликвидацией некоммерческих организаций, а также запретом деятельности общественных или религиозных объединений, не являющихся юридическими лицами» // Бюллетень Верховного Суда РФ. 2017. № 2.

[3] См.: Сайт ФСБ России: URL: http://www.fsb.ru/fsb/npd/terror.htm (дата обращения: 01.07.2020).

[4] См.: Федеральный закон от 2 ноября 2013 г. № 302-ФЗ «О внесении изменений в отдельные законодательные акты Российской Федерации» // Собрание законодательства РФ. 2013. № 44, ст. 5641.

 **ЮРИДИЧЕСКИЕ НАУКИ**

сообщества, руководстве таковым либо участии в нем.

Следовательно, второй организационно-правовой порядок признания организации террористической и принятия решения о запрете ее деятельности в России с внесением соответствующей записи в список таких организаций основан на досудебном и судебном порядке производства по уголовному делу, урегулированному нормами Уголовно-процессуального кодекса Российской Федерации. Кроме того, следует учитывать, что с учетом специфики выявления организованной террористической деятельности, первоначальное собирание сведений о террористическом сообществе, его организаторах и иных участниках, а также о конкретных видах преступлений, совершаемых последними осуществляется оперативно-розыскным путем, то есть в порядке, регламентированном нормами Федерального закона «Об оперативно-розыскной деятельности»[1].

Таким образом, организационно-правовой механизм деятельности судов по признанию организаций террористическими и их ликвидации (запрете их деятельности) обладает рядом особенностей, прежде всего, обусловленных спецификой таких организаций и осуществляемой ими противоправной деятельности, способной подорвать основы обще-

ственной безопасности. Этот порядок требует дальнейшего совершенствования, в том числе в части законодательного определения террористической организации, отнесения к таковой организации, которая была признана террористической судом иностранного государства, что особенно актуально в связи с транснационализацией террористической деятельности, особенно ее организованной части.

### Литература

1. Иванцов С.В. Актуальные вопросы уголовной ответственности за организованную террористическую и экстремистскую деятельность / С.В. Иванцов, С.В. Борисов // В кн.: Обеспечение прав и свобод человека в современном мире. Материалы XI научно-практической конференции в 4 частях, 2017. С. 108–114.

2. Пихов А.Х.А. Деятельность международных террористических организаций как фактор транснационализации преступности / А.Х.А. Пихов // Вестник Московского университета МВД России. 2016. № 7. С. 181–183.

3. Хлебушкин, А.Г. Сообщество: преступное, террористическое экстремистское / А.Г. Хлебушкин // Уголовное законодательство: вчера, сегодня, завтра: материалы международной научно-практической конференции / под ред. А.Г. Хлебушкина, Т.Н. Тиминой. СПб.: изд-во Санкт-Петербургского университета МВД России, 2018. С. 248–253.

---

[1] См.: Федеральный закон от 12 августа 1995 г. № 144-ФЗ (в ред. от 02.08.2019) «Об оперативно-розыскной деятельности» // Официальный интернет-портал правовой информации http://www.pravo.gov.ru (дата обращения: 02.08.2019).

# ЮРИДИЧЕСКИЕ НАУКИ



УДК 34
ББК 67

DOI 10.24411/2073-0454-2019-10098
© Э.Ш. Гурбанов, 2019

Научная специальность 12.00.11 — судебная деятельность, прокурорская деятельность, правозащитная и правоохранительная деятельность

## К ВОПРОСУ О СПЕЦИАЛЬНЫХ НАПРАВЛЕНИЯХ ДЕЯТЕЛЬНОСТИ СУДОВ ПО ПРЕДУПРЕЖДЕНИЮ ПРЕСТУПЛЕНИЙ ТЕРРОРИСТИЧЕСКОЙ И ЭКСТРЕМИСТСКОЙ НАПРАВЛЕННОСТИ

**Эмин Шакюрович Гурбанов,** аспирант кафедры уголовно-правовых и специальных дисциплин
Московский гуманитарный университет (111395, Москва, ул. Юности, д. 5)
E-mail: gurbanov_emin@mail.ru
**Научный руководитель:** доктор юридических наук, профессор **Р.Б. Осокин**

**Аннотация.** Выделены и проанализированы специальные направления превентивной деятельности судов в области противодействия преступлениям террористической и экстремистской направленности. Описаны специальные меры, принимаемые судами для недопущения совершения таких уголовно наказуемых деяний, рассмотрены особенности данной деятельности, осуществляемой во взаимодействии с другими органами власти.

**Ключевые слова:** превентивная деятельность судов, преступления террористической направленности, преступления экстремистской направленности, специальные меры предупреждения преступлений.

## TO THE QUESTION OF THE ACTIVITIES OF THE COURTS ON THE PREVENTION OF CRIMES OF TERRORIST AND EXTREMISTIC DIRECTIONS

**Emin Sh. Gurbanov,** post-graduate student of the Department of criminal law and special disciplines
Moscow University for the Humanities (111395, Moscow, ul. Yunosti, d. 5)
E-mail: gurbanov_emin@mail.ru
**Research supervisor:** doctor of legal sciences, professor **R.B. Osokin**

**Annotation.** Special directions of preventive activity of courts in the field of counteraction to crimes of terrorist and extremist orientation are allocated and analyzed. Described the special measures taken by the courts to prevent the commission of such criminal acts, considered the features of this activity, carried out in cooperation with other authorities.

**Keywords:** preventive activity of courts, crimes of terrorist orientation, crimes of extremist orientation, special measures of crime prevention.

**Citation-индекс в электронной библиотеке НИИОН**

**Для цитирования:** Гурбанов Э.Ш. К вопросу о специальных направлениях деятельности судов по предупреждению преступлений террористической и экстремистской направленности. Вестник Московского университета МВД России. 2019;(2):178–181.

Деятельность судебных органов, связанная с предупреждением преступлений террористической и экстремистской направленности, дифференцируется на две основных группы.

В первую группу входят функции по предупреждению всех или, как минимум, значительной части преступлений; так, оперативно-разыскная деятельность преимущественно осуществляется в отношении преступлений средней тяжести, тяжких и особо тяжких преступлений, что одновременно определяет границы судебного контроля, а значит и соответствующей превентивной деятельности судов.

Вторая группа включает функции судебных органов, непосредственно связанные с предупреждением преступлений террористической или экстремистской направленности.

Остановимся подробнее на рассмотрении функций судов, относящихся ко второй группе. Об этом говорилось также многими учеными-криминалистами [1, с. 49–52; 2; 3, с. 277–278; 4, с. 275–279].

Отметим, что деятельность судов по предупреждению преступлений террористической и экстремистской направленности носит не непосредственный характер, а опосредованный, поскольку превентивные меры предпринимаются ими не по собственной инициативе, а только после официального обращения уполномоченных на то прокуроров.

Первое, с чем связаны превентивные меры судебных органов по предупреждению преступлений террористического и экстремистского характера, это признание судом определенных объединений террористической (экстремистской) организацией,

вынесение запрета на осуществление их деятельности и в конечном итоге их ликвидация.

Содержательный аспект превентивных мер зависит от того, в отношении какого объединения принимается такое судебное решение.

В соответствии с п. 4 ч. 1 ст. 2 Конвенции ШОС против терроризма[1], террористическая организация понимается в двух значениях: 1) как определенное преступное объединение в виде преступной группы, незаконного вооруженного формирования, банды, преступного сообщества, создаваемых для совершения преступлений и (или) совершающих преступления, которые входят в предмет регулирования данной Конвенцией; 2) как юридическое лицо, от имени, по указанию или в интересах которого осуществляется планирование, организация, подготовка и совершение хотя бы одного из данных уголовно-наказуемых деяний.

Согласно ч. 2 ст. 24 Федерального закона «О противодействии терроризму», в Российской Федерации суд принимает решение о признании организации террористической только основываясь на заявлении прокурора либо обвинительном приговоре суда, по которому лица были осуждены за организацию деятельности террористического сообщества или участие в такой деятельности.

Справедливо мнение Р.В. Поличного, согласно которому, прокурор, предварительно оценивая деятельность той или иной организации, не будучи связанным рамками уголовного процесса и соответствующим обвинительным приговором суда (который на тот момент отсутствует), оперативно реагирует на деятельность организаций, фактически преследующих террористические цели. Это особо актуально для общественно опасной деятельности международных и иностранных террористических организаций, организаторы и участники которых, еще не были осуждены в России по ст. 205⁴ УК РФ за создание террористического сообщества, руководство им либо участие в нем [5, с. 106–109]. Таким образом, суд дает официальную правовую оценку деятельности таких организаций, информирует мировое сообщество, национальные органы государственной власти и местного самоуправления, а также общественность о том, что определенная организация признана террористической, ее деятельность запрещена, а сама организация, при наличии у нее организационно-правовой формы, подлежит ликвидации. Подобная информация подлежит опубликованию и носит превентивный

характер. Средства массовой информации при поступлении таких сведений, обязаны посредством новостных ресурсов сообщать о том, что деятельность той или иной организации запрещена на территории РФ, а сама организация признана судом террористической. Сообщение о судебном решении относительно признания определенной организации террористической, опубликованное в Российской газете (распоряжение Правительства РФ от 14 июля 2006 г. № 1014-р «Об официальном периодическом издании, осуществляющем публикацию единого федерального списка организаций, признанных судами Российской Федерации террористическими») и на сайтах ФСБ России и Национального антитеррористического комитета, информирует о правовых последствиях возобновления ее деятельности и участия в ней.

Что касается общественных или религиозных объединений и иных организаций, то вынесение судом решения о признании таких организаций экстремистскими, происходит аналогично террористическим организациям.

Обратим внимание на положения ст. 7 Федерального закона «О противодействии экстремистской деятельности». Согласно диспозиции данной нормы следует, что, перед тем, как суд примет решение о ликвидации общественного или религиозного объединения либо иной организации, предшествует предупреждение, вынесенное органами Прокуратуры РФ или Минюста России, в соответствии с которым те или иные объединения (организации) информируются о недопустимости осуществления ими противоправной деятельности, а в случае выявленных нарушений антиэкстремистского законодательства — их устранения.

Статья 8 указанного Федерального закона регламентирует вынесение предупреждения и средствам массовой информации, если через них распространялись материалы экстремистского характера либо в их деятельности обнаружены иные признаки осуществления экстремизма.

Объединения, иные организации, средства массовой информации, которым вынесены предупреждения относительно их деятельности и признания ее экстремисткой, вправе обжаловать такое предупреждение в суде. Иными словами, для указанных организаций (объединений), средств массовой информации также

---

[1] Конвенция Шанхайской организации сотрудничества против терроризма (заключена в г. Екатеринбург 16 июня 2009 г.) // URL:http://treaties.un.org/



# ЮРИДИЧЕСКИЕ НАУКИ

предусмотрен судебный порядок проверки законности и обоснованности действий органов власти по предупреждению осуществления экстремизма со стороны указанных объединений, организаций и средств массовой информации. Основная функция судебных органов в таком случае заключается в том, что он может своим решением признать такую превентивную деятельность законной либо констатировать незаконность вынесенного предупреждения [6, с. 48–63].

Статьи 7 и 8 Федерального закона «О противодействии экстремизму» закрепляют условия, необходимые для принятия судом решения, согласно которому такие объединения или иные организации подлежат ликвидации, деятельность объединения, не являющегося юридическим лицом, — запрету, а деятельность средства массовой информации — прекращению.

Кроме того, судебный орган в тех случаях, когда деятельность организаций (объединений), содержащая признаки экстремизма, причиняет вред правам и законным интересам других лиц, а равно создает угрозу такого нарушения, может приостановить их деятельность на период рассмотрения вопроса относительно их ликвидации (запрещения деятельности) (постановление Пленума Верховного Суда РФ от 27 декабря 2016 г. № 64 «О некоторых вопросах, возникающих при рассмотрении судами дел, связанных с приостановлением деятельности или ликвидацией некоммерческих организаций, а также запретом деятельности общественных или религиозных объединений, не являющихся юридическими лицами»).

Следует отметить, что при предупреждении преступлений террористической и экстремистской направленности, решения суда относительно той или иной организации (объединения), являются основанием для включения таких объединений и организаций в перечень объединений, деятельность которых приостановлена в связи с осуществлением ими экстремизма. Данный перечень размещается в сети Интернет на сайте Минюста России и в печатном виде в средствах массовой информации («Российская газета»), равно как и перечень объединений и организаций, в отношении которых судом принято решение относительно их ликвидации или запрещении деятельности в связи с причастностью к экстремизму.

При предотвращении распространения экстремистских материалов посредством средств массовой информации, суд может приостановить реализацию его выпуска, тиража и т.п. с изъятием соответствую-

щей печатной продукции (при ее наличии). Активно используется такое направление для предупреждения распространения экстремистской и террористической идеологии в обществе, а также создаются предпосылки для административной и уголовной ответственности за распространение таких материалов.

При этом правоохранительным органам, прокуратуре и суду необходимо, с одной стороны, соблюдать баланс интересов личности, а с другой, — общественных и государственных интересов, для того чтобы не нарушать права, гарантированные им Конституцией РФ и международными правовыми актами.

Учитывая количественный рост случаев осуждения за преступления экстремистской направленности, совершаемых через сеть Интернет для «репостов» и «перепостов» информации экстремистского характера, Пленум Верховного Суда РФ от 20 сентября 2018 г. № 32 «О внесении изменений в постановление Пленума Верховного Суда РФ от 28 июня 2011 г. № 11 «О судебной практике по уголовным делам о преступлениях экстремистской направленности» разъяснил, что для осуждения за деяния подобного характера важно установить два обязательных элемента: 1) умысел и 2) цель.

Иными словами, необходимо доказать, что лицо осознавало характер размещаемых материалов, а равно направленность деяния на нарушение основ конституционного строя и преследовало цель возбуждения ненависти, вражды, унижения человеческого достоинства, а также подтвердить общественную опасность данных действий. Имеющиеся на сегодняшний день разъяснения постановления Пленума Верховного Суда РФ направлены на:

а) упорядочивание соответствующей правоприменительной практики,

б) усиление роли правоохранительных органов, направленной на предупреждение действительно общественно опасных деяний [7, с. 3–9], а не на «формирование статистики» за счет объективного вменения в отношении лиц, не совершивших действий, способных нарушить основы конституционного строя государства.

Подводя итог вышесказанному, сформулируем следующие выводы.

1. Деятельность судов, направленная на предупреждение преступлений террористического и экстремистского характера, подразделяется на две группы, включающие общие и специальные направления

деятельности, которые взаимосвязаны между собой и в совокупности образуют основу для формирования и реализации превентивной функции судов в данной области.

Функции судебных органов, включающие специальные направления предупреждения таких преступлений (признание организаций террористическими или экстремистскими, их ликвидация или запрещение деятельности и т.д.), реализуются в рамках административного и гражданского процессов и призваны предупредить перерастание таких противоправных действий в соответствующие преступления.

2. Суд реализует свою деятельность по предупреждению преступлений террористической и экстремистской направленности, как правило, после обращения к нему других органов государственной власти (например, Прокуратуры России, Минюста России, оперативных подразделений, органов предварительного расследования). Суд принимает то или иное решение, основываясь на предоставленных ему материалах.

Кроме того, суд также обязан устанавливать причины и условия совершения таких преступлений с реагированием на них в своих частных определениях (постановлениях). Превентивные действия других органов государственной власти без участия суда не могут быть реализованы в полном объеме, так как только суд уполномочен принимать решения, согласно которым, в частности, может быть приостановлена, запрещена или прекращена деятельность различных организаций, имеющая признаки экстремизма.

### Литература

1. *Осокин Р.Б.* Исторические предпосылки возникновения терроризма и экстремизма в России и правовые средства противодействия на современном этапе // Формирование устойчивой антитеррористической позиции гражданского общества как основа профилактики терроризма: Сб. ст. Межрег. науч.-практ. конф. Тамбов: Национальный антитеррористический комитет Российской Федерации, 2009.

2. *Латов Ю.В., Осокин Р.Б., Сочнев Д.В., Трунцевский Ю.В.* Системное противодействие радикальным экстремистским течениям в молодежной среде: Моногр. Тамбов: Издательство Першина Р.В., 2010.

3. *Хачидогов Р.А.* Актуальные вопросы предупреждения и пресечения преступлений террористической и экстремистской направленности // Пробелы в российском законодательстве. 2014. № 3. С. 277–278.

4. *Осокин Р.Б., Кокорев В.Г.* Законодательное ограничение права на свободу вероисповедания как сред-

ство противодействия религиозному экстремизму // Тамбовские правовые чтения имени Ф.Н. Плевако: Мат. Междунар. науч. конф. Тамбов, 2017.

5. *Поличной Р.В.* Правовые средства борьбы с террористическими организациями в Российской Федерации // Современное право. 2017. № 3. С. 106–109.

6. *Миц Д.С.* Некоторые вопросы совершенствования и гармонизации законодательства государств-участников СНГ в области отнесения организаций к террористическим и экстремистским // Вестник Томского государственного университета. Право. 2017. № 23. С. 48–63.

7. *Зателепин О.К., Борисов С.В.* Новые позиции Пленума Верховного Суда РФ по уголовным делам о преступлениях экстремистской направленности // Уголовный процесс. 2018. № 11. С. 3–9.

### References

1. *Osokin R.B.* Istoricheskiye predposylki vozniknoveniya terrorizma i ekstremizma v Rossii i pravovyye sredstva protivodeystviya na sovremennom etape // Formirovaniye ustoychivoy antiterroristicheskoy pozitsii grazhdanskogo obshchestva kak osnova profilaktiki terrorizma: Sb. st. Mezhreg. nauch.-prakt. konf. Tambov: Natsional'nyy antiterroristicheskiy komitet Rossiyskoy Federatsii, 2009.

2. *Latov Yu.V., Osokin R.B., Sochnev D.V., Truntsevskiy Yu.V.* Sistemnoye protivodeystviye radikal'nym ekstremistskim techeniyam v molodezhnoy srede: Monogr. Tambov: Izdatel'stvo Pershina R.V., 2010.

3. *Khachidogov R.A.* Aktual'nyye voprosy preduprezhdeniya i presecheniya prestupleniy terroristicheskoy i ekstremistskoy napravlennosti // Probely v rossiyskom zakonodatel'stve. 2014. № 3. S. 277–278.

4. *Osokin R.B., Kokorev V.G.* Zakonodatel'noye ogranicheniye prava na svobodu veroispovedaniya kak sredstvo protivodeystviya religioznomu ekstremizmu // Tambovskiye pravovye chteniya imeni F.N. Plevako: Mat. Mezhdunar. nauch. konf. Tambov, 2017.

5. *Polichnoy R.V.* Pravovye sredstva bor'by s terroristicheskimi organizatsiyami v Rossiyskoy Federatsii // Sovremennoye pravo. 2017. № 3. S. 106–109.

6. *Mits D.S.* Nekotoryye voprosy sovershenstvovaniya i garmonizatsii zakonodatel'stva gosudarstv-uchastnikov SNG v oblasti otneseniya organizatsiy k terroristicheskim i ekstremistskim // Vestnik Tomskogo gosudarstvennogo universiteta. Pravo. 2017. № 23. S. 48–63.

7. *Zatelepin O.K., Borisov S.V.* Novye pozitsii Plenuma Verkhovnogo Suda RF po ugolovnym delam o prestupleniyakh ekstremistskoy napravlennosti // Ugolovnyy protsess. 2018. № 11. S. 3–9.